

OFFICE OF THE SHERIFF
CITY OF ST LOUIS

MANUAL



VERNON BETTS
SHERIFF



EXHIBIT
K

DFT - 000971

Publication Order

The Sheriff of the City of St. Louis, by virtue of the authority vested in him by the statutes of the State of Missouri, has caused to be published this Manual of Policy, Rules and Regulations for the purpose of governing and guiding St. Louis City Deputy Sheriffs.

The Sheriff reserves the right to alter, amend, or revoke any of the provisions of this manual.  The Sheriff also further reserves the right to add supplemental or new material as circumstances may require.

These regulations, orders, policy and rules are declared in effect and all St. Louis City Deputy Sheriffs are required to abide by the provisions herein.

By Order of the Sheriff of the City of St. Louis

*Vernon Betts*

Vernon Betts
Sheriff City of St. Louis

Revised March 16, 2018

1

DFT - 000972

## STATEMENT OF POLICY

Public confidence and trust placed upon all of us in the service of the Court and the Justice System requires certain high standards of conduct.

This Manual of rules and regulations establishes the standards of conduct, discipline, and ethical practice by which all department personnel will lead their professional lives.   It will serve as a guideline leading to better service provided to the citizens of the City of St. Louis.

Adherence to these regulations and mutual respect among those of us employed in the service of justice will result in a better workplace for all.

All existing department regulations are hereby repealed and this Manual of conduct, discipline, rules and regulations is hereby ordered.

The provisions of this manual shall apply prospectively only.  Prior to its effective date the General Orders of the old manual shall remain in effect.

*Vernon Betts*

Vernon Betts
Sheriff City of St. Louis

DFT - 000973

Masculine pronouns used in this Manual include corresponding feminine pronouns unless otherwise indicated or qualified by the text.

The fact that the Sheriff's Office employs both male and female deputies will be clearly set out in the Manual wherever the ordinary collective wording is inapplicable or inadequate.

3

TABLE OF CONTENTS

SECTION

1. OFFICE OF THE SHERIFF
2. ADMINISTRATIVE SECTION
3. OPERATIONS SECTION
4. APPLICATION OF SELECTION
5. PERFORMANCE APPRAISAL PROCESS
6. DRUGS, ALCOHOL, PROHIBITED ARTICLES
7. FIREARMS
8. INAPPROPRIATE WORKPLACE DEMEANOR
9. SECONDARY EMPLOYMENT
10. UNIFORMS AND EQUIPMENT
11. EMERGENCY MEDICAL TREATMENT
12. DISCIPLINE AND DEPORTMENT
13. INTRA-DEPARTMENT COMMUNICATIONS
14. NEWS MEDIA AND PUBLIC RELATIONS
15. BENEFITS
16. COMPLAINT AND DISCIPLINARY PROCEDURES
17. RULES AND REGULATIONS
18. UNIFORM AND GROOMING POLICY
19. SERVICE DEPT. VEHICLE ALLOWANCE AND PARKING PLACARDS
20. CIVIL UNREST PROCEDURES
21. SOCIAL MEDIA POLICY

4

## SECTION 1.000

OFFICE OF THE SHERIFF

The Sheriff, a duly elected official of the City of St. Louis and answerable to the electorate, is the Chief Executive Officer of the St. Louis City Sheriff's Department.   He shall have authority over all Sections of the Department and all members of the Department.

Sheriff Vernon Betts was sworn in as St. Louis City Sheriff on January 1, 2017. Vernon Betts is a lifelong St. Louisan. A graduate of Beaumont High School. Vernon Betts is a former Public School teacher, a retired Ameren UE Employee and former Deputy Sheriff.
In the community Vernon is an Executive Board member of the NAACP, active in his neighborhood association, and executive Board member of the 100 Black Men and volunteers for Mathews-Dickey Boys Club.

He joined the St. Louis Sheriff's Department in 2008 as a Deputy.

The Sheriff commands the daily operation of the Department.  In his absence his Chief of Staff, having the rank of Colonel, assumes the duties of the Sheriff.

As Executive Officer the Sheriff shall be responsible for the execution of established policies and procedures.   He shall be responsible for the strict observance and enforcement of the rules and regulations of the Department Manual.  The Sheriff shall establish rules and regulations for the discipline of the Department.  He shall call staff meetings when necessary to discuss Department operations.  He supports an "Open Door Policy."

The Sheriff shall have assigned to his staff such members of the Department as may be necessary, reporting directly to him.  For example:

    Attorneys

    Chief of Staff

    Internal Affairs Unit

    Personal Secretary

5

DFT - 000976

# SECTION 2.000

ADMINISTRATIVE SECTION

2.001 SCOPE OF AUTHORITY:

The Administrative Section, commanded by a Major of the St. Louis City Sheriff's Office, will have, upon authority of the Sheriff, full responsibility and direction for that Section.   The Major shall only be subservient to the Sheriff and his appointed Chief of Staff who shall hold the rank of Colonel.

2.002 SPAN OF CONTROL:

The Administrative Section Commander will oversee the operation of the Budget Unit who is responsible for Payroll and Purchases of equipment and supplies.

The Commander will assure that the Training Unit is effectively training personnel of the Department.

He is obligated to the Sheriff to maintain all Personnel Records.

The Major will direct the daily activities of deputies assigned to Carry and Conceal Weapons Permits, Computers, Land Tax Sales and Cashiers.

2.003 QUARTERMASTER:

The Administrative Section Commander will issue all uniforms and equipment as needed.  He shall be responsible for reclaiming all uniforms and equipment from personnel terminating their employment.

6

DFT - 000977

## SECTION 3.000

OPERATIONS SECTION

3.001 SCOPE OF AUTHORITY:

The Operations Section, by authority of the Sheriff, shall be commanded by a Major of the St. Louis City Sheriff's Office. Among his other duties the Operations Commander will have the primary authority and responsibility for the operation, assignments and supervision of personnel assigned to his Command. The Major shall only be subordinate in these authorities and responsibilities to the Sheriff, and his Chief of Staff, who shall hold the rank of Colonel.

3.002 SPAN OF CONTROL:

The Operations Section shall consist of the following Units:

### Courtroom Unit:

Courtrooms are located in the Civil Courts Building, the Municipal Courts Building and the Juvenile Court Building. Deputies assigned are responsible for the custody of defendants, safety of others, and security of their Courtroom and protection of Judges of the Twenty Second Judicial Circuit of Missouri.

### Service Unit:

This Unit is responsible for serving and executing all Summons and Writs of the Court.

### Office Support Unit:

The Unit is located in the Civil Courts Building. Its assigned duties are the day to day office clerical duties, and care and custody of Service Records.

### Transportation and Jail Units:

This Unit is responsible for all prisoner movements in the City; it also has responsibility for the transportation of prisoners to and from the Penal Institutions throughout the State and Country.

DFT - 000978

### Hospital Security Unit:

This Unit is responsible for the care and custody of sick and injured prisoners confined to the Hospital.

### Security Unit:

The Security Unit is responsible for the security of all assigned posts and facilities designated by the Sheriff's Department.

### Criminal Records Unit:

This Unit is located in Room M21 of the Carnahan Courts Building.  It maintains and processes Criminal records, and is responsible for their care and custody.

### Property Room:

This Unit is the custodian of all criminal evidence and personal property.

8

## SECTION 4.000

APPLICATION AND SELECTION

4.001 **HIRING**

    A.  The Appointing Authority for the Sheriff's office is the Sheriff.

    B.  Minimum Qualifications

        1.  All applicants for deputy sheriff must be twenty-one (21) years of age at the time of application.
        2.  All applicants must be a high school graduate or possess a certificate of equivalency.
        3.  An Applicant may not have been convicted of a felony or have an indictment or information pending against him/her. Nor may an applicant be prohibited from carrying a firearm pursuant to an order of protection currently in effect. Any order of protection currently in effect against an applicant must be disclosed by the applicant.
        4.  All applicants must be a resident of the City of St. Louis at the time of application or become a resident of the City of St. Louis within ninety days after date of hire.

    C.  The Sheriff's Office is an equal opportunity employer. It does not discriminate on the basis of race, color, ancestry, national origin, sex, sexual orientation or disability.

    D.  All employees of the Sheriff's Office are employed "at will" and can be discharged for any reason or for no reason, provided such discharge is not for an illegal reason.

    E.    Prior to hiring, all applicants must:
        1.  Complete an application for employment with the Sheriff's Office. Applications are available online and at the Sheriff's Office, Carnahan Courthouse, 1114 Market Street, Suite 112. Applications can be mailed, or delivered to, the Sheriff's Office.

9

DFT - 000980

2. Undergo testing, examination and/or evaluation in order to determine the applicant's qualifications for the position.
3. Undergo an oral interview with the Sheriff and/or his designee(s).
4. Undergo a background investigation, including a credit history check.
5. Undergo a physical abilities test.  (NOT applicable for clerical or administrative staff and waivable at the discretion of the Sheriff)
6. Undergo a review by the Court.
7. Undergo a medical exam, including a drug screen once offered employment.

F.  Probationary Period

All newly hired deputies must serve one year of probation within which they must successfully complete a training course prescribed by Missouri Law at a Police Academy that is POST certified, instruction by the Sheriff's Office that covers the Sheriff's Office policies and procedures, and firearms training. Deputies will remain unarmed until successful completion of the firearms training. Once his/her probationary period is successfully completed, the deputy will be fully commissioned.

G. The above qualifications may be further reviewed, revised, or waived at the discretion of the Sheriff.

## 4.002 TRANSFERS - DEPUTIES AND SERGEANTS

A.    The transfer request process provided for herein is a means for personnel to express preferences for assignments and for management to be able to take into account such preferences when appropriate. The Sheriff or his/her designee(s) retain the power and responsibility for the assignment and transfer of personnel.

B.    Any deputy or sergeant with at least two years of service may request a transfer by submitting a transfer request form to the Sheriff or his/her designee.

10

The two years of service need not be in one unit.

C.    A transfer request will remain in effect for two years unless the member submits a new request or withdraws a request. A previously submitted transfer request can be withdrawn by submitting a memorandum to the Sheriff or his/her designee requesting such withdrawal.

D.    Whenever a vacancy arises or staffing needs require a change in assignments, the transfer requests currently in effect will be considered in filling such vacancy or changing such assignment.

## 4.003 PROMOTIONS - SERGEANTS AND LIEUTENANT POSITIONS

A.    Sergeant and Lieutenant Positions will be filled from eligibility lists established for each such position. The Sheriff will make appointments to these positions from the eligibility lists.

B.    Eligibility lists will be created utilizing a competitive testing process. This process will utilize a test or tests that may be written, oral, performance evaluations, the evaluation of training and experience of candidates, or any combination thereof as decided by the Sheriff.

C.    Eligibility lists will remain in effect for a period of two years unless good cause exists to extend a list or to create a new list before the expiration of a current list.

D.    Applicants must meet the minimum qualifications in order to participate in the promotional testing process. The minimum qualifications for the positions of Sergeant and Lieutenant are as follows:

1. Sergeant

a.    Applicants must hold the position of Deputy II, Deputy I or Senior Deputy and must have completed five (5) years continuous service as a Deputy II, Deputy I and/or Senior Deputy with the St. Louis Sheriff's Office. The Sheriff may waive the minimum continuous service requirement if the applicant possesses comparable

11

law enforcement or military experience or educational background in law enforcement. Applicants seeking a waiver, must request such a waiver in their memorandum submitted in accordance with the procedures described below, describing the experience and/or education that they believe merits the waiver.

b.  Applicants must not have any disciplinary suspensions or reductions in rank on their records within the previous five (5) years. Applicants must not have received any sick leave warning letters within the previous one (1) year. An applicant's complete disciplinary history will be considered during the testing process. Any applicant whose name has been posted to an eligibility list and subsequently receives a disciplinary suspension or a reduction in rank will be removed from the eligibility list and will be ineligible for promotion from said list.

c.  Applicants must have successfully completed all scheduled in- service training.

d.  Applicants must have achieved an overall rating of "Meets Standard" on any and all performance appraisals completed within the two (2) year period preceding the application deadline. Any applicant whose name is posted to an eligibility list and subsequently receives an overall rating of "Below Standards" on a performance appraisal, will be removed from the eligible list and be ineligible for promotion for one (1) year.

2.  Lieutenant

a.  Applicants must have completed two years of continuous service as a sergeant.

b.  Applicants must not have any disciplinary suspensions or reductions in rank on their records within the previous five (5) years. An applicant's complete disciplinary history will be considered during the testing process. Any applicant whose name has been posted to an

12

eligibility list and subsequently receives a disciplinary suspension or a reduction in rank will be removed from the eligibility list and will be ineligible for promotion from said list.

      c.    Applicants must have successfully completed all scheduled in service training.

      d.    Applicants must have achieved an overall rating of "Meets Standard" on any and all performance appraisals completed within the two (2) year preceding the application deadline. Job performance history may also be considered during the testing process. Any Applicant whose name is posted to an eligibility list and subsequently receives an overall rating less than "Meets Standards" on a performance appraisal, will be removed from the eligible list and be ineligible for promotion for one (1) year.

E.    Notices of promotional examinations will be distributed to all potential applicants.

F.    Application Process

    1.    The Notice of Examination will include a deadline for applicants to apply by submitting a memorandum expressing interest in taking the examination. The deadline will be at least two weeks from the date the Notice is distributed. The deadline may be extended by the Sheriff at his/her discretion. If the deadline is extended, a Revised Notice of Examination will be distributed with the new deadline.

    2.    Applicants must submit a memorandum directed to the Sheriff or the designee identified in the Notice of Examination expressing interest in taking the examination. The memorandum should also explain why the applicant believes that he/she is well qualified for promotion.

    3.    Once the application deadline has passed, the Sheriff or his/her designee will determine whether each applicant meets the minimum qualifications.

DFT - 000984

All applicants approved to participate in the promotional examination process will be advised of the nature and time of the examination. Applicants must utilize their available leave time to participate in the examination. No compensatory time will be granted for such participation.

4.     Candidates who successfully complete the examination process will be placed on the eligibility list in rank order based upon their overall exam scores. Eligibility lists will not be made available to candidates, however, each candidate will receive a letter notifying the candidate of his/her ranking on the eligibility list.

5.     Vacancies will be filled from eligibility lists. Final selections will be based upon examination scores, as well as upon an interview with the Sheriff or his/her designee and the specific position to be filled. Depending upon the number of candidates on the eligibility list, only candidates whose rankings fall within a designated top percentile may be interviewed. If a candidate is within the designated top percentile to be interviewed and has been interviewed within the previous four (4) months for a vacancy, he/she may or may not be re-interviewed. All candidates who are within the designated top percentile and have not been interviewed within the previous four (4) months will be interviewed.

6.     The above promotion process is subject to modification, updating or waiver at the sole discretion of the Sheriff.

DFT - 000985

## SECTION 5.000

PERFORMANCE APPRAISALS:

5.001 PURPOSE:

The performance appraisal is a tool to promote effective personnel Management in the Sheriff's Office. It is a standardized method of providing feedback regarding an employee's performance in order to improve performance. It should be utilized to facilitate discussions between employees and their supervisors about aspects of performance that can be improved and specific ways that such improvement can be measured.

5.002 THE PERFORMANCE APPRAISAL PROCESS

A.      When employees will be rated - All employees of the Sheriff's Office will be rated annually during the month of their anniversary hiring date.

B.      Who rates an employee - Employees will be rated by their immediate supervisor. Once completed, the performance appraisal will be reviewed by the supervisor's commander. If an employee has not been under the supervision of his/her current supervisor for the entire preceding year, such supervisor is encouraged to consult with the employee's prior supervisor.

C.      Definitions

   1.      Appraisal Dimensions

      a.      Compliance with Rules and Authority:  The extent to which the employee is knowledgeable and complies with rules, regulations, statutes and ordinances and the degree to which the employee accepts and follows command decisions.

      b.      Quality of Work:  The accurateness of the work performed and the degree to which the job is performed.

      c.      Productivity: The ability to complete the amount of work expected for the position efficiently and in a timely fashion; the willingness and ability to take on tasks beyond the normal duties of the employee's position.

15

d.    Interpersonal Skills: Displays courteous and helpful behavior toward the public and toward co-workers.

e.    Knowledge of Position:   The extent to which the Employee is knowledgeable about his/her position and assignment within the Department.

f.    Work Habits:  Adherence to policies regarding Attendance, punctuality, use of leave; uses time efficiently.

g.    Attitude toward Work:  Displays a positive and professional demeanor.

h.    Appearance:  Adherence to policies regarding uniform and dress; maintains a professional, well-groomed appearance.

i.    Leadership:  The extent to which a sergeant, lieutenant or captain accomplishes objectives and obtains results through direction and guidance of subordinates; effective delegation of responsibility; the ability to evaluate the strengths and weaknesses of subordinates, provide instruction and coaching to subordinates and recommend needed training.

j.    Administrative Skills: The extent to which a Sergeant, Lieutenant or Captain plans and organizes the direction of his/her unit to accomplish objectives; makes assignments and schedules personnel; establishes priorities.

k.    Overall Performance: All aspects of the employee's work performance, including all of the individual performance dimensions and any other factors that impact performance.

2.    Level of Performance:

a.    Exceeds Standards:  Consistently surpasses Expectations; requires no correction in the particular performance dimension.

b.    Meets Standards: Consistently and reliably meets Expectations; seldom requires correction or reminders regarding rules, regulations and/or proper performance.

16

      c.     <u>Below Standards</u>:  Fails to consistently meet Expectations; periodically or frequently requires correction or reminders regarding rules, regulations and/or proper performance.

D.    Completing the Performance Appraisal

1.    Rate the employee's performance over the entire rating period, i.e., the preceding year. Avoid only focusing on the most recent performance.

2.    Do not consider the employee's performance that occurred prior to the rating period.

3.    Review all existing documentation regarding the employee's performance (e.g., commendations; complaints; awards; attendance records).

4.    The employee should be rated based upon the expectations for his/her position. Do not be influenced by the employee's length of service.

5.    If the employee was supervised by another supervisor during a significant part of the rating period, consult with the other supervisor, if still employed by the Department. If another supervisor provides input, such input should be notes in the comments section of the performance appraisal.

6.    Have a clear understanding of the performance dimensions and the performance levels while rating the employee.

7.    Raters are strongly encouraged to explain the rating of any performance dimension that is "Below Standards" in the comment section of the performance appraisal.

E.    Procedure

1.    By the third day of the month, each supervising officer will receive a list of all subordinates who report directly to such supervising officer and hiring anniversary date falls during that month. Each supervising officer's commander shall receive a copy of each such lists sent to all supervising officers under the commander's command.

2.    The supervising officer shall complete the performance appraisal in accordance with subsection D, above, and sign it.

17

3.     The supervising officer shall meet and discuss the performance appraisal with the employee. The employee will be given one working day after such meeting to sign the performance appraisal and return it to his/her immediate supervisor. The employee's signature indicates review of the performance appraisal, not agreement with it. The employee may include comments in the comments section of the performance appraisal or in an attachment and may indicate any disagreement in the comments.

4.     After receiving the performance appraisal from the employee, the supervising officer shall present such appraisal to his/her commanding officer who shall review it, indicate whether he/she concurs, include any comments and sign the performance appraisal. If the supervising officer's commander does not concur, such commander should explain such non-concurrence in the comments section. After signing the performance appraisal, the commander shall provide the supervising officer with a copy of the completed performance appraisal to give to the employee, along with any attachments and submit the original to the Sheriff or his designee.

5.     The original completed performance appraisal must be submitted to the Sheriff or his designee by the last day of the month it is due, unless extenuating circumstances exist and he/she has submitted a memorandum to the Sheriff or his/her designee explaining such circumstances and an extension has been approved.

6.     The Sheriff will review all completed performance appraisals. In the event that the supervising officer has rated the employee "Below Standard" overall or in any dimension, the Sheriff, after reviewing the appraisal, the supervising officer's commander's comments and any comments of the employee, may decide to modify any "Below Standards" rating. If the performance appraisal is modified, the Sheriff will forward copies of the modified performance appraisal to the employee, the supervising officer and the supervisor's commanding officer.  The Sheriff reserves the right to modify, waive or amend the above outlined appraisals.

DFT - 000989

SECTION 6.000

DRUGS, ALCOHOL, AND OTHER PROHIBITED ARTICLES

6.001 POLICY:

To maintain a safe work environment, it is the policy of the St. Louis City Sheriff's Office to prohibit its employees from using, possessing, selling, distributing, or transporting any prohibited article while on the job, on Department occupied premises, or while in or aboard Department vehicles, or other premises or vehicles associated with their daily assignments. Such use, possession, sale and/or transportation of such articles by any person poses a serious threat to the safety of Department employees and visitors, and to the Departments operations, and will not be tolerated.

6.002 PROHIBITED ARTICLES:

Prohibited articles include illegal and unauthorized drugs or drug paraphernalia, alcoholic beverages, or any unauthorized weapons or ammunition, contraband, and stolen property.

Illegal drugs include marijuana, narcotics, and all other drugs not prescribed by a licensed physician for use by the person possessing them.

Unauthorized drugs include excessive quantities of prescribed drugs, which may adversely influence performance or behavior.

6.003 ENFORCEMENT

The Sheriff's Office reserves the right, without prior announcement, to have authorized personnel conduct searches and inspections of employees, employees' personal effects, lockers, baggage, vehicles, and quarters on Department property, or where assignments are carried out, for determining whether any employee is in possession of any prohibited articles.

Searches can and will be conducted at any time without prior announcement. Any prohibited articles discovered through Department searches shall be taken into custody and turned over to the proper law enforcement authorities.

Any Department employee who refuses to submit to a search or is found in possession of prohibited articles without an explanation satisfactory to the Department will not be allowed in any Courthouse, in or aboard any Department vehicle, or any other facility where duty assignments are carried out and shall be subject to disciplinary action up to and including immediate discharge.

19

6.004 EMPLOYEE ASSISTANCE:

The serious problem of drug and alcohol abuse that affects many companies and our society must be addressed through programs offering rehabilitation, such as the Employee Assistance Program. However, prior notification must be made to the Sheriff, and the employee must voluntarily admit to an existing problem with Drugs and/or Alcohol.

6.005 DRUG TESTING:

The purpose of this Section is to define the Drug Testing Program in the Sheriff's Office. It will outline who will be tested, procedures to be used, under what circumstances testing will be conducted, and other criteria dealing with the violation of Department Policy on drug and alcohol abuse.

6.006 TESTING AGENT:

Any health service entity selected by the Sheriff offering full-service occupational medical services to include pre-employment physical examinations, drug and alcohol screening and medical treatment for work-related injuries.

6.007 CIRCUMSTANCES LEADING TO TESTING:

All applicants shall sign a written agreement to submit to drug testing on request of the Sheriff. The test shall be conducted as a pre-employment requirement, and at random thereafter. Testing is automatic in all cases involving discharge of a weapon, a vehicular accident with a Department vehicle, or where there is evidence of conduct deemed abnormal. The test will take place as soon as possible.

6.008 TEST FAILURE:

Any applicant failing a Drug Screening Test will be rejected.

Any applicant refusing to take a Drug Screening Test will not be considered.

Any employee failing a Drug Screening Test will be entitled to one (1) additional screening of the same sample at his/her cost. Failure of an employee to pass a Drug Screening Test will result in the termination of that employee's employment with the Department.

DFT - 000991

## SECTION 7.000

**7.001 Subject:**          **USE OF DEADLY FORCE**

<u>PURPOSE:</u>  During their duties, any Deputy of the St. Louis Sheriff's Office may be called on to use deadly force.  The purpose of this policy is to provide a single source of reference for all Deputies as to authorization, carrying and discharge of firearms.

<u>POLICY:</u>  The use of deadly force in the defense of life, or to effect the apprehension of an escaped felon, is an act of the utmost seriousness.  Justification for the use of a Deputy's firearm shall be based on the facts known to the Deputy or perceived by the Deputy at the time he/she decides to discharge their firearm.

**<u>SUMMARY:</u>** Every possible consideration must be taken prior to the use of a firearm. If a deputy believes that under existing conditions he/she should not use their weapon to apprehend a felon or person who is not a direct threat to the life of a deputy or other persons, he/she will not be criticized or disciplined for his/her decision.

A.     **<u>GUIDELINES FOR A FLEEING FELON</u>**

G. The following guidelines are provided to aid deputies who are required to discharge a firearm at a fleeing felon. The discharge of a firearm is an irreversible action, and, if possible, a deputy should prior to firing make the following evaluation.

   a.  A deputy should resolve in his/her mind any doubt concerning the propriety of the use of firearms prior to firing.

   b.  Is the person armed

   c.  All other methods of apprehension.

   d.  The age of the pursued and any offenses committed.

   e.  Direction the firearm is to be discharged.

   f.  Use extreme caution when the possibility exists that another person or property may be hit.

   g.  The danger of firing while running or jumping.

   h.  If possible, and if time and conditions permit, a deputy should assume a Department approved firing position as taught in the Department firearms training course.

21

## B. DISCHARGE OF A FIREARM

1. A Deputy Sheriff is authorized to prevent an attack with a deadly weapon upon him/herself, a fellow deputy, or a member of the public, by utilizing whatever force is deemed necessary including the use of firearms to end such attack.

2. Internal Affairs will investigate all incidents in regards to the discharge of a Firearm on or off duty, with the only exceptions being target practice at an approved range or any sporting events such as hunting and shooting matches.

## H. DEPUTY MAY DISCHARGE A FIREARM FOR ANY OF THE FOLLOWING REASONS

1. To defend himself or another person from death or extreme physical harm.

2. When attempt is made through the use of a deadly weapon to free or rescue a prisoner who is in lawful custody of a deputy.

3. To kill a dangerous animal

## I. RESTRICTIONS ON DISCHARGING A FIREARM

### A Deputy Sheriff shall not discharge his/her firearm:

a. When it appears likely that an innocent person or bystander may be hit.

b. At anyone who he/she believes may be a juvenile unless the action of the juvenile pose a direct threat to the life of the deputy or other innocent person, and only then as a last resort.  The deputy will be required to prove that his/her judgement in the matter of age was reasonable. (A juvenile is defined as a youth who is less than seventeen (17) years of age.

c. At a moving vehicle or from a moving vehicle unless the occupant(s) of the vehicle represents a direct threat to the life of the deputy or other innocent persons and then only as a last resort.

d. At a crowd of persons.

e. Warning shots are prohibited due to the possibility of injury to bystanders and the fact that the pursued may be prompted to return fire.

f. At a person who is holding a fellow deputy or innocent person hostage when firing would endanger the hostage or another innocent person.  The proper response to a hostage situation is to immediately notify the City of St. Louis Police Department and the City of St. Louis Sheriff's Office Command Staff.

DFT - 000993

## E.  **DESTROYING ANIMALS**

1. Except in emergencies, an animal will be destroyed only after all attempts to notify an agency capable of disposing of the animal have been made, and the agency will not respond or has not responded after a reasonable length of time.

   a. Effect steps to insure the safety of all citizens, property and other animals by moving the animal to be destroyed to an area of relative safety and out of public view if possible.  This area may be a rear yard, vacant lot, or a roadway median strip.  The primary concern is that the animal be placed on soft ground (rather than pavement) to decrease the possibility of ricochet.

   b. Shoot the animal from close range if possible.

   c. Shoot down into the animal so that the projectile, if exiting the animal's body will enter the soft ground.

   d. Shoot the animal in the brain to minimize suffering.

   **NOTE: If the possibility of rabies exists or the animal has bitten someone, do not shoot the animal in the brain.  In these cases, the animal should be shot in the chest cavity, directly in front of either leg.**

## F.  **RESPONSIBILTY OF PERSONNEL**

1. Immediately following the discharge of a firearm, on or off duty, it will be the responsibility of the deputy or deputies involved to initially notify the Local Police, Sheriff's Office, 911, then their immediate supervisor, command officer and the Sheriff.  The immediate supervisor will immediately respond to the scene.

2. When a deputy is involved and his/her immediate supervisor is unable to respond, the supervisor in charge of the Unit will respond immediately.  The Section Commander will respond and take charge of the scene until relieved by the agency in charge.

3. The immediate supervisor responding to the scene will be responsible to Command and protect the scene until arrival of the local jurisdiction agency.

23

G.  **THE UNIT COMMANDER REPORTING TO THE SCENE WILL BE RESPONSIBLE FOR THE FOLLOWING:**

    a.  Obtaining the name and address of all witnesses for investigation purposes and protecting the scene until relieved by the local agency in charge.

    b.  The Unit Commander will remain at the scene until no longer needed.

1.  When a deputy and/or deputies are involved in a shooting, whether it be on or off duty, he/she will remain at the scene until the investigation is complete. If the circumstances are such that the presence of the deputy and/or deputies at the scene may cause a hazardous situation, it will be within the discretion of the ranking deputy at the scene, or the ranking Police Officer, to vacate the area. The ranking deputy and/or the ranking Police Officer will instruct the deputy and/or deputies involved to report to a chosen location to standby for further instructions.

2.  Deputies who are witnesses to an incident will remain at the scene until the investigation is complete, unless otherwise instructed.

3.  Any deputy involved in a shooting must protect his/her weapon for investigation and examination.

4.  When a deputy who has discharged his/her firearm is injured, his/her weapon will be retained in the custody of the ranking Commander at the scene unless the firearm is needed for further investigation by the local authorities at which point the ranking Commander shall obtain a receipt from the local authority for the firearm and forward such receipt or firearm to the Sheriff's Amory. All weapons, Department owned or personally owned, will be made available for examination.

5.  When a deputy and/or deputies discharges a firearm, he/she will be required to complete a Discharge of Firearms Report that will detail the circumstances of the discharge of the weapon. Any other deputy and/or deputies having pertinent information regarding the discharge of a deputy's firearm will complete a supplemental report. The supervisor will insure that a complete report is made of the incident by all deputies involved. The report/s will be forwarded through the chain of command to the Internal Affairs Unit.

6.  Data pertaining to the discharge of a firearm by a deputy and/or deputies shall be retained in both a Firearm File and the deputy's personnel file.

7.  Firearm reports will be maintained to determine if there is a need to modify Department Policy regarding firearms and/or the application of deadly force. The completed Discharge of Firearms Report will be maintained by the Sheriff's Office during the entire tenure of a deputy's employment.

DFT - 000995

H.  **DEPUTIES INVOLVED IN A HOMICIDE**

    1.  The policy outlined hereafter is not intended to, nor does it imply or indicate, that a deputy has acted improperly.

    2.  The deputy involved shall notify 911 and the Sheriff as soon as possible.

    3.  When a deputy, on or off duty, takes the life of a person, he/she will be responsible to cooperate with the agency in charge investigating the homicide.  The Sheriff and Internal Affairs Unit will conduct a thorough and objective investigation of the facts and circumstances as soon as possible.

    4.  The internal investigation will be separate and apart of any investigation conducted by the agency in charge.

    5.  The deputy and/or deputies involved in the homicide may be placed on Administrative Leave by the Sheriff, with or without loss of pay or benefits, pending the results of the preliminary investigation.

    6.  The deputy and/or deputies shall be available at all times for official interviews and statements regarding the case, and shall be subject to recall to duty at any time.  At no time will a deputy make unauthorized statements to the news media.

    7.  The deputy and/or deputies shall not discuss the case with anyone except the Sheriff, Internal Affairs, Investigators from the agency conducting the investigation, the Prosecuting Attorney's Office, the Sheriff's Office Legal Counsel and his/her personal attorney.

    8.  **AFTER A DECISION HAS BEEN MADE BY THE PROSECUTERS OFFICE RELATIVE TO THE HOMICIDE, THE SHERIFF MAY:**

    a.  Suspend the deputy and/or deputies without pay if criminal charges are filed, or may reinstate the deputy and/or deputies to active duty if the homicide is determined to be justified, except, in those situations where pending Internal Department charges may require that the deputy and/or deputies to be under suspension pending further investigation.

I.  **AGENCY IN CHARGE/SHERIFF'S OFFICE PROCEDURES**

    1.  The agency in charge of the investigation will determine when the deputy and/or deputies involved are no longer needed at the scene.

25

2.  The deputy and/or deputies involved will be escorted to the agency's headquarters, accompanied by the Sheriff or someone of command rank, for further investigation by the agency conducting the investigation.

## 7.002 SUBJECT: Approved on Duty and Off Duty Weapon

PURPOSE: To establish specific guidelines concerning the carrying and use of firearms by members of the Department

A.  **AUTHORIZATION**

According to state law, a peace officer is allowed to carry an approved firearm on duty as well as off duty after qualifying with that firearm. Further, the State has authorized the Office of the Sheriff to regulate this Department's deputies regarding the qualification, carrying and handling of firearms. The Department requires its deputies to carry a department issued or approved firearm while on duty. The Sheriff also allows deputized personnel to carry a department approved firearm off duty. The carrying of this firearm while off duty is left to the Deputies discretion.

B.  **ISSUED/APPROVED FIREARMS**

1.  The Department Armorer has the responsibility to recommend to the Office of the Sheriff, which firearms may be carried either on or off duty by deputized personnel.

2.  The current Department issued firearms approved by the Sheriff for use are:
    a.  Glock Model 17 Gen 4, 9mm, semi-auto pistol

3.  The following Department owned special weapons are approved for use while on duty, only when a Deputy has been trained and qualified with the following weapons will they be allowed to utilize them if needed:

    a.Remington 870, 12 gauge pump-action shotgun;
    b.Taser X26 orX2

4.  The Department Armorer will inspect all Department owned firearms prior to them being issued.

5.  A deputy may also purchase a privately owned firearm that he/she intends to carry either on or off duty as a primary weapon.

DFT - 000997

6. Listed below is a detailed description and specifications of privately owned firearms approved by the Office of the Sheriff Department for use on duty. No other firearms will be approved.

### A. AUTHORIZED MANUFACTURERS

1. Beretta
2. Smith & Wesson
3. Glock Listed
4. Kahr Arms
5. Taurus
6. Sig SAUER
7. Ruger

### B. MODELS

Open

### C. ACTION TYPE / TRIGGER

1. Double Action (DAO) / Safe Action
2. Minimum 9 pound pull (Glock - N.Y. Plus)

### D. FINISH

Optional factory type

### E. CALIBER / MAGAZINE CAPACITY

1. 9MM (9 X 19 MM)
2. Minimum 6 round magazine as presented and sold in manufacturer's catalog

### F. SIGHTS

Fixed or adjustable, factory or like aftermarket 3 dot sights

### G. GRIP

Optional, must remain service style

### SPECIAL FEATURES

1. Magazine disconnect optional
2. No models of pistols that are compensated will be authorized

**NOTE: All of the specifications must be in place at the time of inspection and transition.**

### . DEPARTMENT APPROVED AMMUNITION

27

1. Only Department issued ammunition will be used in Department issued or privately owned firearms while carried on or off-duty.

2. The following Department ammunition is approved for use as indicated:

   a. <u>9mm 147 Grain. Subsonic Bonded Hollow Point</u> - Standard Department issue for Glock 17 Gen 4 as well as Department approved personally owned weapons;

   b. <u>12 gauge #00 Buck</u> - Department approved round for the Remington 870 shotgun; and

   c. <u>12 gauge Reduced Recoil Slug</u> - Department approved round for the Remington 870 shotgun;

3. When practicing at locations other than the Department Range, the deputy is not restricted in the choice of ammunition to be used in their privately owned firearm. Good judgment should be used in the selection of all practice ammunition.

4. No factory reloads will be used in any Department firearm.

D. **<u>CARE OF DUTY WEAPONS</u>**

1. Deputies will regularly inspect weapons to ensure that they are in proper working order, clean and free of signs of corrosion or deterioration.

2. No deputy will carry any weapon that has been modified internally or externally in any way except by Department authorization.

3. Deputies who practice on their own will ensure that duty weapons are cleaned prior to reporting to duty on their next scheduled working day.

E. **<u>REPLACEMENT OR REPAIR PROCEDURES</u>**

1. Repairs to Department owned firearms are to be done only by the Department Armorer or his/her designated assistants.

2. During normal business hours, if a deputy feels that there is something wrong with any Department issued or approved firearm, he/she will immediately contact Armory personnel for assistance. Deputies will not carry any firearm found to be defective or which he/she believes is defective.

3. In the event that a firearm must be replaced for whatever reason, the deputy needing this service must contact the Department Armorer during normal business hours.

DFT - 000999

4.   Deputies involved in an incident that require them to relinquish possession of their firearm, i.e. a police investigation, will obtain a receipt from the Police for the weapon that has been seized, a replacement firearm may be obtained from the Armory during business hours. The Supervisor will send an email message to the Department Armorer prior to issuance of another weapon.

5.   Any Firearm found to be defective at a training session will be repaired during the training session if possible. If the weapon cannot be repaired immediately, the deputy will be referred to the department Armorer for repairs or replacement.

**NOTE:** Additionally, anytime a Department-issued firearm is seized or transferred to anyone other than the Deputy to whom the weapon is assigned, an email message will be sent to the Department Armorer describing the reason for the transfer of the weapon and the location of the weapon.

## FIREARMS MAINTENANCE RECORDS

I.   The Department Armorer is responsible for maintaining accurate records as to make, model and serial number all Department owned firearms and to whom they are issued or their exact storage location.

2.   The Armorer will also maintain records as to the make, model and serial number of all personally owned firearms approved for use by members of the Department.

## SECURITY OF FIREARMS

1.   Deputies are responsible for the security of all Department issued firearms.

2.   The Department supplies a gun lock for all Department issued weapons and recommends it be used when the firearm is not being carried.

## H.   POLICY DISTRIBUTION

Deputies will be issued copies of the Department Use of Force Policy, they will review said policy and sign a waiver stating that they have read it, prior to being authorized to carry any weapons.

## UNIT SUPERVISOR DUTIES

It is the duty of Unit Supervisor to ensure that the deputies under their

DFT - 001000

command are only utilizing weapons with which the deputies have received training and a qualifying score. If a deputy is noticed to be carrying a weapon that they have not been trained with, they will immediately be sent to the department Armorer for a weapons inspection to check that they are in compliance with the rules and regulations.

J.   **AFTER MARKET ACCESSORIES**

No aftermarket accessories, such as grips, magazines, etc. are authorized for Department owned firearms, unless specifically approved by the Department Armorer.

K.   **RETURN OF DEPARTMENT ISSUED EQUIPMENT**

Upon a deputies resignation, retirement or termination, he/she is required to return his/her Sheriff's Office issued Equipment, Failure to return any equipment as required will result in the assessment of a fee to compensate for the replacement cost of the missing items and will be deducted from their last check. If a weapon or badge that was issued is not returned to the Sheriff's Office as required, a Police Report will be generated noting that the item was lost or stolen.

## FIREARMS QUALIFICATION

## SEMI-ANNUAL QUALIFICATION – HANDGUN / SHOTGUN

1.   The Sheriff's Office has established minimum standards of firearms performance for all deputies.
All deputies are expected to comply with these standards as a condition of employment with the exception of the Sheriff for certain office personnel. Firearms qualification is mandatory for each deputy. A deputy must qualify with the firearm he/she intends to carry while on duty. Any deputy that must use a Sheriff's Office owned shotgun must also qualify a minimum of twice a year. All deputies must be fit for duty when reporting to the range for qualification or training. A certified weapons instructor will monitor all training and qualification. Both training and qualification will include a review of the Sheriff's Office Use of Force Policies.

2.   If a deputy intends to carry an approved personally owned firearm for off duty purposes only, he/she must qualify with that firearm twice a year with a certified firearms instructor at their own expense.

## QUALIFICATION SCHEDULE

30

1.   The Training Commander will coordinate the qualification sessions, with the approval of the Sheriff. These dates will be sent to all supervisors via email and a memorandum will be posted. Deputies are scheduled according to their assignments and with the least impact to the department.

2.   In the event a deputy cannot attend as scheduled, it is the responsibility of the deputy, with the assistance of his/her Supervisor and the approval of the Training Commander to reschedule. Deputies will refer to the master firearms qualification schedule to arrange to attend another qualification session as soon as possible. Please remember that there are only a limited number of spaces available at the range. Deputies failing to comply with the mandatory firearms qualification program will be subject to disciplinary action.

NOTE 2: Deputies on leave or limited duty/work related injuries will be handled on a case-by-case basis.

## REPORTING TO THE RANGE

All deputies are to report to the range at their assigned time with their department issued or their approved on duty weapon and magazines, fully loaded with the ammunition that is supplied by the department.

## PRIVATELY OWNED FIREARMS AND HOLSTERS (UNIFORMED DEPUTIES) or (PLAIN CLOTHES DEPUTIES)

Each deputy wanting to qualify with his/her approved on duty privately owned firearm must report to the Firearms Training Facility with a holster described as follows:

2.   Level II security or greater holster.

3.   For Uniformed Deputies the holster will have a basket weave finish.

4.   For Plain Clothes Deputies the holster may be of any type of finish that meets the same security requirements as stated above.

## QUALIFICATION COURSE

The design and implementation of the qualification course will be the responsibility of the Firearms Training Unit. Upon successful completion of the course, the deputy's name, E# and firearms information, as well as the day, the date, the time, and the score will be recorded for future reference. These records

31

will be maintained and stored with the training Commander.

Should a deputy fail the course of fire, the deputy will be afforded a second attempt to requalify on the same course. Should a deputy fail a second attempt to qualify, that deputy will be required to requalify at their own expense with a certified firearms instructor and provide documentation to the training Commander of successful completion of said requalification within 30 days after failing the first course.

## SANCTIONS

All training is considered mandatory for deputies to attend, unless noted otherwise. Failure to attend any scheduled training may be construed as a refusal to train. Deputies who fail to attend training or who refuse to participate in training will be subject to disciplinary action up to and including termination of employment.

The Sheriff will be notified if any deputy fails to attend training or refuses to participate in training.

It is understood that illness, injury or pregnancy may prohibit a deputy from complying with the scheduled training sessions. These cases will be dealt with on an individual basis.

## 7.003 SUBJECT: APPROVAL AND APPLICATION FOR PRIVATELY OWNED FIREARM

**PURPOSE:** To establish procedures for the approval and application process for privately owned firearms.

A.   **GENERAL INFORMATION**

When a deputy desires to carry a privately owned firearm, on or off duty, he/she will prepare an "Application to Carry Privately Owned Firearm," SLSD Form ARM-010. These forms are available in the Department Armory.

NOTE: Carrying privately owned, Department approved firearms is a privilege, which may be revoked for any violation of this Order.

B.   **DEPARTMENT APPLICATION PROCEDURE FOR PRIVATELY OWNED WEAPONS**

1.   Obtain an "Application to Carry a Privately Owned Firearm," from the Department Armory.

32

2. Go to the Armory Unit and have the armorer;
    a.   run the gun's serial number
    b.   sign the appropriate lines on the "Application to Carry a Privately Owned Firearm Form SLSD ARM-010"
    c.   attach a copy of the serial number check to the completed form
    d.   qualify with the firearm at an approved department range

3. Bring the gun and all paper work to the Department Armorer after qualifying. After inspection of the firearm. The Armorer will sign the "Application to Carry a Privately Owned Firearm Form SLSD ARM-010" and forward the paperwork to the Sheriff or the Colonel for approval.

4. The Colonel/Sheriff will approve or disapprove the "Application to Carry a Privately Owned Firearm Form SLSD ARM-010" and forward the final paperwork to the Department Armorer who will then contact the deputy with the results of the application.

5. No Deputy shall carry a firearm until that deputy has completed the Department's required weapons training course and has qualified with the weapon on an approved range.

## C. <u>IF A PRIVATELY OWNED FIREARM IS NOT CLEARED THROUGH THE N.C.I.C GUN FILE CHECK</u>

Should a firearm not be cleared through the N.C.I.C. gun file check, the deputy will immediately be directed to the Sheriff and Internal Affairs Division for further review.

<u>**NOTE:**</u> If a deputy has a CCW permit and wishes to carry another type of firearm off duty they may do so under the authority of the CCW permit only and not that of the Sheriff.

## 7.004 SUBJECT: DEPARTMENT OWNED SPECIAL WEAPONS

<u>**PURPOSE**</u>**: To establish procedures governing Department owned special weapons**

33

## A.  **AUTHORIZATION AND APPLICATION OF DEPARTMENT OWNED SPECIAL WEAPONS**

1.  Weapons considered to be in this category include, but are not limited to the following:

a.  Remington 870 shotgun
b.  Taser X26/X2

2.  Unit Commanders will collaborate with Special Weapons Instructors to determine a sufficient number of deputies, necessary to fulfill the unit's mission, to receive special weapons training. Commanders are responsible to ensure that only qualified deputies are permitted to use these special weapons.

3.  The deputy must successfully complete the specialized training course, designed for the particular weapon, before the weapon is issued or used in any manner.

## B.  **ANNUAL TRAINING AND PROFICIENCY FOR THE X26/X2 TASER**

Annual training and a demonstrated proficiency with the use of the weapon will be required of all deputies authorized to use the X26/X2 Taser.

DFT - 001005

**7.005 Subject: MAINTENANCE OF DEPARTMENT HANDGUNS, SHOTGUNS**

<u>PURPOSE</u>: To establish procedures governing emergency equipment and maintenance, repair and test fire of Department owned handguns, shotguns and carbines.

## A.   <u>WEAPONS MAINTENANCE, REPAIR AND TEST-FIRING</u>

1.   The Department Armory will conduct annual cleaning and inspection of all Department weapons. This should occur between the end of one year's qualification sessions and the beginning of the next year's sessions.

2.   The Department Armorer, will contact the Unit Commander and advise the Unit Commander when they want them to bring their weapons to the armory for inspection.

3.   The Department Armorer will prepare a report for each Unit Commander with a complete list of all weapons assigned to the Unit that were inspected.

4.   Annual cleaning and inspections performed by the Armorer does not relieve any Deputy from the responsibility of normal maintenance that would be considered reasonable under usual circumstances. A general inspection and wipe down of a weapon with a cloth is all that is needed. Department owned shotguns will not be disassembled by anyone other than the Armorer.

5.   Damaged or defective weapons will be conveyed to the Armory during normal business hours. A replacement weapon will be issued if available until that Units weapon is repaired.

6.   The Department Armorer will only repair Department owned weapons with which he/she is trained to repair.

DFT - 001006

# CITY OF ST. LOUIS SHERIFF'S OFFICE

## <u>APPLICATION TO CARRY PRIVATELY OWNED FIREARM ON DUTY</u>

DATE: _____

TO: _____
                *(SHERIFF)*

FROM: _____
         *Deputies Name*          *Rank*     *E-Number*     *Assignment*

Sir,
   I respectfully request permission to carry a privately owned 9mm DAO firearm while on duty.  The firearm is a (check one)

☐ Beretta  ☐ Smith & Wesson  ☐ Glock  ☐ Kahr Arms  ☐ Taurus/Rossi  ☐ Sig Sauer  ☐ Ruger

Model: _____   Barrel Length: _____   Serial #:_____

The firearm was purchased from_____
                              *(Person or Dealer)*
_____ On _____
      *(Address)*                          *(Date)*

Cleared – NCIC Gun File  ☐ Yes  ☐ No  Signature: _____
                                           *Armorer*        *E-Number*      *Date*

**The firearm listed above may NOT be carried on duty until a passing qualification score from an approved Department range is attached with this application and the application has been approved for on duty carry.**
The Deputy must qualify semi/annually with the above listed firearm on an approved Department range.
Holsters are required for qualification and must meet the following criteria.
<u>Uniformed Deputies – Strong Side Only, Mid Ride Holster, Level II Retention or Greater Level Retention Basket Weave Finish.</u>
<u>Plain Closed Deputies – Strong Side Only, Holster must fully enclose trigger guard, securely attach to belt or clothing and Level II Retention or Greater Level Retention.</u>
<u>Caliber of firearm and Barrel length will conform to Sheriff's Department policy.</u>
Only Department issued ammunition shall be used, in privately owned or Department owned firearms while it is carried on duty.
Carrying a firearm is a privilege which may be revoked for any violation of the Department Manual and/or special order relating to firearms.
By signing this form you are stating the firearm listed above is in good working order and that you will maintain it properly.

Signatures: _____  Date: _____

---

                                  *(Office Use Only)*

☐ Approved       ☐ Disapproved

_____
(Colonel / Sheriff)          Date

*SLSD Form ARM-010*

36

## CITY OF ST. LOUIS SHERIFF'S OFFICE

## <u>APPLICATION TO CARRY PRIVATELY OWNED 9mm DAO FIREARM OFF DUTY</u>

DATE: _____

TO: _____
        (SHERIFF)

FROM: _____
        Deputies Name                    Rank          E-Number          Assignment

Sir,
  I respectfully request permission to carry a privately owned 9mm double action only firearm off duty.

Make: _____         Model: _____         Barrel Length _____

Serial #:_____         Caliber: 9mm

Cleared – NCIC Gun File   ☐ Yes  ☐ No   Signature:

_____          (Armorer)              (E-Number)          (Date)

Carrying a firearm is a privilege which may be revoked for any violation of Department Manual and/or special order relating to privately owned firearms.
By signing this form you are stating the firearm listed above is in good working order and that you will maintain it properly.

Signatures: _____

Date: _____

| *(Office Use Only)* | |
| --- | --- |
| ☐ Approved | ☐ Disapproved |
| _____ | |
| (Colonel / Sheriff) | Date |

*SLSD Form ARM-011*

## 7.006 SUBJECT: USE OF FORCE OC (Oleoresin Capsicum) SPRAY

<u>PURPOSE:</u>   To provide details pertaining to the Department's use of force policy.

## <u>USE OF FORCE</u> (As Defined by The St. Louis Sheriff's Office)

1.   A Deputy Sheriff shall use whatever physical force is reasonable to maintain order, security and discipline in their respective duty assignment.  A Deputy Sheriff, in performance of his/her duty, may use physical force when reasonably believing it necessary.

**Subject:**        **OC (Oleoresin Capsicum) SPRAY**

<u>PURPOSE:</u>   The purpose of this policy is to establish guidelines to the use of oleoresin capsicum aerosol restraint spray.  This agency has issued OC aerosol restraint spray to provide deputies with additional use of force options for gaining compliance of resistant or aggressive individuals in lawful custody.  It is the policy of this agency that deputies use OC when warranted, but only in accordance with the guidelines and procedures set forth herein and in this agency's use of force policy.

## A.  <u>AUTHORIZATION:</u>

1. Only deputies who have completed the prescribed course of instruction on the use of OC are authorized to carry the device.

2. Every deputy shall requalify with their Department issued OC spray every year by the Certified Department Instructors.

3. Deputies who normal duties/assignments may require them to transport or supervise prisoners shall be required to carry departmentally authorized OC while on duty.

4. Uniformed deputies shall carry only departmentally authorized OC canisters in the prescribed manner on the duty belt.

5. The Department Armorer will be responsible for storing, issuing and replacing OC spray products.

DFT - 001009

## B. <u>USAGE CRITERIA:</u>

1. OC spray is considered a use of force and shall be employed in a manner consistent with this agency's use of force policy. OC is a force option following verbal compliance tactics on the use of force continuum.
2. A deputy shall not give advance warning to a person who is about to be subjected to OC spray.
3. A deputy will not use the "Lateral Vascular Neck Restraint" on a person who has been exposed to OC spray, also OC spray will not be used against a person who is being controlled by a neck restraint.

4. OC may be used when:

   a. Verbal dialogue has failed to bring about the subjects compliance, and

   b. The subject has signaled his/her intention to actively resist the Deputies efforts to restrain the individual.

   c. To control a dangerous animal.

5. Once an individual is incapacitated or restrained, use of OC is no longer justified.

## C. <u>EFFECTS OF OC AND DEPUTY RESPONSE:</u>

1. Within several seconds of being sprayed by OC, an individual will normally display symptoms of temporary blindness, have difficulty breathing, burning sensation in the throat, nausea, lung pain and/or impaired thought processes.

2. The effects of OC vary among individuals. Therefore, all individuals shall be handcuffed as soon as possible after being sprayed. Deputies should also be prepared to employ other means to control the subject which include, if necessary, other force options consistent with agency policy if he/she does not respond sufficiently to the spray and cannot otherwise be subdued.

3. Immediately after spraying a subject, deputies will follow the decontamination procedures as set forth in the OC training class.

4. Subjects that have been sprayed shall be monitored continuously for indications of medical problems and shall not be left alone while in custody.

DFT - 001010

5. An individual exposed to OC spray will be treated for the exposure as soon as he/she becomes manageable, according to the following procedures:

    a. The exposed individual should be taken to a secure location and permitted to thoroughly wash his/her face and eyes with cold water for several minutes to neutralize the effects of the OC spray. **UNDER NO CIRCUMSTANCES WILL WARM OR HOT WATER BE USED, SINCE THIS WILL INTENSIFY THE SYMPTONS.** If water is not available, the person should be exposed to fresh air.

6. A deputy will not remove contact lenses from the eyes of a person who has been exposed to OC spray. The person may remove his/her own contact lens, or if necessary, EMS personnel shall be contacted to remove the person's lenses. Once removed, the contact lenses will be packaged in a prisoner property bag and taken to the jail's property custody to be put with the person's property. The owner must be informed that, because he/she was exposed to OC spray, the lenses are no longer usable and that placing them in the eyes will result in a return of the symptoms of the OC spray exposer. The deputy shall indicate in his/her incident report that the owner was so informed.

7. Assistance shall be offered to any individuals accidently exposed to OC spray who feel the effects of the agent. All such incidents shall be reported as soon as possible to the deputy's immediate supervisor and shall be detailed in an incident report.

## D. **REPORTING PROCEDURES:**

1. Accidental discharges as well as intentional uses of OC spray against a person or animal in an enforcement capacity shall be reported to the deputy's immediate supervisor as soon as possible.

2. An incident report shall be completed following all discharges of OC spray, on or off duty.

## REPLACEMENT OF OC SPRAY

1. All OC spray devices shall be maintained in an operational and charged state by assigned personnel. Replacements for damaged, inoperable or empty devices are the responsibility of deputies to whom they are issued.

2. Replacements of OC spray canisters shall occur when the unit is less than quarter full, as determined by weighing the canister.

DFT - 001011

3. Unexplained depletion of OC canisters will require a written report by the deputy in order for it to be replaced. A copy will be forwarded to the deputy's supervisor and to the commanding officer for further investigation.

4. A deputy that loses their Department issued OC canisters and/or carrying case will be required to write an incident report, the lost Department items will be replaced and the cost will be defrayed by the deputy.

## F.  RETURNING OF DEPARTMENT ISSUED OC SPRAY

1.  Upon a deputies resignation, retirement or termination, he/she is required to return his/her Department issued OC spray as required or it will result in the assessment of a fee to compensate for the replacement cost of the missing item.

## 7.007 SUBJECT: USE OF NON-DEADLY FORCE – CONDUCTED ENERGY DEVICE

PURPOSE:  To establish procedures for the use of a conducted energy device known as the "TASER".

### A.    DEFINITIONS:

1. **AFTER FIRING IDENTIFICATION DOTS (AFID):**  Small identification tags ejected from the Air Cartridge when the X26 Advanced Taser is fired.  The AFID's have the individual unit's serial number printed on them which identifies which unit was fired.

**AIR CARTRIDGE:**  The replaceable cartridge of the X26 Advanced Taser which contains and fires the electric probes.  The Air Cartridge has two (2) probes on the front allowing it to be used as a contact device.  When the Air Cartridge is removed the X26 Taser can also be used as a contact Electro-Muscular Disruption device.  The Air Cartridge has an expiration date and ejects

1. **CONDUCTED ENERGY DEVICE (CED):**  A weapon primarily designed to disrupt a subject's central nervous system by means of deploying electrical energy sufficient to cause uncontrolled muscle contractions and override an individual's voluntary motor responses.

2. **DATA PORT:**  A computer data port located at the back of the X26/X2 Advanced Taser which allows data to be downloaded from the device.  Each time the device is fired it stores the time and date of activation.

41

3. **X26/X2 ADVANCED TASER:** A 26 watt hand-held Conducted Energy Device manufactured by AXON. The device fires two (2) probes a distance of up to 25 feet from a replaceable Air Cartridge. The probes are connected to the weapon by a high-voltage insulated wire. Electrical pulses are sent along the wires to the probes with the intended effect being to temporarily incapacitate the targeted subject. The X26/X2 Advanced Taser (yellow) is the only Taser authorized for use by the Sheriff's Office.

4. **PROBES:** Projectiles that are fired from a Conducted Energy Device and penetrate the skin; wires are attached to the probes leading back to the CED.

B. **INTRODUCTION:**

1. Deputy Sheriffs should use the least amount of force necessary to accomplish their lawful objectives while safeguarding their own lives and the lives of others.

2. Consistent with this policy, the Sheriff's Department authorizes the use of the TASER CED by designated Deputy Sheriff's as an incapacitating weapon to:

   a. to control a subject exhibiting active aggression when an Deputy Sheriff reasonably believes that his/her life is in danger;

   b. to effect a lawful arrest, or to otherwise control a combative, uncooperative person when verbal commands and persuasion have been ineffective in inducing cooperation;

   c. to prevent a subject from harming himself/herself or others; or

   d. to apprehend a fleeing subject when the Deputy Sheriff has PROBABLE CAUSE for detention (the fact that a subject is fleeing, without probable cause or other extenuating circumstances, is insufficient reason to use the TASER);

3. The TASER employs a pulsating electrical current through two (2) probes which overpower the body's normal electrical signals in the nervous system. When properly used to subdue a subject, the TASER system does not harm nerves, muscle or any other part of the human body.

   4. The TASER is classified by the Sheriff's Department as an Intermediary Weapon designed to resolve conflicts with minimal force,

C. **TRAINING:**

   1. A certified TASER Instructor, with the approval of the Sheriff, will establish training and deployment guidelines for the use of TASER's and Sheriff's Office-issued holsters.

DFT - 001013

2.    Only Deputy Sheriffs who have been trained by a certified instructor may deploy a TASER.  Deputy Sheriffs are required to be re-certified annually.  The Training Commander will maintain records to ensure that Deputy Sheriffs certifications are up to date.

## D.  GENERAL PROCEDURES FOR USE OF TASER:

1.    Only Sheriff's Department issued TASER's may be used to retrain a subject.

2.    The TASER will be used when other less-lethal force options have proven ineffective in controlling an aggressive subject or when it reasonably appears that other less-lethal options will be ineffective.

3.    The TASER will be carried in accordance with Sheriff's Department approved training and ONLY in the issued holster.

4.    The TASER will not be carried on the same side as the Deputy Sheriff's duty weapon.

5.    The Taser will NOT be carried or used by Deputy Sheriff's during Secondary Employment or off-duty.

## E.  SITUATIONS WHERE TASER MAY BE USED:

1.    The TASER may be used in situations where:

a.  a Deputy Sheriff reasonably believes that he/she will become engaged in a violent encounter with a subject either when the subject aggressively moves towards a Deputy Sheriff or the subject's demeanor indicates the subject will engage the Deputy Sheriff in a violent encounter; or

b.  it is deemed reasonable that lessor force options will likely be ineffective;

2.  Examples of situations where the TASER may be considered for use will include, but not be limited to:

a.  a perceived mentally ill subject who may be violent and pose a threat to a Deputy Sheriff or others;

b.  a subject who is armed with some type of lethal weapon (e.g., knife, firearm) but is NOT posing an immediate threat to the Deputy Sheriff(s) and the TASER Deputy Sheriff can deploy the TASER with a high probability of success;

**NOTE**: The Deputy Sheriff using the TASER must have a backup Deputy Sheriff present to provide lethal force if it becomes necessary

c.  an arrest attempt where the subject may be violent;

43

DFT - 001014

   d. a violent subject under the influence of drugs or alcohol; or

   e. any subject expressing the desire and having the means to commit suicide.

   f. **NOTE:** The TASER may be an effective option for use on violent animals, when used in accordance with training standards.

## F. SITUATIONS WHERE TASER SHOULD BE AVOIDED IF POSSIBLE:

Although not absolutely prohibited, Deputy Sheriffs should give additional consideration to the unique circumstances involved prior to applying the TASER in any of the following situations.

1. when the Deputy Sheriff cannot approach the subject within its effective range;
2. near flammable liquids, gases, blasting materials or any other highly combustible materials which may be ignited by the use of the device, including potential methamphetamine (meth) labs or subjects contaminated with such materials;
3. when it is reasonable to believe that incapacitation of the subject may result in serious injury or death;
4. on persons in wheelchair;
5. to control a person that is in operation of a vehicle while in motion;
6. on elderly people;
7. on pregnant women;
8. on any person with a known heart problem;
9. on any person with an apparent debilitating illness or who are visibly frail;
10. on young children or those under 80 pounds;
11. on individuals with known neuromuscular disorders such as multiple sclerosis, muscular dystrophy or epilepsy;
12. on an individual who refuses to come out of a holdover cell;

## G. DEPLOYMENT OF TASERS:

**1.** A TASER should not be pointed at any individual unless the Deputy Sheriff reasonably believes it will be necessary to use the device.

**2.** The TASER is capable of delivering unlimited five (5) second bursts of current once the probes make contact with the subject.

**3.** When deploying a TASER, Deputy Sheriffs should, under normal circumstances, use it for one (1) standard cycle (a five (5) second burst of current) and stop to evaluate the situation, while using verbal commands. Should an aggressive subject not comply with the commands of the deploying Deputy Sheriff, he/she is to deliver a subsequent five (5) second cycle as reasonably necessary and re-evaluate the situation before delivering a final five (5) second cycle. Alternate methods to subdue the subject should be considered.

44

4. When possible, a Deputy Sheriff who deploys the TASER will give a loud verbal warning prior to deployment, unless to do so would place any other person at risk. **The deploying Deputy Sheriff will shout the words "TASER, TASER!" This verbal warning will fulfill these purposes:**

   a. give an aggressive subject a final warning that his/her actions are dictating the use of the TASER; and

   b. Warn other Deputy Sheriffs and bystanders that the TASER is about to be deployed.

**NOTE:** Since the TASER cartridge produces a loud popping sound which could be mistaken for a gun shot, the loud verbal warning will notify other Deputy Sheriffs who may be on the scene that the discharge about to be heard is most likely the TASER being deployed.

5. The deploying Deputy Sheriff will then direct the actions of any other assisting Deputy Sheriff(s) on the scene in handcuffing the subject. The TASER will not deliver its charge to a second person unless that person places his/her hand or a body part between the two (2) probes, The TASER should not be used on handcuffed subjects unless they are actively resisting or exhibiting active aggression.

6. Assisting Deputy Sheriffs are also warned to approach the subject with caution so as not to break the wires connecting the probes to the TASER.

7. Following a TASER deployment, Deputy Sheriffs should use a restraint technique that does not impair respiration.

8. For maximum effect, TASER's should be fired at center body mass. The head, face, breast or genitalia should be avoided if possible.

9. The TASER "probe mode" should be the primary setting option, with "drive stun" mode generally used as a secondary option. The "drive stun" mode is an application of the TASER directly to the subject with a spent air cartridge in place or with the air cartridge removed. This application delivers the fifty (50) thousand volts of current to the adversary resulting in pain and is to be used when a failure has occurred or when other circumstances dictate its use. The subject will experience pain but exhibit little or no involuntary muscle contractions.

10. A Supervisor should respond to all incident scenes where a TASER has been deployed and conduct an initial review of the TASER deployment.

DFT - 001016

## H. POST USE PROCEDURES:

1. Probes, AFID's and cartridge packs used against individuals will be recovered and seized as evidence.

2. Probes which penetrate skin:

   a. If the probes have penetrated skin, they will be removed only by Deputy Sheriffs trained in their removal and at the direction of the Scene Supervisor.

   b. In the event that a probe is broken off in skin or the probe is not fully intact, the subject will be transported to a contracted hospitalization provide.

   c. ONLY hospital personnel are to remove probes embedded in sensitive tissue areas such as the head, neck, throat, face, female breast or genitalia.

   d. The probes will be packaged in accordance with existing procedures for the storage and handling of bio-hazardous materials.

3. Probes which have not penetrated skin will be packaged to ensure the safety of persons later handling the evidence packages.

4. Packaging

   a. All probes seized as evidence will be packaged in accordance with the existing procedures concerning sharp objects.

   b. Spent cartridges and some of the AFID's from the spent cartridge will be packaged as evidence and may be placed in the same larger envelope as the spent barbs.

   c. All probes seized as evidence will be packaged in accordance with the existing procedures concerning sharp objects.

   d. Spent cartridges and some of the AFID's from the spent cartridge will be packaged as evidence and may be placed in the same larger envelope as the spent barbs.

DFT - 001017

## I. <u>MEDICAL TREATMENT:</u>

1. Persons who have been TASED or experienced a drive-stun (stunned) do not normally require medical treatment, unless there are indirect injuries, such as those sustained from a fall after TASER use, etc.

2. The electrical pulse effect does not cause any long-term health issues. Once the five (5) second electrical pulse has ceased, the subject will not feel any additional disruption in their central nervous system. The TASER should not affect the functions of a pacemaker, and it should not cause the subject to experience any kind of additional twitching or uncontrolled spasms.

3. All subjects experiencing the TASER will be taken to the hospital for evaluation if exposure was greater than the standard (i.e., three (3) or fewer activations of five (5) second durations). If the subject experiences three (3) or fewer five (5) second activations, he/she will be taken to the nurse at the City Justice Center for evaluation.

## J. <u>AFTER USE REPORTING:</u>

1. With the exception of training, all instances of TASER use, including accidental discharges, will be reported. All use of the TASER to control a subject, including but not limited to deploying the probes, a "drive stun", using the aiming dot or an arc display will be recorded in the **SHERIFF INCIDENT REPORT** in the narrative. In these cases, Deputy Sheriffs will title the report **Weapon fired by Deputy Sheriff.**

2. <u>NOTE 1:</u> TASER discharges will normally be included in a formal **SHERIFF's INCIDENT REPORT** with complaint numbers. For accidental TASER discharges not involving an injury, a Deputy Sheriff will submit an Intra Sheriff's department report through channels to his/her Commander containing complete details, within twenty0four (24) hours.

3. If an employee is injured in the accidental discharge, the responding Supervisor will take immediate action relative to providing medical attention to the injured employee. The Supervisor will also complete an "Employee Injury Report,"

4. Deployment of the probes, a "drive stun" aiming the dot or an arc display are considered a use of force and are subject to the same reporting requirements as other uses of force.

5. The incident report which documents the use of a TASER will indicate the serial number of the unit used, the distance between the Deputy Sheriff and the subject at the time it was fired, the locations of impact on the subject, and an evaluation of the effectiveness of the device on the subject.

47

6. All copies of the Arrest Register will be clearly marked in red ink "TASER" when subject is booked after the application of a TASER.

7. **TASER related reports must reviewed and approved by a sergeant and command rank Deputy Sheriff not an acting command rank Deputy Sheriff. If a command rank Deputy Sheriff is not on-duty for the respective command, the command rank Deputy Sheriff of another assignment will review and approve the report.**

8. Each use of a TASER will require a Critical Incident Review to be conducted by the Deputy Sheriff's chain of command.  A report of the review will be forwarded to the Sheriff.

## K.  <u>MAINTENANCE:</u>

Testing and maintenance of the TASER will be consistent with the manufacturer's specifications and should be conducted every 24 hours by the deputy before each shift. Once a year on the deputy's anniversary he/she should have their Taser inspected by one of the Taser Instructors to insure that it functioning properly.

**CITY OF ST. LOUIS SHERIFF'S OFFICE**

DFT - 001019

## Protocol for Discharge of TASER
## Narrative Report Checklist

TASER related reports must be reviewed and approved by a sergeant and command rank officer.   If a Command rank officer is not on duty for the respective command, the command rank officer of another assignment will review and approve the report.

Sheriff's Incident Report will be titled **"WEAPON DISCHARGED BY DEPUTY"**, when a TASER is deployed (deployment includes discharge, drive stun, or dot/arc activation).

If a TASER is deployed in the courthouse building, the exact location will be explained in the narrative. (Floor, room number, i.e. Northeast Hall on Floor # north of room 301).

A Deputy carrying or using a TASER must have been certified/re-certified within the last calendar year.

If a criminal incident is involved and the Police Department prepares an incident report in I/Leads, the involved Commander will obtain a copy of the report and attach to the Sheriff Incident Report.

The TASER will be carried only in the approved and issued TASER holster and so mentioned in the incident report.

If the TASER is used in a circumstance defined in the Sheriff's Manual Order as not appropriate use for the device, the Sheriff's Incident Report narrative will describe the situation to justify the use of the TASER for that particular incident (Exhibit 2, Subsection 1-12)

The TASER will not be used during Secondary Employment or off duty (Exhibit 2, Subsection D, 5)

A supervisor will respond to the scene of the TASER deployment and conduct an initial review.  Mention the Supervisor responding in the narrative of the Sheriff's Incident Report.

Probes, AFID's and cartridge packs will be recovered and seized as evidence. The report will mention the location of the evidence package.

DFT - 001020

## CITY OF ST. LOUIS SHERIFF'S OFFICE
### Protocol for Discharge of TASER
### Narrative Report Checklist

Deployed probes that penetrate the skin will be removed in accordance protocols in this Order (Subsection H).

If EMS responds mention name and service numbers in the narrative of the Sheriff's Incident Report.  Medical attention will be provided to that person(s) tased as specified in this order (Subsection I)

The narrative of each incident must include the required information specified in this Order.

    a. Serial number of the TASER
    b. The distance between the Deputy and the subject when the TASER was activated
    c. Location of impact on the subject's body
    d. Evaluation of the effectiveness of the TASER in the subject (Subsection J).

Any required information missing from the Sheriff's Incident Report must be containing in a supplemental report, identifying the missing information and the reason(s) for not including the information in the original report.

The person tased will be completely identified in the narrative of the report. All responding Deputies will be identified in the report.  All witnesses will be identified in the narrative section of the Sheriff's Incident Report.

If there is a violation of this policy, the violation will be identified in an Employee Misconduct Report (EMR) and forwarded to the IAD Unit by the Commander authorizing the report.

DFT - 001021

## 7.008 SUBJECT: USE OF FORCE CONTINUUM GUIDLINE

This directive explains the Use of Force Continuum utilized by the City of St. Louis Sheriff's Department to provide guidance on the appropriate amount of force to be used to effect a lawful purpose.  The Use of Force model employs a progressive and reasonable escalation and de-escalation of applied force in proportional response to the actions and level of resistance offered by a subject. Such response may progress from the deputy's actual presence at the scene to the application of deadly force.

The primary objective of the use of force is to ensure control of a subject with reasonable force necessary based on the totality of the circumstances.  Whenever reasonable, deputies will exercise persuasion, advice, and warning prior to the use of physical force.  When force is applied, a deputy will escalate or de-escalate to the amount of force which is reasonably necessary to overcome the subject's resistance and to gain control.

Deputies are not required to start at the lowest levels of the Use of Force Model.  They will select the appropriate level of force based on the subject's actions.  Deputies will modify their level of force in relation to the amount of resistance offered by the subject.  As the subject offers less resistance, the deputy will lower the amount or type of force used.  As the subject increases resistance, the deputy may increase the amount or type of force used.

It is the policy of the City of St. Louis Sheriff's Department that personnel follow the Use of Force Continuum when a use of force is necessary.  Failure to adhere to this policy may result in disciplinary action up to, and including, termination.

A. Definitions

Deadly Force: Any use of force, by any weapon or means, which is likely to cause death or serious bodily harm.

Serious Bodily Harm: Injury that could reasonably expected to result in death, loss of limbs, or physical incapacity.

Non-Deadly Force: Any use of force other than that which is considered deadly force.

Reasonably Necessary: An action is reasonably necessary when, based on the facts and circumstances known to the deputy at the time, a reasonable deputy, without regard to underlying intent or motive, would conclude was appropriate.

Reasonable Belief: A deputy is justified in reasonably believing a fact based on the circumstance known at the time the decision was made to respond to an adversary.

51

B. Use of Force Continuum

The Use of Force Continuum is a guideline that cannot account for all factors constituting the "totality of circumstances" by which specific use of force is evaluated. The Continuum is to be used only in conjunction with the Office directives and through academy training provided by the St. Louis Sheriff's Office.

The Use of Force Continuum is a guideline for deputies in making critical use of force decisions. Professional presence and verbal interaction are present at every level of resistance.

Both State and Federal law require that all force be reasonable. In Graham v. Conner, the United States Supreme Court stated, "the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application, however, its proper application requires careful attention to the facts and circumstances of each particular case including the severity of the crime at issue, whether he is actively resisting arrest or attempting to evade arrest by flight." In addition, a deputy should take into account his/her abilities. In deciding which level of control a deputy should use, the deputy should reasonably believe that a lower level of control is not sufficient and a higher level of control is not reasonably necessary.

The Use of Force Continuum is not designed to be a step by step progression. Therefore, the escalation and de-escalation by the deputy or the subject may not be sequential. In circumstances where our directive conflicts with the continuum, a deputy should rely upon the directive.

C. Levels of Resistance

Non-Verbal and Verbal Non-Compliance: The subject expresses his/her intentions not to comply through verbal and non-verbal means. Statements by a subject ranging from pleading to physical threats may be encountered. This also includes physical gestures, stances, and subconscious mannerisms.

Passive Resistance: The subject does not cooperate with deputies commands, and does not take action to prevent being taken into custody. An example of this would be a protestor who lies down in front of a doorway, and must be carried away upon arrest.

Defensive Resistance: Subject's engaging in defensive resistance take action to prevent being taken into custody. The goal of this action is escape, and not injury to the deputy. This action may include twisting, pulling, holding onto fixed objects, or running away.

Action Aggression: At this level of resistance, the subject is intent on injuring the deputy. This aggression may manifest itself through punching, kicking, biting, or pushing.

DFT - 001023

Aggravated Active Aggression:  Aggravated Active Aggression includes actions that are likely to result in death or serious bodily injury to a deputy.  These actions may include discharge of a firearm, use of a blunt or bladed weapon, and extreme physical force.

Levels of Control

Professional Presence:  The displays of visual images of authority as well as a professional manner are present at every level of resistance.  This includes all symbols of authority including badge, office identification, uniform, and marked Sheriffs vehicles.

Verbal Dialogue and Commands:  Communication is critical to any potential use of force situation. This level of control includes any verbal requests, directions, or commands from the deputy to a subject. Verbal interaction is present at every level of resistance.

Soft Empty Hand Control:  These techniques are not impact oriented, and include pain compliance pressure points, takedowns, joint locks, and simply grabbing onto a subject.

Oleoresin Capsicum (OC) Spray:  OC Spray is approved for use in situations where a deputy believes that any attempts to control a subject may result in injury to the subject, deputy or others.  OC Spray should be utilized according to St. Louis City Sheriff's Office training.

Hard Empty Hand Control:  These techniques are impact oriented and include knee strikes, elbow strikes, punches and kicks.   Control strikes are used to get a subject under control and include strikes to pressure points such as the common peroneal nerve (side of the leg), radial nerve (top of the forearm), or brachial plexus origin (side of the neck).  Defensive strikes are used by a deputy to protect himself/herself from attack and may include strikes to other areas of the body including the abdomen and head.

Conducted Energy Weapon: The TASER device is used in situations where a subject presents an imminent physical threat to a deputy, or another person.

Impact Weapon:  Non-deadly impact weapon strikes are targeted towards major muscle groups.  The common peroneal nerve on the side of the leg is the primary target for impact weapon strikes.
Deadly Force: Deadly force is any manner of force that is reasonably likely to cause death or serious injury.  This includes, but is not limited to, the use of a firearm, striking the head or neck area with an impact weapon, or the choking of a subject.

DFT - 001024

E.  Medical Assistance

If the use of force incident of any kind results in injuries or the complaint of injuries to any person, the deputy(s) involved must summon the Police, appropriate medical personnel, and his/her supervisor.  Until such time that Police or medical assistance is available, the deputy(s) should render first aid within the limits of their training and the equipment available.   All medical attention, either in the field or in a medical facility, must be documented in the incident report.  Copies of all certified training must be on file in the City of St. Louis Sheriff's Office personnel files.

F.  Documentation and Review

In every incident involving the use of force, whether deadly or non-deadly, the deputy(s) involved will prepare a complete detailed incident report.  This report will provide detailed information about the incident including the level and type of force used and the reasons for the application of force.   Injuries to either deputies or others will be described completely.

Any injuries to involved persons other than the deputies, including self-inflicted wounds, which occurred prior to the deputy's arrival, will be fully described and documented in the narrative of the deputies incident report.

Any injuries to involved persons other than the deputies, including self-inflicted wounds, which occurred prior to the deputy's arrival, will be fully described and documented in the narrative of the deputies incident report.

In every incident involving deadly or non-deadly use of force, a Commander will be notified to respond to the scene along with the deputy's immediate supervisor.

When a deputy's use of force causes death or serious bodily harm, the deputy will be temporarily reassigned to administrative duty pending the outcome of the investigation by the Agency in charge of the investigation. The involved deputy will have access to the City of St. Louis Employee Assistance Program where they can seek confidential counseling or assistance from professionals involved in the program.

During an Administrative Review, all use of force reports, deadly and non-deadly will be examined by Internal Affairs to determine whether this policy or other rules or procedures were violated.

All findings of policy violation by Internal Affairs will be referred to the Sheriff with a recommendation for discipline up to and including termination.  Inadequacies in the structure or content of the policy will be modified as needed.

DFT - 001025

# SECTION 8.000

INAPPROPRIATE WORKPLACE DEMEANOR

8.001 PURPOSE:

The use of racial, ethnic, or sexist slurs, jokes, comments or cartoons are strictly prohibited.  The creation of a racially, ethnic or sexually hostile environment by either a Supervisor or a Deputy is prohibited and against Department policy and regulations. Violation of this regulation, proven through investigation, can result in discipline up to and including dismissal.

8.002 POLICY:

The Sheriff's Office prohibits sexual harassment of its employees in any form. Engaging in such conduct can result in disciplinary action up to and including dismissal.

Specifically, no supervisor shall threaten or insinuate, either explicitly or implicitly, that an employee's refusal to submit to sexual advances will adversely affect the employee's employment, evaluation, wages, advancement, assigned duties, shifts, or any other condition of employment or career development.

Other sexually harassing conduct in the workplace, whether committed by supervisors or non-supervisory personnel, is also prohibited.  This includes, but is not necessarily limited to: repeated, offensive sexual flirtations, advances, propositions, continual or repeated verbal abuse of a sexual nature, graphic verbal commentaries about an individual's body, sexually degrading words used to describe an individual, and the display in the workplace of sexually suggestive objects or pictures.

Employees are informed that if they experience any type of harassment or discrimination they should report it to the Sheriff and the Internal Affairs Office.  They also will be informed of their right to file charges directly with a federal, state or local agency.

DFT - 001026

The Sheriff's Office guidelines are as follows:

Supervisors should discuss any concerns with an employee who feels that he/she is the victim of discrimination. The Supervisor will then contact the Sheriff and the Office of Internal Affairs.

The Department will ensure that discrimination complaints are resolved.

All action taken to resolve complaints through internal reviews are conducted in the strictest confidence.

Department personnel will not make adverse comments or threats to an employee who files a complaint.

No individual shall be intimidated, threatened, coerced or discriminated against for filing a complaint, furnishing information or for participating in any manner in an investigation, compliance review, hearing or any other activity related to the administration of the laws and regulations to employ and advance employees.

8.003 ALTERNATIVE COMPLAINT PROCEDURES:

Victims of what they believe is sexual harassment may elect to complain to their immediate supervisor if they feel that the problem can be abated by supervisory action. In these instances the supervisor will take immediate action to see that the harassing conduct, if any, is stopped. The supervisor will document the complaint by having an "Allegation of Employee Misconduct" report filled out by the victim and forwarded to the Sheriff for review and, as appropriate, investigation.

Complaints against supervisors will be processed in accordance with established complaint and disciplinary procedures.

DFT - 001027

# SECTION 9.000

SECONDARY EMPLOYMENT

## 9.001 PURPOSE:

The purpose of this section is to establish regulations and procedures governing secondary employment privileges for Department personnel.

The regulation of secondary employment is necessary to maintain an efficient organization that is mentally and physically ready to work in furtherance of the Department's primary objective of serving the 22nd Judicial Circuit.

The preservation of public order and safety is of prime importance. This regulation is designed to prevent potential conflicts of interest and loss of public confidence in the Department because of the type of employment engaged in by Department Personnel.

## 9.002 DEFINITION:

Secondary Employment shall be defined as any and all employment engaged in by Department personnel during off-duty hours, holidays, vacations and/or recreation periods with any employer other than the St. Louis Sheriff's Office, including a self-employed business.

## 9.003 CONFLICT OF INTEREST:

This term means any actual or potential difference in interest between a Deputy's personal interest and that of his/her secondary employer and the duty and allegiance owed to the Sheriff's Office and the public.

## 9.004 APPLICATION PROCEDURE:

Prior to engaging in any Secondary Employment or Business, an employee shall complete the Request/Permit for Secondary Employment.

The information on the application shall be complete and accurate as rendered by the applicant and submitted to the Sheriff, or his designee, who shall review and approve or deny the request.

DFT - 001028

The decision by the Sheriff to approve or disapprove the request for Secondary Employment is final.  A reason for denial will be provided to the employee applicant.

Upon approval of the Request/Permit for Secondary Employment, the employee will receive a copy of the form which will serve as authorization to work.  Secondary Employment should not begin prior to having a signed copy of the approval from the Sheriff.

The Request/Permit for Secondary Employment is subject to review on a regular basis and can be cancelled by the Sheriff at any time with good reason.

## 9.005 DEPARTMENT RESPONSIBILITIES:

In all cases of Secondary Employment, the primary obligation of Department employee is to the Sheriff's Department.  While on Recreation, should a Deputy's service be required, his primary obligation is to the Department.

## 9.006 RESTRICTIONS ON SECONDARY EMPLOYMENT:

No Secondary Employment shall take place:

1. At any location or at any employment which might possibly tend to bring the Department into disrepute or reduce the Deputy's efficiency or usefulness as a Department employee;
2. In any employment requiring affiliation, membership, or allegiance tending to influence the Deputy's conduct in a manner inconsistent with the proper discharge of his/her duties as a Deputy Sheriff, or with loyalty to the Department or in the public interest;
3. On investigative or other work in which the employee may avail himself/herself to Police information, records, files or correspondence as a private investigator, private detective, or in any other capacity where the primary purpose of such employee is to provide information for, or appear as a witness in a civil or criminal action; or
4. For a business or company that is "on strike,"

At no time will the uniform of the St. Louis Sheriff's Department be worn in secondary employment unless authorized by the Sheriff.

58

DFT - 001029

9.007 PROHIBITION OF SECONDARY EMPLOYMENT:

Secondary employment is prohibited during those hours when a Department employee is being paid by the City of St. Louis including the following:

Sick Days

Scheduled Duty Hours

All employees shall comply with Federal, State, and local guidelines on licensing and reporting of income from Secondary Employment for Income and Earnings Tax purposes.

59

DFT - 001030

## SECTION 10.000

UNIFORMS AND EQUIPMENT

10.001 PURPOSE:

These regulations prescribe the proper uniform, insignias, ornamentation, accessories and occasions for wearing of the uniform by Deputies of the Sheriff's Office on authorization by the Sheriff. Such items will be surrendered by members of the Department upon termination from service. Only items prescribed herein, and uniforms approved by the Sheriff, or as issued will be worn. Deputies who wear the uniform, will be held responsible for conformity to regulations.

10.002 POLICY:

Members of the Sheriff's Office, attired in the uniform, except Deputies otherwise directed by the Sheriff, shall wear the entire proper uniform. The component parts of the Sheriff's uniform shall be inseparable and indivisible.

Every Deputy will present a well attired appearance. Uniforms will be kept clean and pressed. Brass items and leather equipment will be polished. Deputies will not paint or coat leather equipment with any substance.

10.003 INITIAL EQUIPMENT ISSUE:

The Commander of Administration shall issue the following items of wearing apparel, when in supply: One dark brown necktie, two long sleeve shirts, two short sleeve shirts, one brown nylon winter coat, one uniform hat, one pair of handcuffs with key, one regulation black holster, two pairs of trousers, one metallic name tag, badges, Identification Card and Manual.

It will be within the discretion of the Deputy to wear or not wear the hat/cap. Each incident reported of lost, stolen or misplaced Department property, assigned to a Deputy, will be investigated. If a determination is made that the Deputy was negligent they shall defray the expense of replacing the item.

No member of the Department shall permit his/her badge, cap piece or other distinctive insignia of the St. Louis Sheriff's Office to be reproduced or duplicated in any way without the written permission of the Sheriff.

DFT - 001031

Uniform items will be replaced whenever they are found to be worn or damaged. The replacement of uniform and/or items will be at the discretion of the Supply Office. The equipment and uniform must never detract from the appearance of personnel.  Each Deputy will bear responsibility for the appearance of their uniforms and equipment.

## 10.004 RETURN OF UNIFORMS AND EQUIPMENT:

Upon separation from the Department, each member shall surrender all Department items, regardless of condition, to the Commander of Administration.

## 10.005 PERSONALLY OWNED EQUIPMENT:

Personally owned equipment utilized in lieu of Department issued equipment shall conform to the standards of Department equipment.  Such items may be carried or worn only with the prior approval of the Sheriff.

Each badge and cap piece shall contain the Great Seal of the State of Missouri. While in uniform, members of the Department shall keep their badges in sight and display them immediately above the left breast pocket of the shirt, jacket or other outer garment.

Insignia designating rank above the grade of Sergeant shall be worn on the shoulder of the shirt, jacket, or overcoat.

When insignia of rank is worn on the shoulder it will always be on the large size, with the outer edge of the insignia located one (1) inch from the seam of the shoulder and centered between the front and rear edge of the epaulet.

The S.D. emblem will be worn on the shirt collar by all ranks.  Only Deputies having completed academy training will be entitled to wear the S.D.

## 10.006 RECALL OF IDENTIFICATION CARD:

The Commander of Administration shall be responsible for the issuance, replacement, and updating of Identification cards.

Identification cards are Department property and shall be surrendered to Administration upon separation, retirement, expiration, suspension or upon demand of the Sheriff.   The Sheriff retains the right to modify or waive any portion of this policy at his discretion.

61

**SECTION 11.000**

EMERGENCY MEDICAL TREATMENT

11.001 PROCEDURES:

In the event of injury requiring medical treatment and/or hospitalization of a Deputy, the injured party will be transported to the area hospital or trauma center of his/her choice.  In the event of an extreme emergency, or the Deputy is incapable of making a choice, it will be the policy of the Department to transport him/her to the nearest hospital.

11.002 HIV/AIDS TESTING:

It shall be the policy of the Sheriff's Department that when a Deputy is injured in any fracas with a prisoner, and the Deputy's skin is broken in any manner, i.e. cut, bite, abrasion, etc., and blood, saliva or other body fluids of the prisoner that may have entered the Deputy's bloodstream, it will be requested from the Court that an Order be issued for an AIDS test on the prisoner.  Any Department employee exposed to, and who suffers from the above conditions, will be tested at the expense of the Sheriff's Department.

DFT - 001033

# SECTION 12.000

DISCIPLINE AND DEPORTMENT

12.001      PURPOSE:

The purpose of this section Order is to establish a process for addressing and resolving problems within operating departments. Employees are free to seek resolution of problems without fear of discrimination, coercion, restraint, or reprisal. ***The grievance procedure is an extremely important process and properly utilized will facilitate open and continuous communication.***

12.002      MATTERS THAT MAY BE GRIEVED PURSUANT TO THIS POLICY:

Employee problems which may arise are endless in their variety; however, the following are the types of employee(s) problems which may in some cases be addressed by this Procedural Order.

   A.      The physical environment in which the employee works;

   B.      Working conditions on the specific job (for example, dangerous methods, inadequate tools, etc.);

   C.      Relationships with fellow employees (for example, a fellow employee who allegedly shirks his/her share of the work; a superior who is allegedly unfair, inconsiderate, or who allegedly singles out the employee for humiliation or undeserved censure; or a group of employees which is allegedly affecting the employee in an unfair or illegal manner);

   D.      The fairness and consistency with which department regulations are applied to the employee(s).

The above list is not exhaustive but rather gives examples of possible issues that may be grieved. No grievance matter should be brought to the Sheriff of the City of St. Louis without following this procedure.  This policy may be modified or waived by the Sheriff at his discretion.

12.003      MATTERS NOT TO BE HANDLED BY THIS PROCEDURE:

Any grievance or problem that does not fall into the categories described in 12.002 above must be addressed through established procedures in the Sheriff's Policy and Procedural Orders, Rules and Regulations of the Department, State and Federal Statutes. The Sheriff or the Chief of Staff will be the final authority in determining whether or not

DFT - 001034

Following are some examples of issues that are **not appropriate** for the formal grievance procedure:

    A.   Employment discipline and status, including dismissal, demotions, layoffs, suspensions, reductions in pay, written reprimands, and denial of leave;

    B.   Service Ratings;

    C.   Examinations;

    D.   Benefits established by Laws;

    E.   Classification of positions (pay grades);

    F.   Equal Employment Opportunity & Harassment Compliance;

    G.   Management decisions involving organizational structure of the employee's department;

    H.   Promotions;

**12.004    DOCUMENTATION:**

The Sheriff and/or the Chief of Staff to the Sheriff will be responsible for maintaining all documentation relative to the grievance and the investigation. Failure to submit documentation may result in adverse action.

**12.005    PROCESS:**

    A.   An employee or group of employees who believes they have been aggrieved should first go to their immediate supervisor and discuss the problem. If the employee believes that the problem has not been resolved, and he or she wishes to continue with their grievance, he or she may ask his/her supervisor, Commander, or the Chief of Staff to the Sheriff, for an Employee Grievance Procedure Form.

    B.   An employee who believes he or she has been aggrieved and is not satisfied with the Supervisor's decision must submit the grievance within fifteen (15) calendar days of the action and/or event which is the subject of the grievance on an Employee Grievance Procedure Form to the Sheriff's Chief of Staff and provide his/her Unit Commander with a copy.

DFT - 001035

C.     Within fifteen (15) calendar days of receipt of such grievances, the Unit Commander will investigate the complaint, which may include submissions from the aggrieved employee's supervisor and/or co-workers, and submit his/her resolution of the problem in writing to the employee(s) and the Sheriff's Chief of Staff.

D.     If the employee feels the problem has not been resolved by his/her Unit Commander, the employee may within fifteen (15) calendar days of receiving the decision, appeal to the Sheriff.

E.     The Sheriff will, within fifteen (15) calendar days of receipt of the Employee Grievance Procedure Form, thoroughly review and/or investigate the grievance, including reviewing all documentation and make a decision and notify all parties concerned or direct his Chief of Staff to appoint a three-member Employee Grievance Committee. The Sheriff may designate his Chief of Staff to conduct the review and/or investigation and make a recommendation.

F.     The Employee Grievance Committee shall consist of a member of the Sheriff's administrative staff, who will be chairperson, a supervisor from a unit other than the employee's unit, and a Deputy Sheriff not assigned to the same unit as the filing party. The Chief of Staff to the Sheriff will maintain a list of commanders, supervisors, and Deputy Sheriffs who are available to participate on the committee.

G.     The employee may have a representative of his/her choosing present at the hearing. If the representative is an employee, the employee representative must obtain permission from his/her Supervisor and Commander to be away from the work site. No attorney can represent the employee or management before the Employee Grievance Committee. Any party involved can request to call witnesses to testify in his/her behalf by making such a request in writing at least five (5) calendar days in advance of the hearing to the Chief of Staff to the Sheriff. The Employee Grievance Committee will review all the records of the case and hold an informal hearing as soon as possible, but no later than fifteen (15) calendar days of receipt of the grievance. The committee will notify the Sheriff of its recommendation in writing within fifteen (15) calendar days of the completion of the hearing.

H.     After receipt of the recommendation of the Employee Grievance Committee, the Sheriff will review the recommendations and either adopt, reject or modify the recommendations and notify all parties concerned, including the Grievance Committee Members, of his decision within fifteen (15) calendar days.

DFT - 001036

I.      Time Limits

Any of the time frames established in this regulation can be extended by mutual agreement of all parties concerned or the Sheriff or the Chief of Staff to the Sheriff as required by the circumstances.

Failure of management to meet the timeframes specified in the policy shall allow the employee to move to the next step of the process. For instance, if the employee did not receive a written response from his/her Supervisor's Commander within fifteen (15) calendar days, the employee could appeal to the Unit Commander. If the Unit Commander did not notify the employee in writing of his/her decision within fifteen (15) calendar days of his/her decision, the employee could appeal to the Sheriff.

If the employee failed to submit the grievance to his/her Supervisor, appeal the Supervisor's decision, or appeal the Unit Commander's decision within the time frames specified in this policy, the employee forfeits the right to grieve.

J.      The original copy of the Employee Grievance Procedure Form, a copy of the Grievance Committee's written recommendation (where applicable), and a copy of the Sheriff's final decision will be placed in the employee's personnel folder.

66

# SHERIFF OF ST. LOUIS

## EMPLOYEE GRIEVANCE PROCEDURE FORM

Employees must complete an Employee Grievance Procedure Form to grieve problems not addressed through other procedures.

Attach additional sheets when necessary. <u>DO NOT</u> submit this form to address service ratings; examinations; benefits established by ordinance; classification of positions; equal employment opportunity complaints; or employment status including dismissals, demotions, layoffs, suspensions, reductions in pay, docks and denial of leave.

An employee should first discuss the problem with his/her immediate supervisor. If the employee believes the problem has not been resolved by a discussion with his/her immediate supervisor, the following steps must be followed:

Step 1:

    This form must be completed and submitted to the Sheriff's Chief of Staff within fifteen (15) calendar days of the date of the most recent occurrence of the problem. You must provide a copy of this form to your Unit Commander.

    Your Unit Commander is required to submit to you and the Sheriff's Chief of Staff his/her determination and resolution of your grievance on this form within fifteen (15) calendar days.

Step 2:

    If you believe your grievance has not been resolved by your Unit Commander, you may appeal to the Sheriff within fifteen (15) calendar days of receipt of your Unit Commander's determination and resolution.

    Complete Step 2 on reverse side of this form and submit this form to the Sheriff's Chief of Staff.

For additional information see Sheriff's Department Grievance Procedure.

Questions should be referred to the Chief of Staff of the Sheriff.

67

DFT - 001038

Employee Name:_____

Department: _____ Rank Title:_____

STEP 1 - Problem:




Suggested Remedy:




Employee's Signature: _____

Date Submitted: _____

*Forward original to the Sheriff's Chief of Staff and deliver a copy to your Unit Commander. Employee should keep a copy of this form.*

\

DFT - 001039

**Page 2 of 2**

**Unit Commander Determination:**




Unit Commander _____

Date:_____

Copies forwarded to employee and the Sheriff's Chief of Staff on (date)_____

**STEP 3 - Appeal to <u>Sheriff or his designee</u> I wish to appeal my department Commander's decision.**

**Reason for Appeal:**

**Employee's Signature:** _____ **Date:** _____

*Forward a copy to the Sheriff's Chief of Staff.*

70

DFT - 001041

SECTION 13.000


INTRA-DEPARTMENT COMMUNICATIONS

13.001 POLICY

This section sets policy regarding communications between fellow employees, sections and Units, and between the Sheriff and employees.

Open channels of communication must exist between all persons within the Department.  Effective oral and written communication between all department personnel promotes a more efficient operation as well as a sharing of other's viewpoints.  To enhance the communication process, the Sheriff may conduct regular meetings as outlined in Section 13.002.

13.002 PROCEDURES:

The Chief of Staff shall oversee implementation of the following avenues of communication:

A.   Staff meetings shall be called by the Sheriff when deemed necessary.

B.   Attendees shall include the Chief of Staff, Section Commanders, and other persons as designated by the Sheriff.

C.   Each person present shall participate by presenting a brief verbal status report relative to the operation of his/her Section or Unit, and describe any accomplishments, suggestions or unusual problems occurring since the last meeting.

D.   The Sheriff shall discuss policy/procedure changes and directives which may be of general interest to the group.


13.003 SECTION COMMANDERS MEETINGS:

Section Commanders shall hold monthly meetings at a time he/she so designates, to discuss operations and performance.  A written agenda of items discussed, as well as any suggestions relating thereto shall be forwarded to the Sheriff for review.

DFT - 001042

13.004 PERSONAL MEETINGS WITH THE SHERIFF:

        Any member of the Department may schedule a meeting with the Sheriff regarding problems of a personal nature or of work related issues. Problems dealing with the work place need to be resolved within the Chain-of-Command, and every effort should be made to do so.

13.005 MEMORANDUMS, PROCEDURES & NOTICES:

        There shall be established a standard definition and format for Memorandums, Procedural Orders and Notices to provide direction for proper preparation, issuance and distribution.

1. Announce policy and procedure that are of a temporary and self-cancelling nature.
2. Announce policy and procedure which have applicability only to a specific Section, Unit, or activity of the Department.
3. Provide for the distribution of significant articles and communications of value to all personnel or to specific Sections or Units.

13.006 DEFINITIONS:

        As used in this Manual the following definitions shall apply:

        PROCEDURAL ORDER:
        Procedural Orders shall be issued for the purpose of announcing the adoption or revision of procedures applicable throughout the Department.

        MEMORANDUM:
        Memorandums shall be issued to announce or authorize new appointments, assignments, transfers, commendations, awards, promotions or restoration to duty.

        NOTICES:
        Department Notices will announce policy and procedure in regard to a specific circumstance or events.

DFT - 001043

13.007 PROCEDURAL ORDER MANUAL:

Procedural Orders shall be issued only under the authorization of the Sheriff. Procedural Orders and Notices, currently in effect will be retained in the Department Manual in the Procedural Orders Section.

Deputies shall be held responsible for the retention of all Procedural Orders issued to them.  Individual Manuals are subject to inspection upon demand. Failure of Deputies to properly maintain Procedural Orders are subject to Disciplinary Action.

Procedural Orders issued from time to time by the Sheriff of the City of St. Louis shall have the same force and effect as the rules and regulations in the Sheriff's Department Manual.  Procedural Orders must be complied with by all personnel.

A Master set of Procedural Orders shall be maintained in the Office of the Sheriff.  Request for Procedural Order(s) shall only be made in Memorandum form to the Chief of Staff.

13.008 ISSUANCE:

Every employee of the Department shall be issued a copy of the Department Manual containing Rules, Regulations, and, as published, Procedural Orders.

Each individual shall relinquish possession of their manual copy on request, or when terminating their employment.  Deputies unable to produce their Manual upon request will defray the cost for its replacement.

DFT - 001044

SECTION 14.000

NEWS MEDIA AND PUBLIC RELATIONS

14.001 PURPOSE

The purpose of this section is to describe the circumstances under which Sheriff's Department personnel may come into contact with news media of public groups, what access to Department information these groups are given, and who is to provide information pertaining to Department operations and/or incidents within the Department or involving Department personnel which may arouse public or media attention.

It is the policy of the Sheriff's Department to make known to the public through the news media, or through public groups and individuals, information pertaining to Department operations.  Consideration will be given to confidentiality and the welfare of any employee, or his/her family, as appropriate.

14.002 POLICY:

All employees shall strive to maintain integrity and credibility with those persons and organizations legitimately involved with the Department.  This policy endorses public information that encourages a better understanding of Department goals.

14.003 PRESS RELATIONS:

Accredited members of the press and radio/TV news media generally are entitled to information.

Department personnel shall cooperate with Media News people by courteously directing them to the office of the Sheriff for the requested information.  Violation of this regulation will result in disciplinary action.

14.004 SPOKESPERSON:

To ensure accuracy and consistency of information given, the Sheriff and/or his designee shall be the sole spokesperson for public information, on-screen interviews or reactions to events.  The Sheriff or his designated representative is the sole source of news releases and/or prepared statements on personnel and events within the entire Department.

DFT - 001045

## 14.005 INFORMATION REPORTING

Department personnel having knowledge of/or information regarding a criminal act, a disciplinary problem or accidental  incident involving either themselves and/or co-worker, shall promptly – before the completion of the shift forward such information to the office of the Sheriff.  For this purpose the Deputy shall utilize an "Incident Report" form.

Members of the Department furnishing information shall report accurately the details of the incident.

## 14.006 MOVIE MAKERS, BROADCASTERS, WRITERS:

Use of Department facilities equipment, or personnel is prohibited for the filming of any motion picture, videos, radio, and television programs, or the writing of newspaper/magazine articles, without the expressed consent of the Sheriff.

DFT - 001046

SECTION 15.000

EMPLOYEE BENEFITS

15.001 Purpose:

The Sheriff of the City of St. Louis recognizes that a strong Benefits Program provides security and motivates job performance for its employees.  In its effort to attract qualified people, it is the aim of the Sheriff's Office to review its Benefits Program from time to time.  In this way present employees, and future employees, can evaluate the entire Benefits Program.

15.002 Benefits Program:

Uniforms and Equipment:

      a.  Uniforms issued to an employee at the time of hire, consist of a jacket, shirts, pants, and tie.  Depending on inventory, the amount of articles issued, or replaced will vary from time to time.  The Administrative Commander, Quartermaster, administers the issuance and condemning of all Uniform articles.

      b.  Equipment issued to an employee at the time of hire, consist of holster, badges, handcuffs, firearm, manual and ID card.  This equipment will be issued by the Administrative Commander.   The same procedures apply to Equipment as Uniforms.

Vacations:

Vacations are formulated by the years of service an employee has with the St. Louis City Sheriff's Office.

Vacation time will accrue as follows:  two (2) weeks after the first year of the service, three (3) weeks after the fifth year of service, four (4) weeks after the tenth year of service, and five (5) weeks after the fifteenth year of service.

A Deputy that celebrates one of the above anniversary dates in the upcoming year that they are choosing vacation for, must schedule the newly accrued vacation week after their date of appointment.

76

Vacation selections will occur in November and December of each year for the following year. The Commander of each unit will be issued a set of guidelines for each unit that will serve as the rules for making your vacation selections.

Holidays: Any holiday that falls in a deputy's vacation time off may be taken the Friday before or the Monday after the week of vacation or it may be turned into Comp-time but only with the approval of their supervisor. If a deputy schedules a week of vacation during a holiday and the court closes another day that week in observance of that same holiday the deputy may take the Friday before and the Monday after the Holiday or choose to receive a credit of Sixteen (16) hours straight time for the holiday and the additional day off but only with the approval of their supervisor. Any deputy that works a regular shift on a Holiday or on the additional day off will receive another day off or may choose to take a credit of Eight (8) hours straight time for the day worked.

Vacation Change Request:

Vacation change request forms will be completed if a deputy wishes to change a week of vacation that has already been scheduled. A deputy must fill out the request form and have it approved by the Lieutenant, Captain and the Major of their unit before any changes can be made to the deputy's vacation schedule.

Vacation Leave Request:

Vacation leave may be taken in four (4) hour increments and up to thirty-two (32) hours total in a week. This request is used for vacation time that is not a complete week and must be approved by the deputy's supervisor and the Sheriff prior to scheduling this time.

Compensatory Time:

All Deputies, up to and including Sergeants are eligible to earn Compensatory Time (C.T.).

Compensatory Time is allotted after an employee concludes their regularly scheduled forty (40) hours of work in a week with the approval of your supervisor. Once an employee surpasses forty (40) hours of work in a week they will receive compensatory time at the rate of one (1) and one half (½) times.

77

It is the goal of the Sheriff's Office to keep the number of banked hours below 240 hours, but the maximum amount of hours that can be banked by law is 480 hours. If a deputy approaches the maximum number of 480 hours the deputy will be required to take time off to lower the number of hours in their bank to the be within the acceptable goal range. Lieutenants, Captains and Majors are responsible for ensuring that this rule is being enforced.

If a deputy uses medical time off during a week, and works over another day that week, compensatory time will be granted at straight time only, until all of the medical time off has been surpassed and the deputy meets the regularly scheduled 40 hour work week rule.

USAGE OF COMPENSATORY TIME:

Requests for time off using Compensatory Time should be made as far in advance as possible, 30 days if possible to ensure the request is granted. Requests will be granted at the supervisor's discretion as long as it does not disrupt the normal daily operation of the department. If a supervisor does not respond to the request, it is the deputy's responsibility to follow up and ensure that the request was received and considered. A Supervisor will grant, in most circumstances, a request for a day(s) leave.

It is the responsibility of the deputy for ensuring that they have sufficient Compensatory Time to cover the requested leave. If there is insufficient Compensatory Time to cover the requested leave and the request was approved, the deputy's paycheck will be docked for the time they were short. If the court closes early or closes for some unforeseen reason and a deputy is on Compensatory Time the deputy will not receive any credit for that day.

Emergency Compensatory Time:

Only a Captain or above may grant emergency compensatory time requests on short notice.

DFT - 001049

# Agreement to accept compensatory time-off in lieu of overtime pay.

In accordance with the provisions of the Fair Labor Standards Act and the St. Louis Sheriff's Office policy, non-exempt employees are allowed, with the approval of their supervisor, too accrue compensatory time off work instead of receiving payment for overtime hours worked. I understand that I will accrue compensatory time at the rate of one (1) and one-half (.50) hours for each overtime hour worked past forty (40) hours in a work week.

I further understand that compensatory time may be accrued up to the maximum cap of 480 hours that may be banked by law. The Sheriff's Office may establish a lower cap and must be used or paid in accordance with department policy and the law. I also understand that compensatory time may be limited, preserved, used or cashed out consistent with the provisions of the Sheriff's Office policy and the law. Occasional cash payment of overtime hours does not negate the compensatory time agreement.

I understand that it is the sole responsibility of the Sheriff's Office to monitor and maintain records of my accrued and used compensatory time. I understand that if I would retire, resign or be terminated from my position, the department is responsible for arranging for me to use or be paid the balance of my accrued compensatory time upon separation from the Sheriff's Office.

I understand that this agreement is in effect during my employment at the Sheriff's Office.

## Employee

Name: (Print)_____

Signature:_____     Date:_____

## Payroll Supervisor

Name: (Print)_____

Signature:_____     Date:_____

79

ADMINISTRATIVE DAYS:

In lieu of Compensatory Time, Commanders with the rank of Lieutenant and above are granted four (4) days yearly for administrative purposes. Each quarter the commanders will accrue one (1) day to be used within that same quarter. These days are not to be accumulated without the written consent of the Sheriff.

MEDICAL TIME:

All department employees earn medical time at a rate of four (4) hours per pay period. Medical time accumulates without a limit on the number of hours that can be accrued. Whenever possible employees should attempt to schedule routine medical appointments at the beginning or end of the workday, or in a manner that causes the least disruption to the departments operations. All new hire employees cannot use medical time for the first six (6) months.

Calling in Sick:

Any deputy calling in sick for the Day shift must call the sick line one (1) hour prior to the shift beginning at 314-622-4607 and report the illness, then notify their immediate supervisor and advise them of the illness. Weekend, Evening and Night shift employees must contact their immediate supervisor, unit commander or the on call supervisor phone at 314-258-3383 one (1) hour prior to the start of their shift. For unscheduled absences of more than one day, you must follow the call-in procedure for each day of absence, unless medical documentation has been submitted informing the supervisor of the duration of your absence.

No voicemail messages will be accepted for sick leave notification. The deputy must speak directly to one of the supervisors. Failure to follow the call-in procedure as set out by this policy could result in the time being deemed as unauthorized leave without pay, and subject to discipline, up to and including dismissal from employment.

DFT - 001051

Medical Time Usage:

a.      Any deputy calling in sick two (2) consecutive working days will be required to have a doctor's excuse upon returning to work.   A deputy who calls in sick their last scheduled work day before or their next scheduled work day after any scheduled holiday will be required to have a doctor's excuse.

b.      Failure to submit medical verification as directed may result in the time being deemed as an unauthorized leave without pay, and subject to discipline, up to and including dismissal from employment.

c.      Any employee that has called in sick for the day at the department must remain at their place of residence except for a trip to see the doctor or to the pharmacy and the employee must notify their supervisor and advise them when they leave and upon their return. A supervisor may come to the residence of an employee to perform a wellness check if the employee demonstrates a pattern of calling off sick or whom has used more than the allotted 8 days/64 hours rule on medical time usage.

d.      If a deputy becomes hospitalized for any medical reason, you are exempt from calling in during your time in the hospital.  Once you are released from the hospital you are to contact your supervisor once a week and advise them on your status and projected date of return to duty per your doctor's orders.  All efforts should be taken to notify the department that you are in the hospital if possible.

e.      If a deputy uses more than eight (8) days or sixty-four (64) hours in a calendar year of medical time, absent hospitalization or serious illness or injury the deputy will be deemed as having excessive absenteeism and will be placed on probation for attendance and required to have a doctor's excuse for any use of medical time off.   The probation period will be for six (6) months and reviewed by your supervisor before the end of the probation period for evaluation of your attendance.  A copy of this write-up will be placed in the deputy's employment file for future reference.  Further use of medical time once placed on probation could result in further disciplinary actions.

DFT - 001052

Donating Medical Time:

Any employee wishing to donate medical time to another employee in the department must maintain a minimum balance of thirty (30) days or two hundred and forty (240) hours of medical time in their bank. If an employee has more than this amount and wishes to donate time they may do so once it has been approved by the Sheriff.

The employee must be under a doctor's order that prevents them from working and have exhausted all of their time which includes vacation and compensatory time and in jeopardy of losing their medical coverage if they don't receive the time.

All employees must accrue at least one day pay per pay period to maintain health insurance. The unit supervisor of the employee is to prepare a memo that is to be read at roll call and posted in the break rooms that states a co-worker is in need of medical time donations.

Employees are restricted from soliciting or coercing the donation of medical time. All donations are strictly voluntary.

Light Duty:

Light duty is strictly reserved for an employee injured at work, a line of duty injury. Any employee that sustains a line of duty injury will be accommodated with working restrictions as best as possible while under a doctor's orders until the employee is returned to full duty with a doctor's release.

Maternity Leave:

Maternity leave of four (4) months is granted only after an employee has been employed for six (6) months. Any time past the normal four (4) months will require a doctor's statement with a projected date of return to duty. When returning to duty, the employee will be required to have a statement from the doctor that releases them for full duty.

While on maternity leave an employee may use all of their accrued time of medical, vacation or compensatory time as they wish. If the time is exhausted prior to the employee's return to work they will not be paid.

DFT - 001053

Military Leave:

Pursuant to the Revised Statutes of Missouri (RSMO) Chapter 105.270 and the
Uniformed Services Employment and Reemployment Act (USERRA) all
employees that are members of the Reserves and National Guard shall be afforded
these rights.

1. Notification: Any employee with a pending military deployment will notify
   their supervisor of the date, time and anticipated length of said deployment
   as soon as possible.  The employee or their supervisor will prepare a
   Military Leave Request Form and submit it through the chain of command.

2. The request form will contain the name, title and phone number of the
   military official that can be contacted to verify the employee's deployment.
   The employee's supervisor will make all necessary adjustments to the
   departmental schedule to accommodate this leave.

3. Before leave and upon Return from Leave: All employees are to be excused
   from work for at least eight (8) hours prior to reporting for military drill or
   deployment.  Upon returning from drill or deployment, the employee will be
   given at least eight (8) hours before being scheduled to return to duty.  A
   longer transitional period may be granted for employees that have been gone
   more than the normal two week period when practical.

4. Vacation/Compensatory and Sick Time:  An employee called to military
   duty that cannot be accommodated by their regularly scheduled recreation
   days may, at their discretion, use accumulated vacation and or compensatory
   time to defray the time of their deployment until such credits are exhausted.

5. Sick Time: Departmental sick time cannot be used while on active duty with
   the military.  Sick time benefits will not accrue while on leave unless they
   are using time as stated in the section above by using vacation or
   compensatory time to accommodate the leave.

DFT - 001054

6. Seniority:  An employee will continue to accrue departmental seniority while on military leave.  Seniority earned while on military leave will count towards retirement.

7. Returning to Duty: Employees returning to duty from military leave will report to their supervisors as soon as practical.  Employees returning to duty from deployments in excess of thirty-one (31) days will submit a copy of their military orders upon return, unless they have previously submitted a copy prior to leave and it covers all the time the employee was on leave.

Death Furlough:

A maximum of three (3) days will be granted upon death of a Parent, Step-Parent, Spouse, Father-in-Law, Mother-in-Law, Child, Brother, Sister, Brother-in-Law, Sister-in-Law, Foster-Parents or Grandparent or Grandchild.

If you are off on vacation, compensatory time, holiday or your regularly scheduled days off at the time of the funeral, time will not be given, unless the Sheriff approves it.

Funeral Leave cannot be granted without proper verification.  A death furlough request form must be submitted before the leave, or when returning to duty.

Holidays:

Each employee receives twelve (12) paid Holidays yearly.  Additional holidays can be granted as directed by the Twenty Second Judicial Circuit.

Jury Duty:

Any Deputy that has been Summoned for Jury Duty will forward a copy of the summons to their immediate supervisor as soon as possible which will be forwarded to the Sheriff's office. The supervisor will make note of Jury Duty on the daily attendance log sheet and make sure that the summoned Deputy is given at least 8 hours off prior to the time that they are to report for Jury Duty. Any Deputy that serves on Jury Duty while on their scheduled day off will receive 8 hours of straight compensatory time for that day or may request another day off in lieu of the compensatory time, this will be at the discretion of their immediate supervisor.

DFT - 001055

FAMILY MEDICAL LEAVE ACT (FMLA)

On the following page is the employee rights and responsibilities fact sheet from the Department of Labor about the Family Medical Leave Act.  The leave request forms may be obtained from the payroll supervisor of the department.  Any employee that needs assistance with filling out the FMLA forms should contact the payroll supervisor for assistance of the City of St. Louis Department of Personnel.

The Family and Medical Leave Act (FMLA) provides certain employees with up to 12 weeks of unpaid, job-protected leave per year. It also requires that their group health benefits be maintained during the leave.

FMLA is designed to help employees balance their work and family responsibilities by allowing them to take reasonable unpaid leave for certain family and medical reasons. It also seeks to accommodate the legitimate interests of employers and promote equal employment opportunity for men and women.

FMLA applies to all public agencies, all public and private elementary and secondary schools, and companies with 50 or more employees. These employers must provide an eligible employee with up to 12 weeks of unpaid leave each year for any of the following reasons:

- for the birth and care of the newborn child of an employee;
- for placement with the employee of a child for adoption or foster care;
- to care for an immediate family member (spouse, child, or parent) with a serious health condition; or
- to take medical leave when the employee is unable to work because of a serious health condition.

Employees are eligible for leave if they have worked for their employer at least 12 months, at least 1,250 hours over the past 12 months, and work at a location where the company employs 50 or more employees within 75 miles. Whether an employee has worked the minimum 1,250 hours of service is determined according to FLSA principles for determining compensable hours or work.

Time taken off work due to pregnancy complications can be counted against the 12 weeks of family and medical leave.

DFT - 001056

SECTION 16.000

COMPLAINT AND DISCIPLINARY PROCEDURES:

16.001 PURPOSE

The purpose of this section is to establish the fair and impartial procedure that will be used in making a decision on a complaint and the disciplinary actions that could be imposed for any complaint filed against an employee of the City of St. Louis Sheriff's Office.

16.02  POLICY

1. If an employee is found to have violated the rules and regulations of the department by a supervisor and the supervisor files a complaint with the Commander of that division against a subordinate, it will be the responsibility of the unit Commander to review and determine if the complaint should be forwarded to the Internal Affairs Unit for further investigation or disciplinary procedures.

2.  If the unit Commander decides that the employee did not violate the rules and regulations, the Commander will prepare a memorandum to the supervisor who had filed the complaint stating the reason why the complaint was not filed with the Internal Affairs Unit, a copy of this memorandum will be given to the employee and the complaint will be deemed closed.

3.   If the complaint is forwarded to the Internal Affairs Unit the employee will be notified of such complaint in writing and will be afforded the chance to respond to the pending allegation against them in a timely manner.

4.  If a formal signed complaint is received by the Internal Affairs Unit against an employee, the employee will be notified in writing of the pending allegation and will be afforded the opportunity to respond to the allegation in a timely manner.

DFT - 001057

16.003 Disciplinary Actions:

1. Disciplinary actions are as follows: re-instruction, oral reprimand, written reprimand, probation, suspension or possible termination of employment. The disciplinary actions could be administered in any combination the Sheriff deems necessary.

2. If an employee is found to have violated the rules and regulations of the Sheriff's department, the Internal Affairs Unit will make a recommendation of a disciplinary action that will be submitted to the Sheriff for his review.   The Sheriff may at his discretion, accept the recommendation of the Internal Affairs Unit or he may impose an alternative disciplinary action.  The final decision is up the Sheriff as to what disciplinary action will be taken, if any.

3. When the recommendation for discipline is written reprimand or below the Unit Commander of the employee will impose the discipline immediately and document the facts in the employee's personnel file which will become a permanent part of the employees personnel file.
Note:  There is no appeal of a written reprimand or lower discipline.

4.  When the recommendation for discipline is probation or greater which also includes termination of employment, the employee is afforded the option of accepting the discipline or appealing the recommendation to a Hearing Review Board.

16.004 Accepting Discipline Process:

An employee may accept the recommendation of probation or suspension or a combination of the two.   The employee will do so by signing the reprimand and submitting it to the Unit Commander, the Unit Commander will make a copy of the signed reprimand for the employee and forward the original to the Sheriff so that it can be placed in the employees personnel file.  The Unit Commander will administer the disciplinary actions as they see fit so not to disrupt the operations of the department and will advise the Sheriff in a memorandum once this is complete.

DFT - 001058

16.005 Appeals Process:

When notified in writing of the findings by the Internal Affairs Unit and the recommendation for the discipline, an employee that wishes to appeal a recommendation of probation or a suspension must do so in writing to the Sheriff that states they are requesting a hearing with the Disciplinary Hearing Review Board within five (5) business days from receipt of their notice.

The three members of the Disciplinary Hearing Review Board will consist of a Command staff member who will serve as the Chairman of the Board, one member of a rank above the accused and one member of the same rank as the accused employee.

Members of the Hearing Board will be appointed by the Sheriff.   Volunteers will be requested.  No member of the Hearing Board can serve longer than six (6) months in a calendar year.  No deputies from the Internal Affairs Unit can serve on the Hearing Board since they are presenting the findings in a case to the Hearing Board.

Once the Hearing Board has been notified that an employee is requesting a hearing they will set the date for the hearing within fifteen (15) days from the date of the request.

The Hearing Board may postpone a hearing, upon written request by the accused or the Department.  The written request will be filed in the case for future reference.  Each side will receive only one request for continuance, the continuances shall not exceed fifteen (15) days for each side.

The proceedings for the Hearing Board will be informal, all hearings will be recorded electronically for possible transcription if it were to become necessary at a later date.
The accused employee may have legal counsel present during the hearing.  The Sheriff may also have legal counsel present during the hearing.  Legal counsel for either party is only there as an observer and will not be afforded the chance to

DFT - 001059

speak for any reason during the hearing. The Sheriff reserves the right to attend the Hearing, but only in the capacity as an observer.

The hearing will start with the Internal Affairs Unit presenting the facts of the case as they were presented to the Sheriff. This will include all supporting documents, evidence and witnesses, if any, to the incident. Next the accused will be afforded the opportunity to present their defense to the allegations that were presented and may call witnesses in support of their defense.

Once the hearing is concluded the Hearing Board shall meet in private and render their decision. At least two out of the three member Board must reach a decision in order for them to render a decision on whether to Sustain or Not Sustain a case. The Hearing Board shall submit a written report to the Sheriff stating their findings within five (5) business days after the hearing.

If sustained the Hearing Board may choose to uphold the recommended discipline or may choose to increase or decrease the discipline.

The accused employee will be notified in writing within seven (7) business days after the hearing was concluded of the Hearing Boards decision in the case.

The findings of the Disciplinary Hearing Review Board are final and there shall be no further appeal within the Sheriff's Office.

The Sheriff is not bound by the Hearing Boards recommendation and has the final decision in all matters of disciplinary actions.

The service record and records of former hearings will not be allowed to be reviewed by the Hearing Board unless the accused is charged with some form of a character charge or has had a previous charge of the same nature for the purpose of rendering a decision in a case. However, in assessing discipline in a Sustained case the Hearing Board may take into consideration the accused employee's service record and any other disciplinary actions from previously Sustained cases only. This will be noted in the Hearing Board's recommendation and findings report given to the Sheriff.

89

DFT - 001060

If the accused employee fails to appear for a scheduled hearing after being properly notified, the hearing will proceed without the accused and the Hearing Board will make their decision based on the facts presented to them at that time.  No other course of appeal will remain for the accused employee.

Termination Hearings will be conducted pursuant to Chapter 57 of the Revised Statutes of the State of Missouri, sections 57.015 and 57.275.

90

Section 17.000

## 17.001 RULES AND REGULATIONS:

Acts hereby deemed contrary to the rules and regulations of the Department shall include, but not necessarily be limited to, the following:

**1.**     Conviction of a felony, misdemeanor or specific ordinance violations under any statute or ordinance.

**2.**     Use or possession of controlled substances not medically prescribed.

**3.**     Conduct detrimental or contrary to the good order, integrity or discipline of the Department.

**4.**     Absenting from duty without supervisory authorization.

**5.**     Unsatisfactory Performance:  Personnel shall remain sufficiently competent to properly perform their duties in a manner that will maintain the highest standards of efficiency in carrying out their duties and the objectives of the Department.  Unsatisfactory performance may be demonstrated by a lack of knowledge of departmental guidelines; an unwillingness or inability to perform assigned tasks; the failure to conform to work standards established for the employees rank, grade, or position; the failure to take appropriate action on the occasion of a disorder or other condition deserving attention.

**6.**     Failure to promptly obey a reasonable order of a superior officer or a supervisor.

**7.**     Insubordination, disrespect toward a superior officer or supervisor.

**8.**     Abusing a subordinate in any manner by a supervisor or superior officer.

**9.**     Drinking on duty.

DFT - 001062

**10.**     Receiving/soliciting money, gifts, rewards, gratuities or compensation for services rendered or expenses incurred without Department approval.

**11.**     Changing place of residence and/or telephone number without notifying the Department within forty-eight (48) hours after the change.

**12**.     Failing to obtain telephone (land-line or cell) service within thirty (30) days after being employed by the Department and maintaining service throughout employment.

**13.**     Failing to notify the Unit Commander prior to his/her scheduled time of duty when reporting sick or injured, or when leaving place of residence or confinement while on sick leave except for medical treatment.

**14.**     Failing to report for duty with a physician's authorization to return to duty.

**15.**     Failing to submit a written letter from attending physician, including dates absent, for more than two consecutive days lost due to sickness.

**16.**     Failure to report for duty at the time one is scheduled for duty without supervisory authorization.

**17.**     Failing to attend any scheduled training, meetings, departmental inspections, Trial, Hearing before any Court or Board, and remaining in attendance until the conclusion, or until properly excused. Furthermore all training requirements are to be considered mandatory.

**18.**     Threatening, harassing, or otherwise interfering with a witness in any Department hearing or proceeding.

**19.**     Failure to notify command officer/supervisor of any misconduct by a Deputy against any citizen or another member of the Department.

**20.**     Making or Filing a false report.

DFT - 001063

**21.**   Making false statements to Department investigators/representatives during an investigation or proceeding.

**22.**   Failure to take appropriate action to prevent any misconduct against any individual by another member of the Department

**23.**   Soliciting for Attorneys, Bondsmen or other persons for personal gain.

**24.**   Engaging in a strike, work stoppage, work slowdown or other job action against the Department.

**25.**   Knowingly associating, On or Off duty, with persons convicted of a felony or misdemeanor, or known suspected lawbreakers under circumstances which could bring discredit upon the Department.

**26.**   Cowardice in the line of duty.

**27.**   Allowing prisoner to escape through carelessness or neglect.

**28.**   Failure to acknowledge radio call, pager or department cell phone call, within reasonable time.

**29.**   Improper or unauthorized use of Department equipment or motor vehicles.

**30.**   Improper or unauthorized use of sick time.

**31.**   Failing to obtain approval for Secondary Employment.

**32.**   Chargeable Accidents.

**33.**   Fictitious Illness or Injury Reports:  Personnel shall not feign illness or injury, falsely report themselves ill or injured, or otherwise deceive or attempt to deceive any employee of the Department as to the condition of their health.

DFT - 001064

**34.**   Weapon Violations:  Deputies shall carry and use their weapons in accordance with the law and departmental guidelines.

**35.**   Sleeping on Duty.

**36.**   Abuse of Position:  Personnel shall not use their official position, official identification cards or badges for personal gain, for obtaining privileges not otherwise available to them except in the performance of duty or for avoiding consequences of illegal acts.

**37**.   Failure to carry identification:  Personnel should carry their badges and identification cards on their persons at all times. They shall furnish their name and badge number to any person requesting that information when they are on duty.

**38.**   Physical Contact:  Physical contact with the public and persons in custody shall be limited to that which is necessary to accomplish the mission of the Department and ensure the safety of all concerned.  Personnel shall not mistreat persons who are in custody.  Physical contact between personnel, aside from gestures of civility, is strictly prohibited. Horseplay, roughhousing and fighting will not be tolerated.

**39.**   Unauthorized use of any State or Department computer as deemed by OSCA rules or misuse of the Courts internet system for the purpose of accessing prohibited websites.

**40.**   Deputies will not feed nor allow prisoners to be fed any type of food that is not provided by a jail, penitentiary or hospital, without the prior consent of the Sheriff.

Upon a determination that a Deputy has violated one or more of the foregoing rules and regulations or engaged in any other conduct which might bring the Department into disrepute. Disciplinary Action, up to and including termination, may be imposed.

DFT - 001065

Section 18.000

Section 18.001 Uniform dress and grooming policy
Personal Appearance Regulations

The purpose of this chapter is to ensure the professional appearance of Deputies in the City of St. Louis Sheriff's Office.

Male Hair Standards

1. The bulk or length of the hair will not interfere with the normal wearing of the standard Deputy uniform. The hair must be neatly groomed.
2. The maximum extension of the hair outward from the top of the head will not exceed two inches (2"),
Tapering to a maximum extension, above the ear of one and one-half inches (1-1/2"). No more than one-half (1/2") from the side of the face at the base of the sideburn.
3. Sides and back of the hair may be either tapered or blocked. In no event will the hair cover more than one-half inch (1/2") of the ear, nor extend over the uniform shirt collar.
4. Sideburns shall extend no further than one-half (1/2") below the ear, and will be no more than one and one-half inches (1-1/2") in width, and will be cut horizontally.
5. The face will be clean shaven, except that mustaches will be permitted. If a mustache is worn, it shall be kept neatly trimmed and tidy. Mustaches may extend laterally not more than one-half inch (1/2") from the corner of the mouth, nor more than one-quarter inch (1/4") below the corner of the mouth, nor more than one-quarter inch (1/4") down over the upper lip.
6. If a wig or hair piece is worn by members, other than for medical or natural baldness reasons. It must be approved by the Sheriff
7. Fingernails must not extend past the tip of the finger and must be kept clean.
8. Deputies will maintain a high level of personal hygiene.

95

Female Hair Standards

1. For uniformed female officers, hairstyles shall be worn so that no part of the hair extends over the Uniform shirt collar. The bulk or length of the hair must not interfere with the wearing of the uniform. Long hair must be pulled back and secured and not extend over the bottom of the collar.
2. Hair ties, barrettes or clips will be neutral in color: decorative items will not be worn.
3. Finger nails must not extend past the tip of the finger and must be kept clean.
4. If a wig or hair piece is worn by members, other than for medical or natural baldness reasons. It must be approved by the Sheriff.
5. Make-up worn will be conservative.
6. Deputies will maintain a high level of hygiene.

**All Deputies hair color should be of a natural color.**

Jewelry

1. When in uniform, employees shall limit the visible jewelry they wear to a wristwatch,
Medical bracelet worn on the wrist,, and up to two rings on each hand worn on the fingers. Male officers shall not wear any type of earrings while on duty.
2. Uniformed female employees may wear no more than one earring on each ear. Earrings shall be clip-on types which are no larger than one-quarter inch (1/4") in diameter.
3. All uniformed employees are prohibited from wearing any jewelry (other than earrings mentioned above), accessory or other decorative hardware, anywhere on their face or tongue while on duty or at any formal Department function.


Business Attire

Employees who interact with the public in any capacity, as a Department representative will be attired as follows:

96

1. Department approved Uniform of the Day for sworn employees working a uniformed assignment.

2. For plain-clothes officers, the Commander of that unit, will determine the dress code for their command.

 This is dependent on the operations of the specific unit and the notification of the appropriate Bureau Commander. The commander/director/manager may allow variances based on weather conditions.

 The Command Staff may establish a specific dress code for a specific work group as necessary.

Uniform Policy

All Deputies are required to wear all department issued items including duty belts, bullet proof vests, holsters, belt keepers, duty weapons, name tags, Sheriff's insignias, OC spray canister and holster, Tasers, and Taser holsters, and the uniform that is issued for your particular unit. No Deputy shall report to work without being in full department uniform unless you have written consent from the Sheriff.

1. All Deputies when in uniform will have on a clean and maintained undergarment crew neck style white or black (Transportation Only) in color. Sleeves of undergarment will not extend below the sleeve of the outer garment. **ALL UNDERGARMENTS SHALL BE A SOLID COLOR WITH NO WRITING OR PICTURES.**

2. All Deputies wearing a brown department uniform will wear black socks no shorter than ankle length.

3. To provide a well-attired appearance, all uniforms are to be kept clean and pressed, with metal items and leather accessories polished. Items issued may not be painted, coated, or altered in anyway.

4. Personally owned items may be used in lieu of issued items but they will conform to specifications adopted by the Sheriff and will be replaced at the employee's expense should it become worn or tattered.

5. **As part of the uniform Duty weapons will remain holstered at all times or secured when not applicable to carry, at no time shall a Deputy inspect his or her weapon in a non-designated location.**

DFT - 001068

Footwear

The uniform shoes authorized will be boots, or athletic tennis shoes and must be solid black or patent leather style.

A. All transportation Deputies will wear white or black in color socks as well have their pants bloused above the boot, and must wear boots no tennis shoes.

Uniform accessories

1. Shoes and all accessories must be black and when applicable, shined to a glossy finish.
2. Baseball caps may be worn by all Deputies, as long as the cap is of a solid color or have Sheriff printed on it. Deputies wearing the standard brown uniform will have a brown cap with gold lettering. Deputies assigned to Transportation will wear a black cap with white lettering.
3. When wearing long sleeve shirts all Deputies will be required to wear a tie, except when the long sleeve shirt is being used to cover-up Tatoo's during short sleeve season. A Tatoo cover-up may be used instead of long sleeve shirts but it must match the color of the uniform.

Grooming standards

Safety and security is the main goal of the Sheriff therefore the uniform standards of grooming do not allow for eccentric or faddish styles of hair, jewelry, or eyeglasses. Eccentricities in individual appearance reduces the quality of professionalism viewed by others, and distracts from the "team identity". Because it is impossible to provide examples of every appropriate or non-appropriate hair styles whether conservative or eccentric, grooming and attire, will be the judgment of all supervisors from all levels of the chain of command and is key to enforcement of this policy.

DFT - 001069

## Examples



Consistency and uniformity is a must so we remain professional at all times.

DFT - 001070

Section 19.000

Service Department Vehicle Allowance and Parking Placard Issuance

This section deals with the fixed rate compensation and issuance of parking placards for use while on Official Business for the City of St. Louis Sheriff's Office in the Service Department.

Listed below is the criteria to be eligible to receive this compensation.

19.001 Service Department personnel that utilize their personal vehicles while in the performance of their daily duties as a Deputy Sheriff are entitled to a monthly vehicle stipend in the amount of ($340.00) three hundred and forty dollars per month. The deputy may use this stipend however they seem fit for fuel and/or regularly scheduled maintenance of said vehicle.

19.002 All Deputies receiving the vehicle stipend must sign a declaration that states they possess a valid driver's license, their vehicle will be maintained in safe operating condition at all times and that they have purchased and carry proof of automobile insurance coverage in accordance to the Revised Statues of the State of Missouri (RSMO.) section 303.020 or any amendments thereto.

19.003 All Deputies receiving the vehicle stipend may not use a Department vehicle unless approved as part of a formal trip or authorized by the Sheriff of the City of St. Louis. An example of a formal trip could be a Writ of Body Attachment or any other duty which would require the use of a Department vehicle for safe and secure transportation of a person or any official business that may require such use.

19.004 This vehicle stipend is subject to adjustment for any of the following reasons. Any Deputy that uses more than 10 days off per month in any combination of paid time off (PTO), such as medical leave, frozen sick time, vacation or compensatory time will be subject to a pro-rated reduction of the vehicle stipend for that month. The stipend will be broken-down based on 20 days of actual time worked per month and the daily amount of the paid time off will be deducted from the monthly stipend.

DFT - 001071

19.005 Each year the Board of Estimate and Apportionment for the City of St. Louis and the Board of Alderman review the vehicle stipends. The list contains the names and payment history of all individuals that received the stipend from the City of St. Louis for the previous fiscal year. At that time they may vote to modify the amount paid for the vehicle stipend. If such vote is to increase or reduce the amount paid by the City, notice will be given to each Deputy that receives said stipend as far in advance as possible of any changes.

19.006 Parking Placards will be issued to each Deputy of the Service Department for the performance of their duties. Each set of parking placards will be numbered and assigned to a specific Deputy for their use. If a Deputy loses, misplaces or if the signs are stolen from them, they must contact their immediate Supervisor and inform them of the situation and prepare an incident report detailing the facts surrounding the incident before another set of parking placards will be issued. **Note:** Any misuse of said parking placards will be subject to disciplinary actions up to and including termination of employment. Misuse of parking placards could be described as allowing someone else to use them, making copies of them or using them when not on Official Business of the City of St. Louis, the laws governing the parking placards set forth by the City of St. Louis printed on the back of the signs will be strictly enforced at all times.

DFT - 001072

## SECTION 20.000

CIVIL UNREST

20.001 Purpose:

    The Sheriff of the City of St. Louis has prepared procedures to instruct and deploy personnel to control civil disobedience within or near the properties of the 22nd Judicial Circuit. In the event of civil unrest, the following procedures will be enacted at the direction of the Sheriff to protect individuals, property and respond to unlawful behavior.

20.002 Response Protocol:

For the purposes of a response to any civil unrest activity, the primary responsibility of the Commander will be the protection of life and property. Any assembly will be free to exercise their Constitutional Rights in a lawful manner.

In order to achieve this objective, the Commanders will be responsible for ensuring that, announcements as to any law violation and subsequent actions that may be taken by the City of St. Louis Sheriff's Office are clearly articulated to "all those present" prior to any detention or contact between deputies and citizens is conducted if needed.

All Commanders should be aware that our ability to assist those persons who wish to lawfully exercise their Constitutional Rights could be impinged by the criminal conduct of others. It is our responsibility to ensure that we protect our Courthouses and the people therein, as well as those persons assembled lawfully to exercise their rights from those who would use these assemblies for criminal conduct.

Special details, such as those of civil unrest, will list specific roles and responsibilities of Command Staff of the City of St. Louis Sheriff's Office.

A Major will serve as the Incident Commander for any situation that may occur.

A Commander will serve as the Supervisor of the Rapid Response Team of the Carnahan Courthouse with a Team Leader to assist.

A Commander will serve as the Supervisor of the Rapid Response Team of the Civil Court Building with a Team Leader to assist.

102

The City of St. Louis Sheriff's Office will have a liaison contact with the St. Louis Metropolitan Police Department who will be responsible for coordinating efforts of operational planning and relaying information regarding any detention by the City of St. Louis Sheriff's Office.

Any damage to Court property or criminal activity will be documented by a representative of the City of St. Louis Sheriff's Office and information will be provided to the St. Louis Metropolitan Police Department to assist in the prosecution of said individual.  The City of St. Louis Sheriff's Office will act only as a detaining authority until the St. Louis Metropolitan Police Department can be notified and respond.

Mass communications will be sent to all offices that occupy the buildings of the 22nd Judicial Circuit Court.  These communications will provide each office with information regarding building security during the time of civil unrest.

In the event the Sheriff determines a **partial lockdown** of the building(s) will be necessary to ensure the safety of the judicial staff, court employees, and the public, all offices will be notified that entry into the Court buildings will not be allowed.  All occupants may exit the building(s) through the entrances listed below:

> Civil Court Building Exit – Basement/Chestnut St. handicap accessible
> Carnahan Courthouse – 1st Floor/11th St. handicap accessible

If a **full lockdown** of the building(s) is necessary, to ensure the safety of the judicial staff, court employees, and the public, **no exit or entry will be allowed at this time.**

When a **full lockdown** is ordered, **ALL** confined will be returned to the City of St. Louis Justice Center.  The Incident Commander will be in contact with the Director of Public Safety regarding the possible lockdown of the City of St. Louis Justice Center and/or Medium Security Institutions.  Jurors will be shuttled to the parking facility by transport deputies.  Judges will be shuttled to their prospective parking garages.

The public address system in both the Civil Court Building and the Carnahan Courthouse may be utilized by the Incident Commander to give further instructions to building occupants during incidents of civil unrest.

DFT - 001074

The responsibility of the City of St. Louis Sheriff's Office is the occupants of the 22nd Judicial Circuit buildings, the physical properties and the public visiting these properties.  The St. Louis Metropolitan Police Department assumes control over their sidewalks and city streets.

104

DFT - 001075

Section 21.000

Social Media Policy:

This policy provides guidance for all Deputies on the use of social media, which should be broadly understood for purposes of this policy to include blogs, wikis, microblogs, message boards, chat rooms, electronic newsletters, online forums, social networking sites, and any other sites or services that permit users to share information with others in a contemporaneous manner.

All Deputies need to know and follow the Sheriff's Office Rules and Regulations.

Deputies should be aware of the effect their actions may have on their images, as well as the Departments image. The information that one posts or publishes may be public information for a long time.

Deputies should be aware the St. Louis Sheriff's Department may observe content and information made available by Deputies through social media. Deputies should use their best judgement in posting material that is inappropriate or harmful to the St. Louis Sheriff's Office, City of St. Louis, or its employees.

Although not an exclusive list, some specific examples of prohibited social media conduct include posting commentary, content, or images that are defamatory, pornographic, proprietary, harassing, libelous, or that which could create a hostile work environment.

Deputies are not to publish, post or release any information that is considered confidential or not public. If there are any questions about what is considered confidential, Deputies should refer these inquires to the Sheriff or the Colonel.

Social media networks, blogs and other types of online content sometimes generate press and media attention or legal questions. Deputies should refer these inquires to the Sheriff or the Colonel.

If Deputies encounter a situation while using social media that threatens to become antagonistic, Deputies should disengage from the dialogue in a polite manner and seek the advice of the Sheriff or the Colonel.

DFT - 001076

Deputies should get appropriate permission before they post or refer to images of current or former employees. Additionally, Deputies should get appropriate permission to use a third party's copyrights, copyrighted material, trademarks, service marks or other intellectual property.

Social media use should not interfere with a Deputies responsibilities while on duty at the St. Louis Sheriff's Office. All Department and Court computer systems are to be used for business purposes only. Use of social media is only allowed for business purposes, any use of social media while on duty for personal purposes is discouraged and could result in disciplinary action being taken.

Subject to applicable laws, after-hours online activity that violate the Rules and Regulations of the St. Louis Sheriff's Office or any other Department policy may be subject to disciplinary action being taken up to and including termination of employment.

If a Deputy publishes content after-hours that involves work or subjects associated with the St. Louis Sheriff's Office, a disclaimer should be used, such as the following: The postings on this site are my own and may not represent the St. Louis Sheriff's Office positions, strategies or opinions.

DFT - 001077

DFT - 001078