IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

JOHN N. CASTELLANO, III            )
                                   )
        Plaintiff,                 )
                                   )
v.                                 )          Case No. 4:19-CV-02304-SRC
                                   )
VERNON BETTS, et al.,              )
                                   )
        Defendants.                )

**PLAINTIFF'S STATEMENT OF DISPUTED MATERIAL FACTS
MAKING SUMMARY JUDGMENT IMPROPER**

COMES NOW Plaintiff John N. Castellano, III (hereinafter "Castellano") and for his

Statement of Disputed Material Facts Making Summary Judgment Improper states as follows:

1.      John N. Castellano III ("Plaintiff") is and was at all times relevant a Caucasian individual

employed by Defendant City, through the St. Louis Sheriff's Department ("Department"). Doc. 14,

Plaintiff's Second Amended Complaint, ¶ 1.

**RESPONSE:**  Admit.

2.      Plaintiff has been continuously employed by the Department since 1998. Doc. 14, Plaintiff's

Second Amended Complaint, ¶ 9; Exhibit A, DFT 000076 – 000077.

**RESPONSE:**  Admit.

3.      Plaintiff currently holds and at all times relevant held the title "Senior Deputy" within the

Department. Exhibit A, DFT 000077; Exhibit B, DFT 000079, DFT 001944 – 001945.

**RESPONSE:**  Admit.

4.      Plaintiff has received at least three pay raises since August 17, 2017. Exhibit B.

**RESPONSE:**  Admit that in August 2017 and 2018, Plaintiff received a 2% step increase, and in

December 2019, he received a 1% increase per the pay matrix scale.  Exhibit B.  By way of further

answer, Timothy Haill (hereinafter "Haill") received a 5% pay increase when he was promoted to sergeant and Sheriff Vernon Betts' (hereinafter "Betts") brother was  given a 5% pay increase for "increased duties" because Betts could not promote him.  Exhibit 1, Haill Depo. 29:17-21, Exhibit 2, Interrogatory No. 13, & Exhibit 3, Betts Depo. 277:5-22.

5.      Defendant City of St. Louis ("City") is a charter city not within a county organized and existing under the laws of the State of Missouri. Doc. 14, Plaintiff's Second Amended Complaint, ¶ 3.

**RESPONSE:**  Admit.

6.      The Department operates as a county office for the City of St. Louis, also organized and existing under the laws of the State of Missouri. Doc. 14, Plaintiff's Second Amended Complaint, ¶ 3.

**RESPONSE:**  Admit.

7.      Defendant Vernon Betts ("Betts") is an African American male elected to the position of Sheriff for the City of St. Louis in November 2016 and is being sued in his individual capacity. Doc. 14, Plaintiff's Second Amended Complaint, ¶ 2.

**RESPONSE:**  Admit.

8.      Plaintiff dually filed his first Charge of Discrimination ("Charge") with the Missouri Commission on Human Rights ("MCHR") and the Equal Employment Opportunity Commission ("EEOC") against "City of St. Louis/St. Louis Sheriff's Department" on June 22, 2017 alleging that Plaintiff was discriminated against based on his race (Caucasian) when an African American deputy was promoted to sergeant in April 2017. Exhibit C, deposition of John Castellano, pg. 14:4 – 15:16; Exhibit D, Charge No. 560-2017-01475.

**RESPONSE:**  Admit.

9.      Plaintiff filed a petition for damages under the Missouri Human Rights Act ("MHRA") against Betts and City on August 23, 2017 in the Circuit Court for the City of St. Louis (Cause No. 1722-CC11086) regarding the allegations outlined in his first Charge. Exhibit E; August 23, 2017 Petition.

**RESPONSE:** Admit.

10.     Plaintiff dually filed his second Charge with the MCHR and the EEOC against "City of St. Louis/St. Louis Sheriff's Department" on October 5, 2017 alleging that Plaintiff was discriminated against based on his race (Caucasian) as well as in retaliation for filing his previous Charge when an African American deputy was promoted to sergeant in August 2017. Exhibit C, pg. 15:17 – 16:22; Exhibit F, Charge No. 560-2018-00093.

**RESPONSE:** Admit.

11.     Plaintiff dually filed his third Charge with the MCHR and the EEOC against "City of St. Louis/St. Louis Sheriff's Department" on March 5, 2019 alleging that Plaintiff was discriminated against based on his race (Caucasian) as well as in retaliation for filing his previous Charges and a "discrimination lawsuit"[1] when two African American deputies were promoted to sergeant in December 2018. Exhibit C, pg. 16:23 – 17:20; Exhibit G, Charge No. 560-2019-01033.

**RESPONSE:** Admit.

12.     On October 24, 2019, after written discovery was completed and before any depositions were taken, Plaintiff voluntarily dismissed his pending lawsuit (Cause No. 1722-CC11086). Exhibit H, October 24, 2019 dismissal.

**RESPONSE:** Admit.

13.     Betts read each of Plaintiff's three Charges (although he does not specifically recall the third

---

[1] Plaintiff originally filed Cause No. 1722-CC11086.

Charge) and turned each one over to the St. Louis City Counselor's Office to handle. Betts filed the Charges away in a drawer and did not investigate nor charge anyone within the Department with investigating Plaintiff's Charges. Exhibit I, deposition of Vernon Betts, pg. 22:24 – 23:6; 24:18 – 25:12; 26:6 – 28:16.

**RESPONSE:**  Admit that Betts read all 3 of Castellano's Charges of Discrimination.  Admit that Betts never had anyone in his Department investigate Castellano's Charges of Discrimination because he did not see the need to do so.  Exhibit 3, Betts Depo, 24:18-21; 26:24-27:3; & 28:14-20. Admit that Betts instead turned the Charges over to the City Counselor's Office, who is defending him in this lawsuit.  By way of further answer, see ¶¶ 125-127  below.

14.     Betts promulgated a Sheriff's Manual on January 3, 2017. The January 3, 2017 Sheriff's Manual is a re-promulgation of the same manual under the previous Sheriff (Jim Murphy) that Betts did not make changes to. Exhibit J, January 3, 2017 Sheriff's Manual; Exhibit I, pg. 62:5 to 63:14.

**RESPONSE:**  Admit.

15.     Betts promulgated an updated Sheriff's Manual on March 16, 2018. The January 3, 2017 Sheriff's Manual is a re-promulgation of the same manual under the previous Sheriff (Jim Murphy) that Betts did not make changes to. Exhibit K, March 16, 2018 Sheriff's Manual; Exhibit I, pg. 69:5 to 69:9.

**RESPONSE:**  Denied in part.  The testimony cited stated only that § 5 of the Manual regarding the performance appraisal process had not changed between 2017 and 2018, not that the entire Manual was unchanged.  Betts testified that he rewrote the Manual after he had been in office for a period of time and promulgated his own Manual. Ex. I, 69: 5-25.

16.     There are identical policies outlined for promotion from Deputy to Sergeant in both the January 3, 2017 and the March 16, 2018 Sheriff's Manuals. Exhibit J, pg. DFT 000011 through

DFT 000014; Exhibit K, pg. DFT 000982 through DFT 000985; Exhibit I, pg. 126:6 – 10.

**RESPONSE:**  Admit.  By way of further answer, Betts is aware that he has a promotion policy in his Manual.  He does not follow the policy because he does not have to.  He has never waived the policy.  He ignores it.  Exhibit 3, Betts Depo. 125:8-20 & 130:18-24.

17.     The exact same policy for promotion was included in the manual during the time period wherein all of the promotions Plaintiff contests he should have received occurred. Exhibit J, pg. DFT 000011 through DFT 000014; Exhibit K, pg. DFT 000982 through DFT 000985; Exhibit I, pg. 126:7 – 10.

**RESPONSE:**  Admit.

18.     The policy for promotion in both Sheriff's manuals specifically states that "The above promotion process is subject to modification, updating or waiver at the [sole][2] discretion of the Sheriff." Exhibit J, pg. DFT 000014; Exhibit K, pg. DFT 000985.

**RESPONSE:**  Admit.  By way of further answer, Betts has never waived the policy.  He ignores it. Exhibit 3, Betts Depo. 130:18-24.

19.     Betts is the sole decision maker in the Department regarding promotions. Exhibit I, 29:5 – 29:8.

**RESPONSE:**  Admit.

20.     Betts has never made a promotion using the specific promotional procedure outlined in the Sheriff's manual. Exhibit I, 125:3 – 126:6; 129:8 – 129:14; Exhibit C, pg. 25:25 – 26:7.

**RESPONSE:**  Admit.

21.     The Sheriff's manual explicitly allows waiver of the promotional procedure at the Sheriff's discretion. Exhibit J, pg. DFT 000014; Exhibit K, pg. DFT 000985 Exhibit I, 125:19 – 125:22.

---

[2] The word "sole" was inserted to this phrase in the March 16, 2018 update to the Sheriff's manual.

**RESPONSE:** Admit.  By way of further answer, Betts has never waived the policy.  He ignores it. Exhibit 3, Betts Depo. 130:18-24.

22.     Betts' practice in determining promotions is to evaluate candidates' merit through personal observations of that person at work and speaking with the candidate, the candidate's supervisor(s), and Betts' supervisory staff generally. Exhibit I, pg. 168:2 – 170:12.

**RESPONSE:** Admit in part and denied in part.  Admit that Betts testified as stated.  Denied that Betts' evaluates the candidates by speaking to them.  Betts has no formal process for interviewing candidates.  He may call the person into his office or not.  Sometimes he just sees them in the hallway and asks them or tells them what they are going to be doing as a supervisor and asks whether they can adhere to the responsibility.  He does this to make sure the person wants to be promoted.  Exhibit 3, Betts Depo. 51:13-17 & 170:20-171:6.  Denied that Batts also speaks to his supervisory staff about promotions.  Betts promotion process "is to promote employees on a merit basis, based on his personal knowledge."  Exhibit 4, Interrogatory Nos. 15 & 19.  By way of further answer, the various supervisors that Betts now claims he talked to about promotions were never identified as individuals with discoverable information about these promotions in Defendants' Initial Disclosures.  Exhibit 5.  Betts claimed he discussed all of these promotions with Haill.  Haill did not discuss promotions with Betts, except for the Allen promotion.  Exhibit 1, Haill Depo. 47:5-20 & 48:22-49:8.

23.     Betts has not ever reviewed an employee's file before making promotions. Exhibit I, pg. 129:15 – 130:15.

**RESPONSE:** Admit Betts testified as stated but denied that employee files are not reviewed before Betts makes promotions.  Betts testified that employees are evaluated once a year, which he reviews and signs off on.  This annual performance evaluation helps Betts to effectively manage his

department.  Exhibit 3, Betts Depo., 57:7-13 & 67:23-68:1.  Therefore, Betts reviews employees

performance evaluations, which are part of the employee file, before promotions are made.

24.     Antoine Cannon (an African American male) was promoted from deputy to sergeant within

the Transportation Unit ("Transportation") effective April 19, 2017. Exhibit I, pg. 161:11 – 161:19;

162:19 – 163:6.

**RESPONSE:**  Admit.

25.     The sergeant opening Cannon filled was previously held by Sergeant Chappelle Norise, and

became available due to ████████████████████████. Exhibit I, pg. 160:11 – 161:10;

162:19 – 162:23.

**RESPONSE:**  Admit that Betts testified and a document shows that ██████████████

███████████. Exhibit 6. ████████████████████████████

██████████████████████ ████████████████████

████████████████ Ex I, 160:18-161:2. ████████████████

████████████████████████████████████

██████████████████████████████████

██████████████████████████████

████████████ Exhibit 7, Haill Designee Depo. 35:1-13 & 37:9-17. ██████████████

████████████████████████████████ Exhibit 7, Haill

Designee Depo. 37:21-23 & Exhibit 3, Betts Depo. 160:18-161:7.



26.     Betts promoted Cannon without considering any other candidates because Cannon had been

working for some time directly in coordination with Norise. Betts' understanding from others in the

Department as well as his personal observations was that Cannon was doing an excellent job under

Norise in Transportation and that there was no need to seek someone else out to do the job Cannon

was already doing. Exhibit I, pg. 163:2 – 163:6; 164:9 – 165:5.

**RESPONSE:** Admit that Betts testified as stated. Denied that this is true. On January 24, 2017, Norise submitted Cannon's evaluation, showing that they had only worked together for 7 months. According to the evaluation, Cannon . This evaluation has the date "1/30/17" and the initials VB on it. Exhibit 8. On December 11, 2014, . Exhibit 9. As to Betts claimed understanding of Cannon's performance from talking to other supervisors in the Department, see ¶ 22 above.

27.     Betts did not review Cannon's disciplinary or performance history prior to promoting him to sergeant. Exhibit I, pg. 165:10 – 165:24; 166:10 – 167:17.

**RESPONSE:** Denied as to performance history. See ¶ 26 above.

28.     Betts based his decision to promote Cannon on his personal observations and conversations with other supervisors. Betts believes he discussed promoting Cannon with the lieutenant Cannon reported up to in the Transportation Unit (Lester Stewart) and that any other supervisors in the office may have given him their opinions on Cannon. Exhibit I, pg. 174:12 – 175:8.

**RESPONSE:** Admit that Betts testified as stated but denied that he talked to other supervisors about Cannon's promotion. See ¶ 22 above.

29.     Betts considered Cannon's educational background, character and demeanor on the job to be impressive. In particular, Cannon was very pleasant and had decent communication skills. Exhibit I, pg. 175:9 – 176:1.

**RESPONSE:** Admit that Betts testified as stated**.** Denied that Cannon's character and demeanor on the job were impressive. See ¶ 26 Response & ¶¶ 84 & 91-93 below.

30.     At the time Cannon was promoted to sergeant, Plaintiff had never expressed interest in promotion to Betts nor was Betts made aware that Plaintiff had expressed interest in promotion under Sheriff Murphy. Exhibit I, pg. 163:20 – 163:23.

**RESPONSE:**  Admit that Betts testified as stated but irrelevant.  Betts promoted 6 deputies (to include Cannon) who never provided the required letter expressing interest in being promoted. Exhibit 2, Interrogatory No. 2.  See also Exhibit L.

31.     On May 23, 2017, Betts promoted Felicia Davis (an African American female) from deputy to sergeant within the Courts Unit ("Courts") where she had served as an "acting sergeant" since 2015. Plaintiff did not contest Davis' promotion. Exhibit L, detailed summary of promotions, pg. DFT 003094; Exhibit M, Felicia Davis Personnel Record; Exhibit S, deposition of Corporate Representative Tammy Hogan, pg. 60:11 – 61:6.

**RESPONSE:**  Admit.

32.     On May 23, 2017, Betts promoted Timothy Haill (a Caucasian male) from deputy to sergeant while working within the Internal Affairs Division ("IAD") where he had been serving since 2014. Plaintiff did not contest Haill's promotion. Exhibit L, pg. DFT 003094; Exhibit N, Timothy Haill Personnel Record; Exhibit T, deposition of Timothy Haill pg. 6:6 – 6:17.

**RESPONSE:**  Admit.

33.     On August 7, 2017, Betts promoted Danny McGinnist (an African American male) from deputy to sergeant in the Courts Unit ("Courts"). Exhibit L, pg. DFT 003094; Exhibit O, Danny McGinnist Personnel Record.

**RESPONSE:**  Admit.

34.     Betts promoted McGinnist to an opening for sergeant in Courts based on McGinnist working in that particular unit at the time a sergeant spot became available, his merit and discussions Betts

9

had with other supervisors. Regarding merit, Betts observed that McGinnist in particular was a very articulate communicator, proficient in courtroom procedure, that he worked well with others and had some leadership experience. Exhibit I, pg. 194:14 – 195:1; 196:18 – 198:5; 202:11 – 202:19.

**RESPONSE:**  Admit in part and denied in part.  Admit that Betts testified as stated, except as to leadership experience.  Denied that McGinnist was promoted to the Courts Unit.  He was promoted to the Security Unit.  Exhibit 10.  Courts and Security are different units.  Exhibit 11, Bates No. 7-8 & Exhibit 12, Bates Nos 978-79.  Betts did not discuss promotions with other supervisors as he claimed.  See ¶ 22 above.  Additionally, Betts did not testify that McGinnist had leadership experience but that McGinnist seemed to him to be able to lead and seemed to be some kind of officer in other places where he worked.  Ex. I, 197:23-198:2

35.    Betts believes he spoke with at least three supervisors (Major Lammert, Lieutenant Kehoe-Roop, and Sergeant Haill) regarding promotion of McGinnist, none of whom had any objection. Exhibit I, pg. 196:18 – 197:2.

**RESPONSE:**  Admit that Betts testified as stated.  Denied that he talked to other supervisors, specifically Haill.  See ¶ 22 above.

36.    Betts did not review any personnel file related to McGinnist and was not aware of any disciplinary history prior to promoting him to sergeant. Exhibit I, pg. 199:2 – 199:19.

**RESPONSE:**  Admit that Betts did not review McGinnist's disciplinary history with the Department before promoting him.

37.    Plaintiff was working in Transportation at the time McGinnist was promoted to sergeant in Courts. Exhibit C, pg. 28:15 -28:20.

**RESPONSE:**  Admit that Castellano was working in the Transportation Unit in August 2017 because Betts had transferred him there from the Courts Unit on April 19, 2017.  Exhibit 6.  Denied

10

that McGinnist was promoted to sergeant in the Courts Unit.  Exhibit 10.  See also Exhibit 22, p. 3.

38.     At the time McGinnist was promoted to sergeant, Plaintiff had not submitted any letter for

consideration to Betts nor had any supervisor or colleague recommended Plaintiff for that position.

Exhibit C, pg. 28:21 – 29:2.

**RESPONSE:  OBJECTION.**  The Court can only consider admissible evidence when ruling on a

motion for summary judgment.  *Murphy v. Mo. Dep't of Corrections.,* 372 F.3d 979, 982 (8th Cir.

2004); Rule 56.  The court must disregard statements made without personal knowledge.  *Id.*

Castellano only testified that to his knowledge, no supervisor or colleague recommended him for this

promotion.  Ex. C, 28:21-29:2.  Castellano is not competent to testify to communications that he did

not witness.  Without waiver of the foregoing, denied.  Castellano actually testified that he could not

express interest in the August 2017 promotion because there was no application for the promotion.

Ex. C, 28:21-29:2

39.     On January 8, 2018, Betts promoted Dorothy Griggs Hamilton (an African American

female) from deputy to sergeant within the unit she was working (Criminal Records). Plaintiff did

not contest Hamilton's promotion. Exhibit L, pg. DFT 003094; Exhibit O, Dorothy Griggs

Personnel Record.

**RESPONSE:**  Admit.

40.     On December 3, 2018, Betts promoted Walter Allen and Anthony Evans (both African

American males) from deputy to sergeant within Courts.  Exhibit L, pg. DFT 003094; Exhibit Q,

Walter Allen Personnel Record; Exhibit R, Anthony Evans Personnel Record. Exhibit S, pg. 44:4 –

44:6.

**RESPONSE:**  Admit.

41.     Allen had been working in Courts for the previous 9 years when he was promoted to

sergeant within Courts. Exhibit I, pg. 214:13 – 215:2; Exhibit S, pg. 57:22 – 58:1.

**RESPONSE:**  Admit.

42.     Betts discussed Allen and Evans' potential promotions with his supervisory staff, including Sgt. Haill, Cpt. Tammy Hogan, Col. Roberts, Lt. Felicia Davis Lt. Neil Hogan, and Lt. Kehoe-Roop. Exhibit I, pg. 225:19 – 228:3.

**RESPONSE:**  Admit that Betts testified as stated.  Denied that this occurred.  See ¶ 22 above.

43.     Allen was promoted based in part on Betts' observations of his good demeanor, character, personality, and ability to communicate with others. Exhibit I, pg. 228:10 – 228:24.

**RESPONSE:**  Admit that Betts testified as stated.

44.     Evans was promoted based in part on his perfect attendance record and Betts' observations of his personality and ability to get along with everybody. Exhibit I, pg. 228:10 – 228:24.

**RESPONSE:**  Admit that Betts testified as stated.  Denied that Evans had perfect attendance.  He was absent from work in 2018, and therefore, did not have "perfect attendance."  Exhibit 13.  In 2018 Castellano was never absent from work.  Exhibit 14.

45.     Evans had 11 years of experience working in Courts prior to his promotion to sergeant within Courts. Exhibit S, 57:16 – 57:21.

**RESPONSE:**  Admit.  By way of further answer, Evan had been working in the Service Unit for 11 years when he was promoted to sergeant in the Courts Unit.  He was not working in the Courts Unit when this promotion occurred.  Exhibit S, 57:16-21.

46.     Plaintiff was working in Transportation at the time Allen and Evans were promoted to sergeant in Courts. Exhibit C, pg. 31:10 – 32:1.

**RESPONSE:**  Admit. By way of further answer, Castellano worked in the Courts Unit for 9 years before Betts transferred him to the Transportation Unit in April 2017. Exhibit 17, Castellano Depo.

12:6-13.  Castellano conducted the new employee training related to courtroom procedures from about 2008 through the spring of 2017.  Exhibit 15, ¶¶ 5 & 6.

47.    At the time Allen and Evans were promoted to sergeant, Plaintiff had not submitted any letter for consideration to Betts, had not expressed interest in the positions to anyone in the Department nor had any supervisor or colleague recommended Plaintiff for that position. Exhibit C, pg 28:21 – 29:2; 54:14 – 55:23; Exhibit U, Plaintiff's March 14, 2019 letter.

**RESPONSE:  OBJECTION.**  The Court can only consider admissible evidence when ruling on a motion for summary judgment.  *Murphy v. Mo. Dep't of Corrections.,* 372 F.3d 979, 982 (8th Cir. 2004); Rule 56.  The court must disregard statements made without personal knowledge.  *Id.* Castellano only testified that to his knowledge, no supervisor or colleague recommended him for this promotion.  Ex. C, 28:21-29:2.  Castellano is not competent to testify to communications others had with Betts that he did not witness.  By way of further answer, denied.  In his August 2018 evaluation (initialed by VB on August 29, 2018), Castellano stated: "I also know that I exceed standards in many areas and that I go above what is expected of me.  I am ready for consideration for promotion and would be a great asset to this department."  Exhibit 16.

48.    Plaintiff did not ever personally submit a letter of interest in promotion to Betts nor did he ever discuss interest in promotion with Betts. Exhibit C, pg. 55:18 – 56:8.

**RESPONSE:**  Admit in part and denied in part.  See ¶ 47 above.  Castellano testified that the March 14, 2019 letter (Exhibit U) was the only letter he submitted to Betts during his tenure.  Admit that Betts never talked to Castellano about promotion like he did other deputies, such as Haill.  See ¶ 61 below.

49.    The only letter expressing interest in promotion the Plaintiff has submitted during Betts' tenure was on March 14, 2019. Exhibit U; Exhibit C, pg. 55:2 – 55:23.

13

**RESPONSE:**  Admit that this was the only letter Plaintiff submitted to Betts expressing interested in promotion.  By way of further answer see, ¶ 116 (Castellano expressed interest in being promoted through his 2018 performance evaluation).

50.     Plaintiff submitted his March 14, 2019 letter of interest to Sergeant Haill. At the time of submission Plaintiff's letter was not signed or dated, so Sgt. Haill called Plaintiff back to the office to sign and date his letter. Neither Betts nor Sgt. Haill know why Plaintiff did not submit his letter to Betts. It is common knowledge in the Department that letters of interest should be submitted to the Sheriff. Exhibit T, pg. 36:23 to 38:7; Exhibit I, pg. 233:3 – 234:21.

**RESPONSE:**  Admitted in part and denied in part.  Castellano testified that he submitted his letter to Sheriff Betts by giving it to Haill.  He had no follow-up conversation with Betts or Haill about the letter.  Exhibit 17, Castellano Depo. 55:18-56:8.

51.     Betts did not discriminate or retaliate against Plaintiff. Exhibit I, pg. 29:9 – 29:16.

**RESPONSE:**  Denied.  See ¶¶ 126-129 below.

52.     In Betts' observations Plaintiff does not communicate well, has shown poor judgment and poor work ethic, has not done anything to stand out in a good way, and does not have a good personality for being a supervisor. Exhibit I, pg. 232:6 - 236:11.

**RESPONSE:**  Admitted in part and denied in part.  After Betts initially testified he never had any issues or concerns with Castellano's job performance, he testified as stated.  Exhibit 3, Betts Depo. 101:12-16.  After admitting that he would not promote Castellano because of this mess (the lawsuit stuff), Betts claimed that Castellano did not communicate well, showed poor judgment, and did not have the personality to be a supervisor because he is not nice.  When asked how Castellano showed a poor work ethic, Betts testified it was because he (Betts) holds "church" every morning  in the hallway by the front door and Castellano never talks to him. Denied that Betts testified that

14

Castellano had not done anything to stand out in a good way.  Ex. I, 232:6-236:11.  See also
¶¶ 131-134 below.

53.      Betts is particularly concerned with supervisors being good communicators. Betts believes

Plaintiff's communication skills are extremely poor, based in part that Plaintiff has only spoken to

him once that he can recall in his four years as Sheriff. Exhibit I, pg. 155:6 – 156:4.

**RESPONSE:**  Admitted that Betts testified as stated.  By way of further answer, Castellano had a

conversation with Betts after Betts was elected but before he was sworn in.  Betts told Castellano

that there would be no union while Betts was sheriff and if Castellano pursued this (unionization),

there would be repercussions.  Exhibit 17, Castellano Depo.  40:6-15.  By way of further answer,

Castellano says good morning to Betts when he sees him in the morning as he enters the courthouse.

Exhibit 15, ¶ 17.

54.      Betts remains open to promoting Plaintiff in the future. Exhibit I, pg. 154:5 – 154:12.

**RESPONSE:**  Denied.  After testifying that he considered Castellano for promotion but did not

promote him because of the mess (lawsuit stuff) and he needed to wait to see how it panned out,

that it would take several years before he could even answer what it would take for Castellano to be

promoted, and stated he could not answer what Castellano had to do to be considered for promotion,

Betts also claimed that he was not saying that Castellano could never be promoted.  Exhibit 3, Betts

Depo., 151:22-152:20;  153:10-14 & 230:11-25.

55.      Plaintiff submitted two letters regarding his interest in promotion to Sheriff Murphy, one in

2010 and one in 2016. Ex. C, pg. 22:1 – 24:16.

**RESPONSE:**  Admit.

**PLAINTIFF'S STATEMENT OF ADDITIONAL DISPUTED FACTS MAKING SUMMARY
JUDGMENT IMPROPER**

        56.      According to Betts, former Sheriff James Murphy (hereinafter "Murphy") denied

African American deputies positions and raises based on their color, not their qualifications.  He claimed that Murphy promoted unqualified people.  Exhibit 3, Betts Depo. 16:24-17:9 & 45:6-8.

57.     Betts addressed the issue of racists in the Department at a roll call. He thought there were specific deputies in the Department who are racist but claimed he did not know who they are. Exhibit 3, Betts Depo. 141:13-142:10 & 142:21-25.

58.     Betts was looking at Castellano when he announced at the first all-staff roll call that all racists that are still here (the Department) need to leave and "don't f—k with me." Exhibit 17, Castellano Depo. 35:14-36:19.  See also Exhibit 15, ¶ 8.

59.     In the fall of 2016, after Murphy spoke about their being positions open, Haill submitted a letter about being promoted.  Exhibit 1, Haill Depo. 17:12-20.

60.     In September 2016, Murphy put out a memo saying anybody interested in being promoted should turn in a letter of intent to Tim Haill by a certain date, which Castellano did in October 2016.  Exhibit 17, Castellano Depo. 20:11-21:1.

61.     Before Haill was promoted to sergeant, Betts approached him and asked him where he might see himself going in the Sheriff's Office and asked Haill if he would be interested in being the sergeant in the property room.  This occurred in January or February 2017.  Exhibit 1, Haill Depo. 21:2-25.

62.     Betts claimed that after he became sheriff, he never talked to any deputies about where they would see themselves in the department or going in the department.  Exhibit 3, Betts Depo.  146:16-22.

63.     A memo goes into all deputies' mailboxes when the Department wants all of the employees to know something.  Exhibit 3, Betts Depo. 108:22-109:3.

64.     Betts does not send out written announcements about sergeant openings.  He did not

know how many times he announced sergeant promotions during a roll call.  Exhibit 3, Betts Depo. 162:5-18

65.     According to Bett's promotion policy, promotions to sergeant are made from an eligibility list that is supposed to last for two years.   The eligibility list is created using a competitive testing process.  Exhibit 11, Bates No. 11, § 4.003(A) & (B) and Exhibit 12, Bates No. 982, §4.003 (A) & (B).

66.     Applicants for promotion must have no disciplinary suspensions or reduction in rank during the past 5 years and no sick leave warning letter within the last year.  The policy states that the deputy's complete disciplinary history will be considered.  Exhibit 11, Bates No. 12, § 4.003(D)(1)(b) and Exhibit 12, Bates No. 983, § 4.003(D)(1)(b).

67.     An applicant's performance evaluation is also supposed to be considered when making a decision about promotions.  Exhibit 11, Bates No. 12, § 4.003(D)(1)(d) and Exhibit 12, Bates No. 983, § 4.003(D)(1)(d).

68.     When a promotional exam is going to be given, notice is sent to all potential applicants.  The Notice of Examination includes a deadline for applicants to apply by submitting a memo stating interest and why they believe they are qualified for the position.  Applicants meeting the minimum qualifications participate in the promotional exam.  Exhibit 11, Bates No. 13-14, § 4.003(E) & (F)(1)-(3) and Exhibit 12, Bates No. 984-985, § 4.003(E) & (F)(1)-(3).

69.     Candidates who successfully complete the exam are put on the eligibility list based on overall exam score. Vacancies are filled from the eligibility list based upon examination scores and an interview with sheriff.  Exhibit 11, Bates No. 14, § 4.003(F)(4)-(5) and Exhibit 12, Bates No. 985, § 4.003(F)(4)-(5).

70.     Betts is aware that he has a promotion policy in his Manual.  He does not follow it

because he does not have to.  He has never waived the policy.  He ignores it.  Exhibit 3, Betts Depo. 125:8-20 & 130:18-24.

71.     Betts does not look at past discipline or past performance evaluations to get a sense of the deputy before making a promotion decision.  Exhibit 3, Betts Depo.129:15-24.

72.     Bett's Manual also includes a section about performance evaluations.  It states that the purpose of the appraisal is to promote effective personnel management and to improve performance in the Sheriff's Department.  Exhibit 11, Bates No. 15, § 5.001 and Exhibit 12, Bates No 986, § 5.001.  The annual performance evaluation helps Betts to effectively manage his department.  Exhibit 3, Betts Depo. 67:23-68:1.

73.     This evaluation policy provides that all employees of the Department will be rated annually during the month of their anniversary of hire.  The completed performance appraisal is submitted to the Sheriff or his designee.  The Sheriff reviews all completed performance appraisals. Exhibit 11, Bates Nos. 15 & 18-19, § 5.002(A) & (E)(5)-(6) and Exhibit 12, Bates Nos. 986 & 989, § 5.002(A) & (E)(5)-(6).

74.     According to Betts, every supervisor is instructed to evaluate their employees once a year and Betts reviews and signs off on the evaluations.  He keeps a copy of the performance evaluations, and they are also maintained in the personnel file.  Exhibit 3, Betts Depo. 57:7-13 & 58:4-17.

75.     Betts receives employee evaluations throughout the course of the month and he reviews them. Exhibit 3, Betts Depo. 65:8-66:3.

76.     Betts is adamant about getting evaluations and has a boatload of them sitting on his desk that he has looked through.  Exhibit 3, Betts Depo. 72:17-23.

77.     Since Haill has been in the Internal Affairs Division (2014), no supervisor has been

disciplined for failing to complete performance evaluations.  Exhibit 7, Haill Designee Depo. 24:3-6.

78.     Before Betts was elected sheriff, Cannon was bragging that when Betts was elected, he (Betts) was going to promote Cannon to sergeant.  Exhibit 15, ¶ 9.

79.     Betts promoted Cannon to sergeant on April 24, 2017.  This was the first sergeant promotion Betts made.  Exhibit 18.

80.     When Cannon was promoted to sergeant, he had only been with the sheriff's department for 3 years.  Exhibit 18.

81.     Castellano learned about this promotion after it occurred because he was transferred from the Courts to the Transportation/Jail Crew at the same time and received the memo.  Exhibit 6.  No promotional opportunity was announced by Betts before Cannon was promoted.  Exhibit 15, ¶¶ 10 & 12.

82.     Betts talks to the affected employee before he moves him/her to a different position.  Exhibit 3, Betts Depo.  46:22-47:1.

83.     Betts did not talk to Castellano before he moved him from the Courts Unit to the Transportation/Jail Unit.  Exhibit 15, ¶ 11.

84.     Cannon was evaluated by his supervisor in January 2017.  ██████████████

████████████████████████████████████████████████████

██████████████████████████████  Exhibit 8 and Exhibit 3, Betts Depo. 166:10-21.

85.     Betts reviews all performance evaluations so he knows how his supervisors are rating their employees.  Exhibit 3, Betts Depo. 157:10-13.

86.     Betts can overrule a section of an employee evaluation.  Exhibit 3, Betts Depo. 67:2-7.  Exhibit 11, Bates No. 19, § 5.002(E)(6) and Exhibit 12, Bates No. 989, § 5.002(E)(6).

87.     If Cannon was evaluated after Betts took office and before he was promoted, Betts would have reviewed the evaluation.  Exhibit 3, Betts Depo. 165:6-9.

88.     After reviewing Cannon's evaluation during his deposition, Betts claimed he never saw it before he promoted Cannon.  Exhibit 3, Betts Depo. 167:4-17.

89.     Betts' initials and the date 1/30/17 appear on the first page of Cannon's performance evaluation.  Exhibit 8.

90.     Castellano was also evaluated in January 2017.  He exceeded expectations in his quality of work and knowledge of the position.  Betts reviewed and initiated Castellano's evaluation on January 23, 2017.  Exhibit 19.

91.     Betts did not know that Cannon ███████████████████████████ ██████████████████████████████████ when Cannon was promoted, which would have impacted Bett's decision.  Exhibit 3, Betts Depo. 176:2-12.

92.     Betts was sure that Cannon and several other deputies were telling others that if Betts was elected, they would be promoted.  Doing this would show poor judgment.  Exhibit 3, Bets Depo.  131:11-15 & 134:12-18.

93.     Cannon was later charged with domestic assault. Betts testified that ███████ ███████████████████████████████████.  Exhibit 3, Betts Depo.  177:11-178:8.

94.     ███████████████████████████████ ██████████████████████████████████████ ████████████  Exhibit 20.

95.     Castellano filed his first Charge of Discrimination against Betts on June 12, 2017, alleging race discrimination related to the promotion of Cannon.  In this Charge, Castellano

20

reported that he had put in an application for promotion in September/October 2016.  Exhibit 21.

96.     Betts was aware of each Charge of Discrimination Castellano filed, to include his first Charge.  He read the Charges.   Exhibit 3, Betts Depo., 22-24-23:6.

97.     It ticked Betts off that he was being accused of discrimination/being a racist.  Exhibit 3, Betts Depo.  29:17-22.

98.     Betts told his wife, his family, and the people in the office (Steve Roberts, Tim Haill, Capt. Hogan, and maybe Gregg Christian) that he was angry about the Charges.  He conveniently claimed that he could not remember specifically what he told the staff about these Charges.  Exhibit 3, Betts Depo. 30:13-31:19.

99.     Betts' Manual also has a discrimination policy.  It provides that supervisors should discuss any concerns with an employee who believes s/he is the victim of discrimination and that the Sheriff and Internal Affairs should be contacted about the complaint.  The policy further provides that "[t]he Department will ensure that discrimination complaints are resolved," providing for an internal review process.  Exhibit 11, Bates Nos. 38-39, § 8.002 and Exhibit 12, Bates Nos. 1026-1027, § 8.002.

100.    In their Initial Disclosures, Defendants claimed that Haill, as the Sergeant in the Internal Affairs Division, investigated Plaintiff's complaints.  Exhibit 5.  Haill never investigated any complaint made by Castellano.  Exhibit 1, Haill Depo. 54:8-20

101.    Betts never had anyone in his Department investigate Castellano's first, second, or third Charges of Discrimination.  He did not see the need for an investigation.  Exhibit 3, Betts Depo. 24:18-21; 26:24-27:3; & 28:14-19.

102.    As Defendants concede, the Charges were sent to the City Counselor's Office.  See ¶ 13 above.  The City Counselor's Office defended the Charges before the EEOC and in the present

action.  Exhibit 22 and Exhibit 23.  No independent and impartial investigation was ever conducted into Castellano's Charges.

103.    In defending the Charges, Betts claimed that he uses an "open and competitive process" when making promotions.  Exhibit 22, p. 3.  However, Betts admitted that he only considered Cannon, Haill, and Davis when he promoted them.  Exhibit 3, Betts, Depo.  187:10-20.

104.    When promotions are made, the announcement does not go into every employees' mailbox.  This information would go to Human Resources, the majors, and the person the employee would be reporting to.  Exhibit 3, Betts Depo.  185:22-186:8.

105.    Felicia Davis and Timothy Haill were promoted to sergeant by Betts on May 23, 2017.  Exhibit 18.

106.    Betts did not announce that he was going to be making promotions and that deputies could apply for consideration before Davis and Haill were promoted. Castellano did not know these promotions were made until after his first lawsuit was filed.  Exhibit 15, ¶ 13.

107.    Betts initially claimed that he considered Cannon, Davis, and Haill for promotion because they submitted letters to him, until he changed his story and claimed he could not remember if they submitted letters.  Exhibit 3, Betts Depo. 191:6-11.  None of them submitted letters for promotion before being promoted.  Exhibit 2, Interrogatory No. 2.

108.    Betts promoted Danny McGinnist to sergeant on August 7, 2017.  Exhibit 18.

109.    Betts did not know before he promoted McGinnist that ████████████████ ████████████████████████████████████████████████████████ ██████████████████, because he did not review the personnel files, even though this was something he would want to know.  Exhibit 3, Betts Depo. 199:2-24.

110.    One of the things important to Betts in terms of promotion is that the deputy shows

up and do his/her job.  Exhibit 3, Betts Depo. 166:6-9

111.    When McGinnist was promoted in 2017, 

▮▮▮▮▮▮▮▮▮▮.  Exhibit 24 and ¶ 66 above.  ▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮ 18 days before he was promoted by Betts.

112.    McGinnist was ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮.  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮  Exhibit 3, Betts Depo. 198:9-199:1.

113.    Castellano filed a petition for damages under the Missouri Human Rights Act

("MHRA") against Betts and City on August 23, 2017 in the Circuit Court for the City of St. Louis

(Cause No. 1722-CC11086).  See ¶ 9 above.

114.    On October 11, 2017, Castellano filed a second Charge of Discrimination about the

McGinnist promotion, alleging race and retaliatory discrimination.  Exhibit 25.

115.    Betts promoted Dorothy Griggs (Hamilton) to sergeant on January 8, 2018.  Exhibit

18.

116.    In his August 2018 evaluation (initialed by VB on August 29, 2018), Castellano

stated: "I also know that I exceed standards in many areas and that I go above what is expected of

me.  I am ready for consideration for promotion and would be a great asset to this department."

Exhibit 16.

117.    On December 3, 2018, Betts promoted Anthony Evans and Walter Allen to sergeant.

Exhibit 18.

118.    In January 2019, Betts held an all-staff roll call.  During this roll call, Betts talked

about firing people whose attitudes he did not like.  He walked up to Castellano and looked at him

when he was saying this.  Exhibit 15, ¶ 14.  See also Exhibit 17, Castellano Depo. 35:14-36:19.

119.   Betts probably told his employees that he could fire whomever he wanted whenever he wanted. Exhibit 3, Betts Depo. 143:3-5.

120.   On April 11, 2019, Castellano filed his third Charge of Discrimination, alleging that he was discriminated and retaliated against when Evans and Allen were promoted to sergeant. Exhibit 26.

121.   In March 2019, Betts announced during a roll call that if deputies wanted to be considered for promotion, they should submit a letter.  During this same roll call, Betts talked about his "s--t list" and asked if deputies knew how to get off of it.  Several deputies raised their hands indicating they did and Betts told the rest of the deputies that they should talk to the deputies that raised their hands after the roll call if they wanted to know.  Castellano talked to several of these deputies, who told Castellano that the way to get off Betts' s--t list was to give money to him, which Castellano understood to mean to Betts' campaign.  Exhibit 15, ¶¶ 15 & 16.

122.   Castellano submitted a letter to be considered for promotion on March 14, 2019. Exhibit 27.

123.   Betts promoted five deputies to sergeant in 2019 and 2020: Kevin Meyer and Charles Jones on July 1, 2019, Jim Borisch and Whitney Wyndom on December 2, 2019, and Frank Parker on March 20, 2020.  Exhibit 18.

124.   According to Betts, everyone he has promoted (except one or two people) were promoted because they gave him a letter stating interest in being promoted.  Exhibit 3, Betts Depo. 193:8-22.

125.   Only 6 of the 12 people Betts promoted to sergeant gave him a letter expressing interest in promotion before they were promoted.  Exhibit 2, Interrogatory No 2.

126.   Betts has considered Castellano for promotion but with this mess (this lawsuit stuff),

24

Betts needs to wait and see how the lawsuit pans out (whether he wins or losses) before he would

promote Castellano.  Exhibit 3, Betts Depo. 151:22-152:20 & 153:10-14.

127.    The following exchange occurred regarding Betts' promotion of Castellano:

Q:     Let me go back.  I told you I'd give you some time to think about it and go

        back to it.  What would John Castellano have to do to be considered for

        promotion in your sheriff's department?

A:     Yeah.  John Castellano?  I don't know.

Q:     I need to give you more time?

A:     Probably several years, I don't know.  I'm not going to answer that question.

Q:     You're refusing to answer that question?

A:     I'm saying I can't answer that question.  Exhibit 3, Betts Depo. 230:11-25.

128.    Betts tesitfied that Castellano would have to improve every aspect of his person,

personality, and work ethic to be considered for promotion.  Exhibit 3, Betts Depo. 231:12-17.

129.    As Betts explained, it would make no sense to promote somebody that is giving you

all kinds of hell.  Exhibit 3, Betts Depo. 153:4-8.

130.    According to Betts, those he promoted were not angels but they were doing what

Betts asked of them.  Exhibit 3, Betts Depo. 232:3-5.

131.    Betts never had any issues or concerns with Castellano's job performance.  Exhibit 3,

Betts Depo. 101:12-16.

132.    Castellano was more qualified for a sergeant position in the Courts Unit because he

is POST certified as an instructor, meaning he can teach police academy classes, he's an active

shooter instructor, he has 40 hours of U.S. Marshals training on courthouse security procedures, and

20 years of experience as a deputy.  He also served as the acting supervisor when other supervisors

25

went on vacation.  Exhibit 17, Castellano Depo. 29:3-21.

133.    Castellano and Dawn Kehoe-Ropp are the only deputies in the Sheriff's Department who are POST certified to train other deputies.  Exhibit 7, Haill Designee Depo. 22:9-16.

134.    Castellano trained new deputies in courtroom procedures as recently as 2017, shortly after Betts was elected.  Since then, he has never been asked to teach a new class of deputies by Betts.  Castellano's supervisors still have him train the new deputies that are hired into his unit. Exhibit 15, ¶¶ 5-7.

135.    Shamera Smith was fired for insubordination after complaining about sexual harassment and is suing Betts for retaliation.  Betts probably told her to come to work and keep her mouth shut, like he tells most employees.  Exhibit 3, Betts Depo. 280:22-281:9; 283:19-24; & 284:8-14.

136.    John Mopkins is also suing Betts for retaliation because he was not promoted after testifying for Johnny Chester in his lawsuit against the Sheriff's Department.  Exhibit 3, Betts Depo. 286:2-16.

137.    The Sheriff sets policy for hiring and firing deputies in the Department.  Exhibit 11, Bates No. 9-10 & 71-75, §§ 4.000 and 16.000 and Exhibit 12, Bates Nos. 980-981 & 1057-1061, §§ 4.000 & 16.000.

Respectfully submitted,

**PLEBAN & PETRUSKA LAW, LLC**


By: _____/s/ Lynette M. Petruska_____
Lynette M. Petruska, Mo. Bar No. 41212
lpetruska@plebanlaw.com
J.C. Pleban, Mo. Bar No. 63166
JC@plebanlaw.com
2010 South Big Bend Blvd.
St. Louis, MO  63117
(314) 645-6666 - Telephone
(314) 645-7376 - Facsimile

Attorneys for Plaintiff


<u>**CERTIFICATE OF SERVICE**</u>

The undersigned counsel hereby certifies that a true and accurate copy of the foregoing was served upon all counsel of record via the Federal Electronic Filing System on this 9th day of November, 2020.


_____/s/ Lynette M. Petruska_____

27