IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

JOHN N. CASTELLANO, III            )
                                   )
          Plaintiff,               )
                                   )
v.                                 )          Case No. 4:19-CV-02304-SRC
                                   )
VERNON BETTS, et al.,              )
                                   )
          Defendants.              )

**DEFENDANTS' RESPONSE TO**
**PLAINTIFF'S STATEMENT OF ADDITIONAL DISPUTED FACTS**

COME NOW City of St. Louis and Vernon Betts ("Defendants"), and in response to

Plaintiff's Statement of Additional Disputed Facts, state as follows:

56.       According to Betts, former Sheriff James Murphy (hereinafter "Murphy") denied

African American deputies positions and raises based on their color, not their qualifications.  He

claimed that Murphy promoted unqualified people.  Exhibit 3, Betts Depo. 16:24-17:9 & 45:6-8.

**RESPONSE: This is Betts' personal opinion, solely supported by his own testimony which he**

**specified was "I think not based on qualifications, from what I understand", and is not a**

**material fact that precludes summary judgment in Defendants' favor and therefore for the**

**purposes of summary judgment only, admit.**

57.       Betts addressed the issue of racists in the Department at a roll call. He thought there

were specific deputies in the Department who are racist but claimed he did not know who they are.

Exhibit 3, Betts Depo. 141:13-142:10 & 142:21-25.

**RESPONSE: Admit that Betts' cited testimony acknowledges he "addressed the issue of there**

**being racist folks here because that seemed to be the whole issue with me running for**

**sheriff….So I thought it was best to clear that air right off the bat." Further admit that pg.**

142 of Betts' testimony taken in its entirety states that he did agree that there were some racist deputies in the department but that he "didn't have any specific people in mind. I know that there had to be some shades of racism, that's what seemed to be talked about all the time, me firing white folks and all that kind of stuff, bull crap." Ex. 3, 142:11-17. The final cited portion of Plaintiff's Statement of Additional Fact ("SOAF") # 57 is not actually incorporated into Plaintiff's SOAF, but Defendants admit that portion specifically asks if Betts looked at Plaintiff while he made his statement about racism in the department, to which he replied "I'm sure I didn't. Why would I?" Ex. 3, 142:21-25.

58.    Betts was looking at Castellano when he announced at the first all-staff roll call that all racists that are still here (the Department) need to leave and "don't f—k with me." Exhibit 17, Castellano Depo. 35:14-36:19.  See also Exhibit 15, ¶ 8.

**RESPONSE**: Deny. The cited testimony in Ex. 17 does not reference racists in any way, and Plaintiff's testimony in Ex. 15 contradicts his own testimony in Ex. 17 to the extent that it alleges Betts said "all racists need to leave." Denied further in that this allegation of Betts "looking at" Plaintiff during the roll call is contrary to facts Plaintiff has already admitted to by specifically citing in SOAF ℗ 57. Ex. 3, 142:21-25.

59.    In the fall of 2016, after Murphy spoke about their being positions open, ███ submitted a letter about being promoted.  Exhibit 1, ███ Depo. 17:12-20.

**RESPONSE**: Deny that the material cited establishes that ███ submitted a letter in reference to being promoted **after** Murphy spoke about positions being open. Admit that ███ testified "I think [Murphy] generally spoke about it. I had submitted a letter in reference to being promoted." Admit that both Murphy generally speaking about promotions and ███ submitting a letter regarding promotion both occurred in the "fall of 2016 time frame."

60.    In September 2016, Murphy put out a memo saying anybody interested in being promoted should turn in a letter of intent to ▮▮▮▮ by a certain date, which Castellano did in October 2016.  Exhibit 17, Castellano Depo. 20:11-21:1.

**RESPONSE: Admit that Plaintiff submitted a letter of interest to Sheriff Murphy in 2016, but deny that Plaintiff's letter was submitted to ▮▮▮▮ or that Murphy instructed anyone to submit letters of interest to ▮▮▮▮ was simply a fellow deputy under Murphy and he testified unequivocally that he has no recollection of Plaintiff submitting a letter to him in 2016, no one else submitted letters to him in 2016, and Murphy did not request letters be submitted to ▮▮. Plaintiff's Ex. 1, 17:21 – 18:15. ▮▮▮ 2016 letter of interest was submitted directly to Murphy. Plaintiff's Ex. 1, 18:16-18.**

61.    Before ▮▮ was promoted to sergeant, Betts approached him and asked him where he might see himself going in the Sheriff's Office and asked ▮▮ if he would be interested in being the sergeant in the property room.  This occurred in January or February 2017.  Exhibit 1, ▮▮ Depo. 21:2-25.

**RESPONSE: Admit.**

62.    Betts claimed that after he became sheriff, he never talked to any deputies about where they would see themselves in the department or going in the department.  Exhibit 3, Betts Depo.  146:16-22.

**RESPONSE: Deny. The portion of Betts' testimony cited is taken out of the context of the previous line of questioning and his subsequent answers, which show that he understood the question to be whether he was promising positions right when he became sheriff. Directly prior to this line of questioning there were several questions as to Betts' actions consecutively through time: prior to becoming sheriff, after becoming sheriff but prior to taking office, and**

then the cited portion, after he became sheriff. Plaintiff's Ex. 3, 146:5-22. Betts' response was
"No, no I haven't" when asked if he "approached individual deputies and asked them where
they see themselves in the department or going in the department." Plaintiff's Ex. 3, 146:16-
22. In the very next line Betts was asked "Let me be more specific. Did you ever talk to ████
████ after you became sheriff about where he'd like to see himself in your department?"
Plaintiff's Ex. 3, 146:23-25. Betts responded "We've probably had some kind of conversation
along those lines, but when you say after I became sheriff, it was not – it was not my intent
right after I became sheriff ████ not to be I the position that he's in. I didn't come in
promising him and dictating, telling him he's going to go someplace." Plaintiff's Ex. 3, 147:4-
9.

63.     A memo goes into all deputies' mailboxes when the Department wants all of the
employees to know something.  Exhibit 3, Betts Depo. 108:22-109:3.

**RESPONSE: Admit.**

64.     Betts does not send out written announcements about sergeant openings.  He did not
know how many times he announced sergeant promotions during a roll call.  Exhibit 3, Betts Depo.
162:5-18.

**RESPONSE: Admit.**

65.     According to Bett's promotion policy, promotions to sergeant are made from an
eligibility list that is supposed to last for two years.   The eligibility list is created using a
competitive testing process.  Exhibit 11, Bates No. 11, § 4.003(A) & (B) and Exhibit 12, Bates No.
982, §4.003 (A) & (B).

**RESPONSE: Admit in part and deny in part. This describes part of the sections of the
Manual cited in Exhibits 11 and 12 and is not a material fact that precludes summary**

**judgment in Defendants' favor and therefore for the purposes of summary judgment only,**

**admit. Plaintiff failed to cite to paragraph (C) in § 4.003 of Exhibits 11 and 12 for the**

**contention that the eligibility lists can remain in effect for a period of 2 years. Plaintiff further**

**failed to include that paragraph (B) in § 4.003 of Exhibits 11 and 12 authorizes the Sheriff to**

**utilize "any combination" of evaluations as the "competitive testing process."  Deny as**

**argumentative and unsupported by evidence that this is "Betts' promotion policy". Plaintiff**

**has already admitted under Defendants' SOF #14 – 21 that Betts inherited this Manual from**

**Murphy, has never made changes to the promotional procedure, and has consistently waived**

**the procedure outlined in the Manual by never using it, therefore contradicting that the**

**procedure in the Manual is "Betts' promotion policy" by creation, adoption, or even in**

**practice.**

66.     Applicants for promotion must have no disciplinary suspensions or reduction in rank

during the past 5 years and no sick leave warning letter within the last year.  The policy states that

the deputy's complete disciplinary history will be considered.  Exhibit 11, Bates No. 12, §

4.003(D)(1)(b) and Exhibit 12, Bates No. 983, § 4.003(D)(1)(b).

**RESPONSE: Admit in part and deny in part. This accurately describes the sections of the**

**Manual cited in Exhibits 11 and 12 and is not a material fact that precludes summary**

**judgment in Defendants' favor and therefore for the purposes of summary judgment only,**

**admit. Deny as argumentative and unsupported by evidence that this is an accurate**

**representation of the procedure Betts uses for promotions. Plaintiff has already admitted**

**under Defendants' SOF #14 – 21 that Betts inherited this Manual from Murphy, has never**

**made changes to the promotional procedure, and has consistently waived the procedure**

outlined in the Manual by never using it, therefore contradicting that the procedure in the Manual is "Betts' promotion policy" by creation, adoption, or even in practice.

67.     An applicant's performance evaluation is also supposed to be considered when making a decision about promotions.  Exhibit 11, Bates No. 12, § 4.003(D)(1)(d) and Exhibit 12, Bates No. 983, § 4.003(D)(1)(d).

**RESPONSE: Admit in part and deny in part. This accurately describes the sections of the Manual cited in Exhibits 11 and 12 and is not a material fact that precludes summary judgment in Defendants' favor and therefore for the purposes of summary judgment only, admit. Deny as argumentative and unsupported by evidence that this is an accurate representation of the procedure Betts uses or is "supposed" to use for promotions. Plaintiff has already admitted under Defendants' SOF #14 – 21 that Betts inherited this Manual from Murphy, has never made changes to the promotional procedure, and has consistently waived the procedure outlined in the Manual by never using it, therefore contradicting that the procedure in the Manual is "Betts' promotion policy" by creation, adoption, or even in practice.**

68.     When a promotional exam is going to be given, notice is sent to all potential applicants.  The Notice of Examination includes a deadline for applicants to apply by submitting a memo stating interest and why they believe they are qualified for the position.  Applicants meeting the minimum qualifications participate in the promotional exam.  Exhibit 11, Bates No. 13-14, § 4.003(E) & (F)(1)-(3) and Exhibit 12, Bates No. 984-985, § 4.003(E) & (F)(1)-(3).

**RESPONSE: Admit in part and deny in part. This accurately describes the sections of the Manual cited in Exhibits 11 and 12 and is not a material fact that precludes summary judgment in Defendants' favor and therefore for the purposes of summary judgment only,**

**admit. Deny as argumentative and unsupported by evidence that this is an accurate representation of the procedure Betts uses for promotions. Plaintiff has already admitted under Defendants' SOF #14 – 21 that Betts inherited this Manual from Murphy, has never made changes to the promotional procedure, and has consistently waived the procedure outlined in the Manual by never using it, therefore contradicting that the procedure in the Manual is "Betts' promotion policy" by creation, adoption, or even in practice.**

69.    Candidates who successfully complete the exam are put on the eligibility list based on overall exam score. Vacancies are filled from the eligibility list based upon examination scores and an interview with sheriff.  Exhibit 11, Bates No. 14, § 4.003(F)(4)-(5) and Exhibit 12, Bates No. 985, § 4.003(F)(4)-(5).

**<u>RESPONSE</u>: Admit in part and deny in part. This accurately describes the sections of the Manual cited in Exhibits 11 and 12 and is not a material fact that precludes summary judgment in Defendants' favor and therefore for the purposes of summary judgment only, admit. Deny as argumentative and unsupported by evidence that this is an accurate representation of the procedure Betts uses for promotions. Plaintiff has already admitted under Defendants' SOF #14 – 21 that Betts inherited this Manual from Murphy, has never made changes to the promotional procedure, and has consistently waived the procedure outlined in the Manual by never using it, therefore contradicting that the procedure in the Manual is "Betts' promotion policy" by creation, adoption, or even in practice.**

70.    Betts is aware that he has a promotion policy in his Manual.  He does not follow it because he does not have to.  He has never waived the policy.  He ignores it.  Exhibit 3, Betts Depo. 125:8-20 & 130:18-24.

**RESPONSE: Admit that Betts is aware of the promotional procedure in the Department's Manual and that he does not follow it because the manual states that he does not have to. Plaintiff's Ex. 3, 125:21-22. Deny as argumentative and unsupported by evidence that he has never waived the policy, but instead ignores it.**

71.     Betts does not look at past discipline or past performance evaluations to get a sense of the deputy before making a promotion decision.  Exhibit 3, Betts Depo.129:15-24.

**RESPONSE: Admit.**

72.     Bett's Manual also includes a section about performance evaluations.  It states that the purpose of the appraisal is to promote effective personnel management and to improve performance in the Sheriff's Department.  Exhibit 11, Bates No. 15, § 5.001 and Exhibit 12, Bates No 986, § 5.001.  The annual performance evaluation helps Betts to effectively manage his department.  Exhibit 3, Betts Depo. 67:23-68:1.

**RESPONSE: Admit that the Department Manual includes a section about performance evaluations as cited, and that they help Betts in managing the Department.**

73.     This evaluation policy provides that all employees of the Department will be rated annually during the month of their anniversary of hire.  The completed performance appraisal is submitted to the Sheriff or his designee.  The Sheriff reviews all completed performance appraisals. Exhibit 11, Bates Nos. 15 & 18-19, § 5.002(A) & (E)(5)-(6) and Exhibit 12, Bates Nos. 986 & 989, § 5.002(A) & (E)(5)-(6).

**RESPONSE: Admit in part and deny in part. This accurately describes the sections of the Manual cited in Exhibits 11 and 12 and is not a material fact that precludes summary judgment in Defendants' favor and therefore for the purposes of summary judgment only,**

**admit. Deny as argumentative and unsupported by evidence that this is an accurate**

**representation of what actually happens in the Department relative to evaluations.**

74.     According to Betts, every supervisor is instructed to evaluate their employees once a

year and Betts reviews and signs off on the evaluations.  He keeps a copy of the performance

evaluations, and they are also maintained in the personnel file.  Exhibit 3, Betts Depo. 57:7-13 &

58:4-17.

**RESPONSE: Admit that this accurately describes Betts' testimony and understanding of how**

**these files are maintained.**

75.     Betts receives employee evaluations throughout the course of the month and he

reviews them. Exhibit 3, Betts Depo. 65:8-66:3.

**RESPONSE: Admit.**

76.     Betts is adamant about getting evaluations and has a boatload of them sitting on his

desk that he has looked through.  Exhibit 3, Betts Depo. 72:17-23.

**RESPONSE: Admit.**

77.     Since ███ has been in the Internal Affairs Division (███), no supervisor has been

disciplined for failing to complete performance evaluations.  Exhibit 7, ███ Designee Depo. 24:3-

6.

**RESPONSE: Admit in part and deny in part. Admit that no formal discipline has occurred**

**that ███ is aware of, deny that no discipline has occurred whatsoever. Betts has verbally**

**disciplined supervisors regarding failure to complete performance evaluations. Plaintiff's Ex.**

**3, 72:13-16.**

78.     Before Betts was elected sheriff, ███ was bragging that when Betts was elected,

he (Betts) was going to promote ███ to sergeant.  Exhibit 15, ¶ 9.

**RESPONSE: Objection pursuant to Rule 56(c)(2) –Plaintiff's statement of what he claims**

**████████████ stated in his presence is inadmissible hearsay pursuant to FRE 801. In**

**further answer, Betts testified that he never promised any individuals promotions prior to**

**being elected sheriff, including ████████████ Plaintiff's Ex. 3, 131:5-10.**

79.     Betts promoted ██████ to sergeant on April 24, 2017.  This was the first sergeant

promotion Betts made.  Exhibit 18.

**RESPONSE: Admit.**

80.     When Cannon was promoted to sergeant, he had only been with the sheriff's

department for 3 years.  Exhibit 18.

**RESPONSE: Admit.**

81.     Castellano learned about this promotion after it occurred because he was transferred

from the Courts to the Transportation/Jail Crew at the same time and received the memo.  Exhibit 6.

No promotional opportunity was announced by Betts before ██████ was promoted.  Exhibit 15,

¶¶ 10 & 12.

**RESPONSE: Admit.**

82.     Betts talks to the affected employee before he moves him/her to a different position.

Exhibit 3, Betts Depo.  46:22-47:1.

**RESPONSE: Admit that Betts testified that he _tries_ to talk to employees before making**

**decisions, specifically as to not interrupt their ability to attend school, maintain childcare, or**

**ongoing treatments such as dialysis. Plaintiff's Ex. 3, 46:22 – 47:6.**

83.     Betts did not talk to Castellano before he moved him from the Courts Unit to the

Transportation/Jail Unit.  Exhibit 15, ¶ 11.

**RESPONSE: Admit.**

10

84.      ▮▮▮▮ was evaluated by his supervisor in January 2017.  He did not meet standards in 4 of the evaluation categories: compliance with rules, regulations, and authority; knowledge of position, attendance, and supervisory performance.  Exhibit 8 and Exhibit 3, Betts Depo. 166:10-21.

**RESPONSE: Admit that ▮▮▮▮ was evaluated by his direct supervisor ▮▮▮▮ ▮▮▮▮, in January 2017, deny that the evaluation indicates Cannon did not meet standards. ▮▮▮▮ rated ▮▮▮▮ "Needs Improvement" in compliance, knowledge, attendance, and supervisory performance. ▮▮▮▮ assessment is specifically contradicted by ▮▮▮▮, who indicates he does not agree with ▮▮▮▮ ratings, ▮▮▮▮ does meet standards where ▮▮▮▮ said he did not, that ▮▮▮▮ did not do the rating accurately by rating ▮▮▮▮ on categories that did not apply to him at the time, and further states "▮▮▮▮ is a good working Deputy always improving himself." Plaintiff's Ex. 8, Bates DFT – 000246. Deny that Betts was aware of this evaluation prior to promoting ▮▮▮▮, and deny that it is accurate based solely on the opinion of ▮▮▮▮, who Betts viewed as a sub-par supervisor ▮▮▮▮. Plaintiff's Ex. 3, 167:3-17.**

85.      Betts reviews all performance evaluations so he knows how his supervisors are rating their employees.  Exhibit 3, Betts Depo. 157:10-13.

**RESPONSE: Admit.**

86.      Betts can overrule a section of an employee evaluation.  Exhibit 3, Betts Depo. 67:2-7.  Exhibit 11, Bates No. 19, § 5.002(E)(6) and Exhibit 12, Bates No. 989, § 5.002(E)(6).

**RESPONSE: Admit.**

87.      If ▮▮▮▮ was evaluated after Betts took office and before he was promoted, Betts would have reviewed the evaluation.  Exhibit 3, Betts Depo. 165:6-9.

**RESPONSE**: **Admit that Betts testified affirmatively to the hypothetical that reviewing evaluations submitted to him is his process. Betts went on to clarify a few lines later "I don't know if I have that in my file, and I said a few minutes ago that I would have seen it. I would have seen it if it was given to me, and I don't believe this was ever given to me." Plaintiff's Ex. 3, 165:19-24.**

88.     After reviewing ███████ evaluation during his deposition, Betts claimed he never saw it before he promoted ██████.  Exhibit 3, Betts Depo. 167:4-17.

**RESPONSE**: **Admit that Betts reviewed Cannon's evaluation during his deposition and testified under oath that "This is the first time I've seen this" and "I never got this evaluation." Plaintiff's Ex. 3, 167:3-17. Deny as argumentative that Betts "claimed" he never saw it before he promoted Cannon.**

89.     Betts' initials and the date 1/30/17 appear on the first page of ████████ performance evaluation.  Exhibit 8.

**RESPONSE**: **Admit that "1/30/17" appears in the bottom right corner of the first page, and that the letters "VB" are just below that date.**

90.     Castellano was also evaluated in January 2017.  He exceeded expectations in his quality of work and knowledge of the position.  Betts reviewed and initiated Castellano's evaluation on January 23, 2017.  Exhibit 19.

**RESPONSE**: **Admit that Plaintiff's January 2017 rating is marked "Exceeds Standards" on quality of work and knowledge of position. Admit that the bottom right corner contains the mark "1-23-17, VB" but deny that anything in the record corroborates that Betts reviewed and initialed the evaluation himself or on that date.**

91.     Betts did not know that ██████ had received a written reprimand for lack of

12

professionalism and common courtesy in his daily performance when Cannon was promoted, which

would have impacted Bett's decision.  Exhibit 3, Betts Depo. 176:2-12.

**RESPONSE:** Admit.

92.     Betts was sure that ███████ and several other deputies were telling others that if Betts

was elected, they would be promoted.  Doing this would show poor judgment.  Exhibit 3, Bets

Depo.  131:11-15 & 134:12-18.

**RESPONSE: Deny that the testimony cited stands for the conclusion stated. Betts did not**

**testify that he was sure ███████ was bragging but that "he and several other folks probably**

**did that", meaning bragging, and clarified that he does not know who, and was basing his**

**statement on being "sure that kind of stuff happens...I'm kind of laughing because I had one**

**deputy that never even got hired but he put it in the St. Louis American that he was going to**

**be the new HR guy." Plaintiff's Ex. 3, 131:11-23. Admit that Betts agreed to the hypothetical**

**that if people were bragging about being promoted if Betts was elected. that would show poor**

**judgment.**



93.     ████████████████████████████████████████████

████████████████████████████████████. Exhibit

3, Betts Depo.  177:11-178:8.

**RESPONSE:** Admit.

94.     ███████████████████████████████████

████████████████████████████████████████

███████████████. Exhibit 20.

**RESPONSE: Admit that** ████████████████████████████

████████████████████████████████████████

███████████████████████████████████████████. **Deny the remaining as argumentative.**

95.     Castellano filed his first Charge of Discrimination against Betts on June 12, 2017, alleging race discrimination related to the promotion of ██████.  In this Charge, Castellano reported that he had put in an application for promotion in September/October 2016.  Exhibit 21.

**RESPONSE: Admit.**

96.     Betts was aware of each Charge of Discrimination Castellano filed, to include his first Charge.  He read the Charges.   Exhibit 3, Betts Depo., 22-24-23:6.

**RESPONSE: Admit.**

97.     It ticked Betts off that he was being accused of discrimination/being a racist.  Exhibit 3, Betts Depo.  29:17-22.

**RESPONSE: Admit that it "ticked [Betts] off a little bit" because he "didn't like being accused of something that he didn't do." Plaintiff's Ex. 3, 29:17 – 30:4.**

98.     Betts told his wife, his family, and the people in the ████████████████████ ███████████████████████ that he was angry about the Charges.  He conveniently claimed that he could not remember specifically what he told the staff about these Charges.  Exhibit 3, Betts Depo. 30:13-31:19.

**RESPONSE: Deny that the testimony cited stands for the conclusion stated. Although Betts never testified to actually being angry about the charges, when Betts was asked if he ever told anybody he was angry about the charges he said "I'm sure I did…Probably like my wife, my family, maybe people in the office. I don't know." Plaintiff's Ex. 3, 30:13-19. Betts testified that ███████████████████████ all work in close proximity to him in the office and that he's "sure I expressed something to them." Plaintiff's Ex. 3, 30:20 – 31:7. Deny as**

**argumentative that he was "conveniently" claiming he could not remember when testifying**

**under oath regarding brief comments that he possibly made (if at all) almost three and a half**

**years ago.**

99.     Betts' Manual also has a discrimination policy.  It provides that supervisors should

discuss any concerns with an employee who believes s/he is the victim of discrimination and that

the Sheriff and Internal Affairs should be contacted about the complaint.  The policy further

provides that "[t]he Department will ensure that discrimination complaints are resolved," providing

for an internal review process.  Exhibit 11, Bates Nos. 38-39, § 8.002 and Exhibit 12, Bates Nos.

1026-1027, § 8.002.

**RESPONSE: Admit.**

100.     In their Initial Disclosures, Defendants claimed that ███████████████

██████████████████, investigated Plaintiff's complaints.  Exhibit 5.  ██████ never investigated

any complaint made by Castellano.  Exhibit 1, Haill Depo. 54:8-20

**RESPONSE: Admit that Defendants disclosed that** ████████████████████████

██████████████ **and that he "_has been involved_ in investigating Plaintiff's complaints."**

**Admit that** ██████ **did not ever conduct an independent Sheriff's Department investigation into**

**any complaints made by Castellano, because Castellano made no such internal complaint as**

**outlined in Plaintiff's SOAF #99. Defendants disclosed that** ██████ **"has been involved in**

**investigating", because he had been involved in assisting the City Counselor's Office**

**investigation, not any Sheriff's Department investigation. Defendants assumed that was clear**

**based on the fact that Plaintiff would know that he did not submit any internal complaint.**

101.     Betts never had anyone in his Department investigate Castellano's first, second, or



third Charges of Discrimination.  He did not see the need for an investigation.  Exhibit 3, Betts

Depo. 24:18-21; 26:24-27:3; & 28:14-19.

**RESPONSE: Admit that Betts did not see a need for an investigation because he knew the**

**allegations weren't true, he didn't understand these Charges to be a request for investigation**

**and that he further relied on** ███████████████████████████**, both of whom**

**advised to just give the Charges to the City Counselor's Office to handle.  Plaintiff's Ex. 3,**

**25:7-20; 27:11-14; 28:14-25; Plaintiff's Ex. 1, 55:1-11.**

102.    As Defendants concede, the Charges were sent to the City Counselor's Office.  See

¶ 13 above.  The City Counselor's Office defended the Charges before the EEOC and in the present

action.  Exhibit 22 and Exhibit 23.  No independent and impartial investigation was ever conducted

into Castellano's Charges.

**RESPONSE: Admit to Defendants' SOF # 13, deny that the City Counselor's Office did not**

**conduct an independent and impartial investigation into Plaintiff's Charges.**

103.    In defending the Charges, Betts claimed that he uses an "open and competitive

process" when making promotions.  Exhibit 22, p. 3.  However, Betts admitted that he only

considered ███████████████ when he promoted them.  Exhibit 3, Betts, Depo.  187:10-20.

**RESPONSE: Exhibit 22 is Respondents City of St. Louis and Sheriff Betts' position statement**

**in response to one of Plaintiff's Charges disputing the promotion of** █████████**.**

**Respondents assert that "**████████ **was promoted subject to an open and competitive**

**process wherein his qualifications, experience, and reputation were considered." That detailed**

**statement regarding the** ████████ **promotion cannot be improperly asserted to impeach**

**Betts' statement regarding three entirely different promotions of three other deputies, none of**

16

**whose promotions are the subject of this lawsuit and two of which Plaintiff has never disputed prior to this SOAF.**

104.     When promotions are made, the announcement does not go into every employees' mailbox.  This information would go to Human Resources, the majors, and the person the employee would be reporting to.  Exhibit 3, Betts Depo.  185:22-186:8.

**RESPONSE: Admit.**

105.     ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ were promoted to sergeant by Betts on ▮▮▮▮, 2017.  Exhibit 18.

**RESPONSE: Admit.**

106.     Betts did not announce that he was going to be making promotions and that deputies could apply for consideration before ▮▮▮▮▮▮▮ were promoted. Castellano did not know these promotions were made until after his first lawsuit was filed.  Exhibit 15, ¶ 13.

**RESPONSE: Admit that Betts did not make announcements specific to the promotions of ▮▮▮▮▮▮▮. Defendants have no evidence to the contrary but cannot in good faith admit Plaintiff's claim that he was unaware of ▮▮▮▮▮▮▮ 2017 promotions, which filled one-fifth of the 10 possible sergeant positions authorized at that time, until Defendants disclosed them in their discovery responses on December 19, 2018. Defendants' Ex. AA, pg. 1.**

107.     Betts initially claimed that he considered ▮▮▮▮▮▮▮ for promotion because they submitted letters to him, until he changed his story and claimed he could not remember if they submitted letters.  Exhibit 3, Betts Depo. 191:6-11.  None of them submitted letters for promotion before being promoted.  Exhibit 2, Interrogatory No. 2.

**RESPONSE: Deny that the testimony cited stands for the conclusion stated. The actual exchange was:**

17

**Q: When you promoted** ▮▮▮▮▮▮▮▮▮▮▮▮**, they hadn't submitted letters to you,**

**correct?**

**A: They had.**

**Q: They had?**

**A: Well, I don't know. I don't remember whether they had or not. Again, those people were**

**promoted because there was a situation – like I said, in** ▮▮▮▮ **case, she was already working**

**as the sergeant, and I don't believe in acting sergeants, so we made her a sergeant. In Tim**

▮▮▮ **case, he was there doing that job, and he was doing exactly what I wanted him to do,**

**displayed all of the characteristics and everything, and so that's how he got promoted. So it**

**ain't like I even was considering anybody else for those promotions.**

**Plaintiff's Ex. 3, 191: 6-21. Deny that Betts "changed his story" based on the foregoing**

**exchange in its entirety, and for further context Betts failing to remember in a department**

**just shy of 200 people who has and has not submitted letters over the past four years**

**throughout the course of an 8 hour deposition is not an indication that he had any intention of**

**"changing his story." Defendants' Ex. AA. Betts stated repeatedly throughout his deposition**

**that he had not considered anyone but** ▮▮▮▮▮▮▮▮▮▮ **for the specific promotions**

**they received. Plaintiff's Ex. 3, 163:2-6; 167:22 – 168:1; 181:3-8; 182:21 – 183:1. Admit that**

▮▮▮▮▮▮▮▮▮ **did not submit letters for consideration.**

    108.    Betts promoted ▮▮▮▮▮▮ to sergeant on ▮▮▮▮ 2017.  Exhibit 18.

**RESPONSE: Admit.**

    109.    Betts did not know before he promoted ▮▮▮▮ that he had previously been

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮ because he did not review the personnel files, even though this was

something he would want to know.  Exhibit 3, Betts Depo, 199:2-24.

**RESPONSE: Admit that Betts was not aware of** 

**because he does not go through disciplinary files when making his decisions. Admit that**

**Betts would want to know about such behavior.**

110.    One of the things important to Betts in terms of promotion is that the deputy shows

up and do his/her job.  Exhibit 3, Betts Depo. 166:6-9

**RESPONSE: Admit.**

111.    When ▮▮▮▮▮ was promoted in 2017, he had ▮▮▮▮▮▮▮

.  Exhibit 24 and ¶ 66 above.  He received this ▮▮▮▮▮

▮▮▮▮▮, 2017, 18 days before he was promoted by Betts.

**RESPONSE: Admit to everything except that** ▮▮▮▮▮▮▮

▮▮▮▮▮▮. **As Plaintiff has admitted with regard to Defendants' SOF #14 –**

**21, Betts has consistently waived the Manual's outlined promotional procedures.**

112.    ▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮    Exhibit 3, Betts Depo. 198:9-199:1.

**RESPONSE: Admit.**

113.    Castellano filed a petition for damages under the Missouri Human Rights Act

("MHRA") against Betts and City on August 23, 2017 in the Circuit Court for the City of St. Louis

(Cause No. 1722-CC11086).  See ¶ 9 above.

**RESPONSE: Admit.**

114.    On October 11, 2017, Castellano filed a second Charge of Discrimination about the

▮▮▮▮▮ promotion, alleging race and retaliatory discrimination.  Exhibit 25.

**RESPONSE: Admit with the clarification that Castellano filed his second Charge on October 11, 2017 which alleged race and retaliatory discrimination following the promotion of** ▮▮▮▮▮▮ **, not that Plaintiff was filing a second Charge regarding** ▮▮▮▮▮▮ **promotion.**

115.    Betts promoted ▮▮▮▮▮▮▮▮▮▮ to sergeant on ▮▮▮▮▮, 2018.  Exhibit 18.

**RESPONSE: Admit.**

116.    In his August 2018 evaluation (initialed by VB on August 29, 2018), Castellano stated: "I also know that I exceed standards in many areas and that I go above what is expected of me.  I am ready for consideration for promotion and would be a great asset to this department." Exhibit 16.

**RESPONSE: Admit that after blaming some of his incidents of tardiness on another deputy Plaintiff went on to state as above that he considers himself ready for promotion, a great asset, and to exceed standards, contrary to his Sgt.'s evaluation that did not rate him as exceeds standards in any categories. Admit that "VB, 8/29/18" appears on the front page of this evaluation.**

117.    On ▮▮▮▮▮ 2018, Betts promoted ▮▮▮▮▮▮▮▮▮▮ to sergeant. Exhibit 18.

**RESPONSE: Admit.**

118.    In January 2019, Betts held an all-staff roll call.  During this roll call, Betts talked about firing people whose attitudes he did not like.  He walked up to Castellano and looked at him when he was saying this.  Exhibit 15, ¶ 14.  See also Exhibit 17, Castellano Depo. 35:14-36:19.

**RESPONSE: Admit that Betts held an all staff roll call in January 2019 and that he does not recall but does not dispute discussing firing people with bad attitudes. Deny that he looked at**

**or walked up to Plaintiff while he was saying that or at any roll call. Defendants' Ex. CC,**

**Affidavit of Vernon Betts ¶¶ 4-6.**

119.    Betts probably told his employees that he could fire whomever he wanted whenever he wanted. Exhibit 3, Betts Depo. 143:3-5.

**RESPONSE: Admit.**

120.    On April 11, 2019, Castellano filed his third Charge of Discrimination, alleging that he was discriminated and retaliated against when ████████ were promoted to sergeant. Exhibit 26.

**RESPONSE: Admit.**

121.    In March 2019, Betts announced during a roll call that if deputies wanted to be considered for promotion, they should submit a letter.  During this same roll call, Betts talked about his "s--t list" and asked if deputies knew how to get off of it.  Several deputies raised their hands indicating they did and Betts told the rest of the deputies that they should talk to the deputies that raised their hands after the roll call if they wanted to know.  Castellano talked to several of these deputies, who told Castellano that the way to get off Betts' s--t list was to give money to him, which Castellano understood to mean to Betts' campaign.  Exhibit 15, ¶¶ 15 & 16.

**RESPONSE: Admit that deputies were invited to submit letters of consideration for promotion at a roll call in March 2019. Further admit that Betts advised at that roll call that individuals who were choosing to not participate in the upcoming May Day parade were on his shit list and that participation in the parade would be the way to get off of his shit list. Deny that Betts has ever sought, accepted, or instructed others on his behalf to seek campaign contributions for favors. Admit that Betts verbally accepted one deputy's voluntary offer of a monetary contribution to the staff cook out that occurs after the parade, after which Betts**

believes that deputy provided a contribution (amount unknown) to █████████, who manages the Department's budget for such events.  Ex. CC ₧₧ 7-12. Objection pursuant to Rule 56(c)(2) –Plaintiff's statement of what he claims unnamed individuals stated in his presence is inadmissible hearsay pursuant to FRE 801.

122.    Castellano submitted a letter to be considered for promotion on March 14, 2019. Exhibit 27.

**RESPONSE: Admit that Plaintiff submitted an undated and unsigned letter to █████████, who called Plaintiff back to sign and date it. See SOF # 50.**

123.    Betts promoted five deputies to sergeant in 2019 and 2020:



█████████, 2019, ████████████████████████ 2019, and █████████ █████████ 2020.  Exhibit 18.

**RESPONSE: Admit.**

124.    According to Betts, everyone he has promoted (except one or two people) were promoted because they gave him a letter stating interest in being promoted.  Exhibit 3, Betts Depo. 193:8-22.

**RESPONSE: Deny that the testimony cited stands for the conclusion stated. When asked how many people he's promoted that have actually given him a letter to be considered Betts responded: "I think just about everybody except for maybe one or two. I don't know." There is no testimony that anyone was ever promoted with the sole reason being that they gave him a letter stating interest.**

125.    Only 6 of the 12 people Betts promoted to sergeant gave him a letter expressing interest in promotion before they were promoted.  Exhibit 2, Interrogatory No 2.

**RESPONSE: Deny that the exhibit supports the conclusion alleged. These interrogatories indicate that 7 of the 12 deputies promoted submitted letters requesting promotion.**

126.    Betts has considered Castellano for promotion but with this mess (this lawsuit stuff), Betts needs to wait and see how the lawsuit pans out (whether he wins or losses) before he would promote Castellano.  Exhibit 3, Betts Depo. 151:22-152:20 & 153:10-14.

**RESPONSE: Deny that the testimony cited stands for the conclusion stated. Betts testified that he had not ever <u>discussed</u> Plaintiff being promoted with his supervisory staff until after the lawsuits. Betts adamantly denied that Plaintiff was out of consideration for promotion because of the lawsuit, expressed concern as to how it might hypothetically damage morale for his staff to promote Plaintiff because there are people more qualified, that Plaintiff hasn't been selected because he does not meet Betts' qualifications and desired attributes in a supervisor, and that Plaintiff very well could improve and be promoted under his tenure. Plaintiff's Ex. 3, 151:17 – 154:12.**

127.    The following exchange occurred regarding Betts' promotion of Castellano:

Q:    Let me go back.  I told you I'd give you some time to think about it and go
      back to it.  What would John Castellano have to do to be considered for
      promotion in your sheriff's department?

A:    Yeah.  John Castellano?  I don't know.

Q:    I need to give you more time?

A:    Probably several years, I don't know.  I'm not going to answer that question.

Q:    You're refusing to answer that question?

A:    I'm saying I can't answer that question.  Exhibit 3, Betts Depo. 230:11-25.

**RESPONSE: Admit.**

128.   Betts testified that Castellano would have to improve every aspect of his person, personality, and work ethic to be considered for promotion.  Exhibit 3, Betts Depo. 231:12-17.

**RESPONSE: Admit with the clarification that Betts answer in its entirety went on to include "Like I said before, he doesn't do anything to get himself in trouble, but he doesn't do anything to stand out. He ain't hitting 300 if you understand that analogy." Plaintiff's Ex. 3, 231:15-20.**

129.   As Betts explained, it would make no sense to promote somebody that is giving you all kinds of hell.  Exhibit 3, Betts Depo. 153:4-8.

**RESPONSE: Deny that the testimony cited stands for the conclusion stated. Betts testified that "Well, you've got other people who are qualified, and here you promote somebody that's been giving you all kinds of hell. What sense does that make?"**

130.   According to Betts, those he promoted were not angels but they were doing what Betts asked of them.  Exhibit 3, Betts Depo. 232:3-5.

**RESPONSE: Deny that the testimony cited stands for the conclusion stated. Betts testified that when he selected people for promotion they "were doing just what I thought they should be doing. And I think that's the point, Lynette. It's my prerogative to determine who I want to work for me, and those people, I ain't saying that they were angels, I'm saying that they were doing what I asked them to do at the time." Plaintiff's Ex. 3, 231:24 – 232:5.**

131.   Betts never had any issues or concerns with Castellano's job performance.  Exhibit 3, Betts Depo. 101:12-16.

**RESPONSE: Deny that the testimony cited stands for the conclusion stated. This portion of the transcript discusses the racial breakdown of the Department and where files are kept, not anything to do with Plaintiff's job performance. In further denial, see Defendants' SOF #52**

24

**and 53 specifically outlining Betts' concern with Plaintiff's lack of communication skills, poor**

**judgment and work ethic, and lack of personality fitting a supervisor. Defendants' Ex. I, 232:6**

**– 236:11 and 155:6 – 156:4.**

132.    Castellano was more qualified for a sergeant position in the Courts Unit because he

is POST certified as an instructor, meaning he can teach police academy classes, he's an active

shooter instructor, he has 40 hours of U.S. Marshals training on courthouse security procedures, and

20 years of experience as a deputy.  He also served as the acting supervisor when other supervisors

went on vacation.  Exhibit 17, Castellano Depo. 29:3-21.

**RESPONSE: Deny that Plaintiff was more qualified for a sergeant position in the Courts Unit**

**(see Defendants' SOF # 34, 35, 41, 43 – 45, 52 and 53), and further deny that Betts was aware**

**of any of Plaintiff's listed skills he puts forth as qualifications regarding promotion to the**

**Courts Unit. Ex. CC, ¶ 14.**

133.    Castellano and ███████████████ are the only deputies in the Sheriff's Department

who are POST certified to train other deputies.  Exhibit 7, Haill Designee Depo. 22:9-16.

**RESPONSE: Deny that the testimony cited stands for the conclusion stated. The cited portion**

**of ████████ Designee Deposition only discusses his own performance evaluations. The terms**

**"POST" and "certified" do not appear anywhere in Plaintiff's Exhibit 7.**

134.    Castellano trained new deputies in courtroom procedures as recently as 2017, shortly

after Betts was elected.  Since then, he has never been asked to teach a new class of deputies by

Betts.  Castellano's supervisors still have him train the new deputies that are hired into his unit.

Exhibit 15, ¶¶ 5-7.

**RESPONSE: Deny that Plaintiff has done any training since September 2016, which is prior**

**to Betts' election. Further deny that Betts asks anyone to do trainings, that is handled in its**

entirety by training coordinator ███████████████, and has been since 2015, prior to Betts' election.  According to the complete training records spanning from March 2015 to July 2020 Plaintiff has only ever assisted with training 4 times within that time frame – twice in March 2015 and twice in September 2016, both prior to Betts' election. Betts was not aware of Plaintiff previously training deputies at the time he promoted ██████████████. Ex. BB training log; Ex. CC ¶¶ 15-16; Ex. DD ████████████ designee deposition, 10:1-25.

135.   ██████████████████████████████████ ████████ and is suing Betts for retaliation.  Betts probably told her to come to work and keep her mouth shut, like he tells most employees.  Exhibit 3, Betts Depo. 280:22-281:9; 283:19-24; & 284:8-14.

**RESPONSE: Admit only that** ████████ **has filed a lawsuit and deny that it has any merit.**

136.   ██████████████ is also suing Betts for retaliation ████████████████████ ███████████████████████████████.  Exhibit 3, Betts Depo. 286:2-16.

**RESPONSE: Admit only that** ████████ **has filed a lawsuit and deny that it has any merit.**

137.   The Sheriff sets policy for hiring and firing deputies in the Department.  Exhibit 11, Bates No. 9-10 & 71-75, §§ 4.000 and 16.000 and Exhibit 12, Bates Nos. 980-981 & 1057-1061, §§ 4.000 & 16.000.

**RESPONSE: Admit.**

Respectfully submitted,

MICHAEL GARVIN
CITY COUNSELOR

By:  /s/ Korey Lewis_____
Korey Lewis #68203MO
Assistant City Counselor
1200 Market Street
City Hall Room 314
St. Louis, Missouri 63103
Phone: 314-622-4651
Fax: 314-622-4956
LewisK@stlouis-mo.gov
**ATTORNEY FOR DEFENDANTS**