# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| JOHN N. CASTELLANO, III, | ) | |
| | ) | |
| Plaintiff(s), | ) | |
| | ) | |
| vs. | ) | Case No. 4:19-cv-02304-SRC |
| | ) | |
| VERNON BETTS, et al., | ) | |
| | ) | |
| Defendant(s). | ) | |

## Memorandum and Order

Plaintiff John Castellano claims his employer retaliated against him for filing charges of race discrimination. Castellano, who is Caucasian, works as a Sheriff's deputy for the Sheriff's Department of the City of St. Louis. He alleges that the City denied him promotion to the rank of sergeant on two occasions because he filed charges of race discrimination against the Department. Doc. 14. In August 2019, Castellano brought this action against the City of St. Louis and Sheriff Vernon Betts in his individual capacity for retaliating against Castellano in violation of Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000(e) *et seq.*, and the Missouri Human Rights Act (MHRA), Mo. Rev. Stat. § 213.010 *et seq.* (Count I–II), as well as 42 U.S.C. § 1981 *et seq.* (Count III). Defendants respond that Betts promoted the candidates he believed were best-suited for the sergeant positions. Genuine issues of material fact exist as to whether Defendants retaliated against Castellano because of his protected activity, therefore the Court denies Defendants' Motion for Summary Judgment. Doc. 29.

## I.      Facts and background

Except as otherwise noted, the Court finds the following facts not genuinely in dispute in this case. *See* Fed. R. Civ. P. 56(g).

### A.      Vernon Betts and the City of St. Louis Sheriff's Department

In November 2016, Defendant Vernon Betts became the duly elected Sheriff for the City of St. Louis.  Doc. 42 at ¶ 7.  Sheriff Betts is an African-American male.  *Id.*  Betts runs the City of St. Louis Sheriff's Department and makes all promotional decisions within the Department. Doc. 42 at ¶ 19; Doc. 48 at ¶ 137.  To that end, Betts promulgated a Sheriff's Manual outlining the Department's promotion procedures, which are identical to those under Betts's predecessor, Sheriff Jim Murphy.  Doc. 42 at ¶ 14–17; Doc. 40-10; Doc. 40-11.  The manual provides that the Sheriff may waive the promotional procedures at his discretion, and accordingly, Betts never followed the promotional procedures in his manual.  Doc. 42 at ¶ 20–21.  Instead, Betts testified that he evaluates all candidates for promotion through his personal observations and speaking with the candidate, their supervisors, and other supervisory staff.  Doc. 42 at 22; Betts Dep. 168:2–170:12.  Betts claims that he promotes employees "on a merit basis, based on his personal knowledge."  Doc. 42-4 at ¶ 15, 19.  Unlike his predecessor, Betts does not send out written announcements about sergeant openings but sometimes announces the openings at roll call or approaches potential candidates in person.  Doc. 48 at ¶ 63–64; Doc. 42 at ¶ 61.

### B.      John N. Castellano, III

Plaintiff John N. Castellano III, a Caucasian male, has worked at the City of St. Louis Sheriff's Department since 1998.  Doc. 42 at ¶ 1–2.  Castellano currently holds the position of "Senior Deputy" in the Department.  Doc. 42 at ¶ 3.  In the fall of 2016, Castellano submitted a letter of interest to then-Sheriff Murphy for promotion to a sergeant position.  Doc. 48 at ¶ 59–60.  Castellano testified in his deposition that shortly before Betts became Sheriff, Castellano spoke to Betts about unionization, and Betts told him that if he pursued it there would be repercussions.  Castellano Dep. 40:6–15.  Soon after Betts became Sheriff in January 2017, Betts

2

transferred Castellano from the Courts Unit to the Transportation Unit.  Doc. 42 at ¶ 37; Doc. 48 at ¶ 83; Doc. 42-6.  Castellano alleges that at the time of his transfer, he had worked in the Courts Unit for nine years and served as the acting supervisor when other supervisors went on vacation.  Doc. 42 at ¶ 46; Castellano Dep. 29:3–21.

### C.      Castellano's charges of discrimination

#### 1.      First charge of discrimination, June 12, 2017

On April 24, 2017, Betts promoted Antoine Cannon, an African-American deputy, to sergeant within the Transportation Unit.  Doc. 42 at ¶ 24.  Cannon had only worked at the Sheriff's Department for three years, all in the Transportation Unit.  Doc. 48 at ¶ 80.  Betts had not announced the position's availability in advance.  Doc. 48 at ¶ 81.

On June 12, 2017, Castellano filed a Charge of Discrimination with the Missouri Commission on Human Rights (MCHR) and the Equal Employment Opportunity Commission (EEOC) against the City, alleging that Betts discriminated against him because of his race (Caucasian) by selecting Cannon for promotion to the sergeant position instead of Castellano.  Doc. 42 at ¶ 8; Doc. 42-21.  In his charge, Castellano reported that he had put in an application for promotion in the fall 2016 under Sheriff Murphy.  Doc. 42-21.  Castellano also filed a state petition for damages under the MHRA against Betts and the City on August 23, 2017, which he later voluntarily dismissed.  Doc. 42 at ¶ 9.  Betts testified in his deposition that he read Castellano's charge and turned it over to the St. Louis City Counselor's Office but did not otherwise take any action on the charge.  Doc. 42 at ¶ 13.  Betts testified that he did not know Castellano was interested in promotion when Betts promoted Cannon, as Castellano had not spoken to Betts about promotion or submitted a letter of interest to him.  Doc. 42 at ¶ 30.

In May 2017, Betts had also promoted two other deputies to sergeants in the units where they already worked:  Felicia Davis (an African-American female) in the Courts Unit, and Timothy Haill (a Caucasian male) in the Internal Affairs Division.  Doc. 42 at ¶ 31–32.  Castellano did not contest either of these promotions.  *Id.*

### 2.      Second charge of discrimination, October 5, 2017

On August 7, 2017, a sergeant position opened in the Security Unit, and Betts gave the position to Danny McGinnist, an African-American deputy.  Doc. 42 at ¶ 33; Doc. 48 at ¶ 108.  Betts testified that he promoted McGinnist based on McGinnist's already working in the unit where the position opened, McGinnist's qualifications, and Betts's discussions with other supervisors.  Doc. 42 at ¶ 34.   Betts testified that he observed that McGinnist was an articulate communicator, he was proficient in courtroom procedure, he worked well with others, and he had leadership experience.  *Id.*  McGinnist had received discipline seven years earlier for threatening to kill someone during a confrontation at a hospital, but Betts stated he did not know about the discipline because he does not look at disciplinary history or past performance evaluations when making promotion decisions.  Doc. 42 at ¶ 36; Doc. 48 at ¶ 71, 109.  Betts testified that he reviews all annual performance evaluations when they come in, however.  Doc. 48 at ¶ 75, 85.  Betts also stated that he discussed McGinnist's promotion with at least three supervisors (Major Lammert, Lieutenant Kehoe-Roop, and Sergeant Haill), none of whom raised any objections to McGinnist's promotion.  Betts Dep. 197:23–198:2.  Castellano disputes that Betts discussed the decision with other supervisors, however, citing Haill's testimony that Betts only discussed a different promotion (Walter Allen) with Haill.  Doc. 42 at ¶ 22, 35; Haill Dep. 47:5–20, 48:22–49:8.

4

On October 5, 2017, Castellano filed another charge with the MCHR and EEOC against
the City.  Castellano alleged that Betts discriminated against him and retaliated against him by
selecting McGinnist for the sergeant position.  Doc. 42 at ¶ 10; Doc. 42-25.  Betts testified that
he simply read the charge and sent it to the City Counselor's Office.  Doc. 42 at ¶ 13.  At the
time Betts promoted McGinnist to sergeant, Castellano had still not spoken to him about a
promotion or submitted a letter of interest.  Doc. 42 at ¶ 38.  Castellano counters, however, that
Betts never publicized the opening, so Castellano couldn't have applied for the position.
Castellano Dep. 28:21–29:2.

A few months later, Betts promoted Dorothy Griggs Hamilton (an African-American
female) from deputy to sergeant within the Criminal Records Unit, where she was already
working at the time.  Doc. 42 at ¶ 39.  Castellano did not contest Hamilton's promotion.  *Id.*

### 3.    Third charge of discrimination, March 5, 2019

On December 3, 2018, Betts promoted Walter Allen and Anthony Evans (both African-
American males) to sergeant positions in the Courts Unit.  Doc. 42 at ¶ 40.  Allen had worked in
the Courts Unit for nine years at the time of his promotion, and Evans had previously worked in
the Courts Unit for 11 years, although Evans worked in the Service Unit for another 11 years
after working in the Courts Unit.  Doc. 42 at ¶ 41, 45.  Betts testified that he discussed these
promotions with supervisory staff, including Sgt. Haill, Cpt. Tammy Hogan, Col. Roberts, Lt.
Felicia Davis, Lt. Neil Hogan, and Lt. Kehoe-Roop.  Doc. 42 at ¶ 42.  Betts testified that he
promoted Allen based on Betts's observations of his good demeanor, character, personality, and
ability to communicate with others, Doc. 42 at ¶ 43, and promoted Evans based on his perfect
attendance record and Betts's observations of his personality and ability to get along with
everybody.  Doc. 42 at ¶ 44.

On March 5, 2019, Castellano filed another charge with the MCHR and EEOC against the City, alleging that Betts discriminated against him because of his race as well as in retaliation for filing his previous charges and a "discrimination lawsuit," by selecting Allen and Evans for the Courts Unit promotions.  Doc. 42 at ¶ 11; Doc. 42-26.  Betts testified that he read the charge and sent it to the City Counselor's Office again.  Doc. 42 at ¶ 13.  At the time Betts promoted Allen and Evans to sergeant, Castellano still had not spoken to him about a promotion or submitted a letter of interest, and Betts testified that he and his supervisory staff had never discussed selecting Castellano for a sergeant position.  Doc. 42 at ¶ 47.  Castellano testified that he had worked in the Courts Unit for nine years before he transferred to the Transportation Unit in April 2017, so he had the same amount of experience as Allen and had worked in the Courts Unit more recently than Evans.  Castellano Dep. 57:16–21.

Betts promoted five more deputies to sergeant in 2019 and 2020:  Kevin Meyer and Charles Jones in July 2019, Jim Borisch and Whitney Wyndom in December 2019, and Frank Parker in March 2020.  Doc. 48 at ¶ 123.  Castellano did not challenge any of these promotions.  Of the 12 sergeant positions Betts filled from 2017–2020, seven of the candidates gave Betts a letter expressing interest in promotion.  Doc. 48-2.

### D.    Castellano's conduct and performance

Castellano did not submit a letter of interest for promotion to Betts until March 14, 2019, long after the contested promotions took place.  Doc. 42 at ¶ 49.  Castellano testified that Betts knew that he wanted a sergeant position during the promotions in August 2017 and December 2018 because of Castellano's Charges of Discrimination in June and October 2017.  Doc. 42 at ¶ 47.  Castellano also wrote on his August 2018 performance evaluation that he thought he was

ready for a promotion, and the evaluation has the handwritten initials "VB" on the cover, for Vernon Betts.  Doc. 42-16.

Castellano's 2017 performance evaluation stated that he "exceeds standards" in quality of work and knowledge of position, but only "meet[s] standards" in eight other categories, including his overall performance.  Doc. 42-19.  Castellano's 2018 performance evaluation stated that he "meets standards" in all categories except one, where he fell "below standards." Doc. 42-16.

### E.     Betts's testimony

In his deposition on September 3, 2020, Betts observed that Castellano did not communicate well, displayed poor judgment and poor work ethic, did nothing to stand out, and did not have a good personality for being a supervisor.  Betts Dep. 232:6–236:11.  Betts stated that Castellano's communication skills were "extremely poor" and that Betts recalled Castellano speaking to him only once in four years while Betts was Sheriff.  *Id.* at 155:6–156:4.  Betts also admitted in his deposition that Castellano's charges "ticked [him] off a little bit" because he "didn't like being accused of something that he didn't do" and that he may have told his wife and a few others how he felt about the charges at the time.  Doc. 48 at ¶ 97.

Betts testified that he never discussed Castellano being promoted with his supervisory staff until after Castellano filed this lawsuit on August 6, 2019.  Betts Dep. 151:17–23.  Betts stated that he may have discussed promoting Castellano with his supervisors in the time since Castellano filed the lawsuit, "but now we've got all this mess going on, I don't know," saying "we need to wait and see how this pans out before we move in that direction."  *Id.* at 151:24–152:16.  Betts expressed concern that promoting Castellano while Castellano is suing him would damage his staff's morale because "you've got other people who are qualified and here you

7

promote somebody that's been giving you all kind of hell. What sense does that make? That's, I guess, would be what they would interpret it. I don't know." *Id.* at 152:21–153:9. Betts reaffirmed, however, that Castellano was not selected for promotion because Castellano did not have the right qualifications compared to the other candidates and that Betts's promotional decisions have "got nothing to do with the lawsuits." *Id.* at 153:15–153:24. Betts also stated that Castellano could still potentially improve and be promoted under Betts's tenure. *Id.* at 154:5–154:12.

## II.   Standard

Summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Cordry v. Vanderbilt Mortg. & Fin., Inc.*, 445 F.3d 1106, 1109 (8th Cir. 2006) (quoting *Bockelman v. MCI Worldcom, Inc.*, 403 F.3d 528, 531 (8th Cir. 2005)). The proponent of the motion for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The proponent need not, however, negate the opponent's claims or defenses. *Id.* at 324–25.

In response to the proponent's showing, the opponent must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). A "genuine" dispute of material fact is more than "some metaphysical doubt as to the material facts." *Id.* at 586.

8

"[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "If the evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Id.* at 249–50 (citations omitted). Further, "to survive a motion for summary judgment, the non-moving party must be able to show sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy[.]" *Sensient Technologies Corp. v. SensoryEffects Flavor Co.*, 613 F.3d 754, 762 (8th Cir. 2010).

## III.    Discussion

Castellano asserts claims of retaliation by failure to promote against Defendants the City of St. Louis and Sheriff Vernon Betts. In Count I of his Amended Complaint, Castellano asserts claims for retaliation in violation of Title VII and the MHRA against the City, in addition to an individual claim against Vernon Betts under the MHRA, for failing to promote him in August 2017. In Count II, Castellano asserts claims for retaliation in violation of Title VII and the MHRA against the City only, in connection with the December 2018 promotions. In Count III, Castellano asserts claims for retaliation against Defendants under 42 U.S.C. § 1981.

Defendants move for summary judgment on Castellano's claims, arguing that Castellano failed to present a genuine issue of material fact on whether Defendants retaliated against Castellano because of his protected activity.

### A.    Title VII and MHRA retaliation claims (Counts I–II)

Defendants contend that Castellano cannot meet his burden that Defendants retaliated against him under Title VII and the MHRA. Although no less than *three different causation standards* apply to Castellano's claims, Defendants assert that Castellano cannot meet any of these burdens. Defendants claim that Castellano provided no evidence of a causal link between

9

Castellano's Charges of Discrimination and the adverse action—Betts's not selecting Castellano for the August 2017 or December 2018 sergeant promotions.

Title VII retaliation claims require the plaintiff to establish but-for causation. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013). Castellano must show that but-for his protected activity, the City would have promoted him. *See Wright v. St. Vincent Health Sys.*, 730 F.3d 732, 737 (8th Cir. 2013). For Castellano to make his retaliation claim, he "must show that the protected conduct was a 'determinative—not merely a motivating—factor' in the [City's] adverse employment decision." *See id.* at 738 (citing *Van Horn v. Best Buy Stores, L.P.*, 526 F.3d 1144, 1148 (8th Cir. 2008)).

For Castellano's MHRA claims, two different causation standards apply because one instance of alleged retaliation occurred before Missouri's amendment to the MHRA and the other instance occurred after the amendment. Effective August 28, 2017, Missouri amended the MHRA's causation standard, replacing the "contributing factor" standard with the "motivating factor" standard. Mo. Rev. Stat. § 213.101(4) (expressly abrogating the contributing factor standard). Castellano's MHRA claim under Count I accrued at the time of Betts's alleged retaliation on August 7, 2017, so the "contributing factor" standard applies to this claim. *See Jordan v. Charter Communications, Inc.*, 2019 WL 1409353, at *3 (E.D. Mo. 2019) (Limbaugh, J.) (MHRA claims accrue on the date the allegedly discriminatory conduct took place). A "contributing factor" is a condition "that contributes a share in anything or has a part in producing the effect." *Turner v. Kan. City Pub. Schools*, 488 S.W.3d 719, 723 (Mo. App. W.D. 2016) (citing *McBryde v. Ritenour Sch. Dist.*, 207 S.W.3d 162, 170 (Mo. App. 2006)). To survive summary judgment on his retaliation claim under the "contributing factor" standard, Castellano must present "more than a temporal connection between protected activity and an

adverse employment action." *Denn v. CSL Plasma, Inc.*, 816 F.3d 1027, 1036 (8th Cir. 2015) (citing *Williams v. Trans States Airlines, Inc.*, 281 S.W.3d 854, 869 (Mo. Ct. App. 2009)).

Castellano's Count II MHRA claim requires him to show that retaliation was a "motivating factor" in the employment decision because the claim accrued in December 2018, after the MHRA amendment.  § 213.111(5) (stating a plaintiff bears the burden of proving the alleged unlawful action "was made or taken because of his or her protected classification and was the direct proximate cause of the claimed damages."); § 213.010(2) (defining "because" or "because of" "as it relates to the adverse decision or action, the protected criterion was the motivating factor").  A "motivating factor" is one that "actually played a role in the adverse action or decision and had a determinative influence on the adverse decision or action."  § 213.010(19).  Additionally, the amended MHRA requires courts to use the *McDonnell Douglas* burden-shifting framework.  § 213.101(3) (stating "the court shall consider the burden-shifting analysis of McDonnell Douglas . . . to be highly persuasive for analysis in cases not involving direct evidence of discrimination."); § 213.101(4) (abrogating *Daugherty v. City of Maryland Heights*, 231 S.W.3d 814 (Mo. banc 2007), which abandoned the *McDonnell Douglas* burden-shifting framework as applied to the MHRA); *Hurley*, 2018 U.S. Dist. LEXIS 18903, at *7–8.

### 1.      Title VII claims (Counts I–II)

Castellano's Title VII claims under Count I and Count II must both meet the "but-for" causation standard.  *Nassar*, 570 U.S. at 360.  In terms of evidence, Castellano can survive summary judgment on his retaliation claims in two ways:  he may either "present admissible evidence directly indicating unlawful discrimination" by Defendants, or alternatively, he may create "an inference of unlawful discrimination under the burden-shifting framework established

in *McDonnell Douglas Corp.*"  *Gibson v. Am. Greetings Corp.*, 670 F.3d 844, 853 (8th Cir. 2012) (quoting *Humphries v. Pulaski Cnty. Special Sch. Dist.*, 580 F.3d 688, 692 (8th Cir. 2009).

### a.       Direct evidence

First, Castellano presents direct evidence of retaliation.  Direct evidence "shows 'a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action.'"  *St. Martin v. City of St. Paul*, 680 F.3d 1027, 1033 (8th Cir. 2012) (quoting *Griffith v. City of Des Moines*, 387 F.3d 733, 736 (8th Cir. 2004)).  "Direct evidence for these purposes includes evidence of 'remarks of the employer that reflect a discriminatory attitude,' as well as 'comments which demonstrate a discriminatory animus in the decisional process or those uttered by individuals closely involved in employment decisions.'"  *Roberts v. Park Nicollet Health Servs.*, 528 F.3d 1123, 1128 (8th Cir. 2008) (quoting *EEOC v. Liberal R–II Sch. Dist.*, 314 F.3d 920, 923 (8th Cir. 2002)).  In this context, direct evidence of discrimination is "not the converse of circumstantial evidence," rather "'direct' refers to the causal strength of the proof[.]"  *Griffith*, 387 F.3d at 736 ("A plaintiff with strong (direct) evidence that illegal discrimination motivated the employer's adverse action does not need the three-part *McDonnell Douglas* analysis to get to the jury, regardless of whether his strong evidence is circumstantial.").  Direct evidence of retaliation "clearly points to the presence of an illegal motive" for the employer's adverse action.  *Id.*  Direct evidence "most often comprises remarks by decisionmakers that reflect, without inference, a discriminatory bias."  *McCullough v. University of Arkansas for Medical Sciences*, 559 F.3d 855, 861 (8th Cir. 2009).

Castellano points to Betts's deposition testimony, where Betts admitted he was "ticked off a little bit" by the charges because he "didn't like being accused of something that he didn't

12

do." Doc. 48 at ¶ 97. Betts implied during his deposition that he would not hire Castellano out of retaliation for Castellano's pending lawsuit. In Betts's deposition, Castellano's attorney asked him if he had ever discussed promoting Castellano with his supervisory staff, and Betts gave the following answers:

> Q:   Have you ever discussed John being promoted with your supervisory staff?
> A:   Before or after the lawsuit?
> Q:   Let's start with before the lawsuit.
> A:   No.
> Q:   How about after?
> A:   Yes.
> Q:   Okay. What did you discuss with your supervisory staff about promoting John after the lawsuits?
> A:   I know that I had a couple of openings, and **he could have possibly been in that bunch, but now we've got all this mess going on, I don't know**.
> Q:   What do you mean "now that we've got all this mess going on?"
> A:   **This lawsuit stuff going on**.
> . . .
> Q:   So what do you mean by that, that he was in the bunch and then he was out of the bunch?
> A:   **I think we need to wait and see how this pans out before we move in that direction**.
> Q:   What do you mean by how it pans out, whether he wins or loses?
> A:   I would think so.
> Q:   Why would whether he wins or loses his lawsuit influence a promotion decision?
> A:   Well, how do you think it would look? **How do you think the rest of my employees would feel if he got promoted while all this was going on**?
> Q:   And that's your concern, how it would look?
> A:   I think it would damage morale. I know it would damage morale.
> Q:   How would it damage morale?
> A:   Well, **you've got other people who are qualified, and here you promote somebody that's been giving you all kind of hell. What sense does that make?** That's, I guess, would be what they would interpret it. I don't know.
> Q:   But his name—since you've been sheriff, his name has surfaced for promotion, if I'm understanding your testimony, correct?
> A:   I gave it, yeah. If I'm going to be honest, yes.

Betts Dep. 151:17–153:14 (emphasis added). Notably, Betts admitted that Castellano "could have possibly been in that bunch" of promotions, "but now we've got all this [lawsuit] mess going on, I don't know." *See id.* Betts claimed that promoting someone "that's been giving you

all kind of hell" would damage his staff's morale.  *See id.*  Castellano asserts that Betts's statement that Castellano will not be promoted during this lawsuit and his assertion that it would make no sense to promote somebody giving you "all kinds of hell" are direct evidence of Betts's retaliatory motive for the promotional decisions.

Betts's deposition testimony is direct evidence of retaliation because it "clearly points to the presence of an illegal motive," providing a causal link between Castellano's protected activity and Betts's promotion decisions.  *See Griffith*, 387 F.3d at 736.  Betts said that he "need[ed] to wait and see how this (lawsuit) pans out" before promoting Castellano in the future because Castellano was giving him "all kind of hell."  Betts Dep. 151:17–153:14.  These comments referred to Castellano's lawsuit, rather than Castellano's charges, but the comments "reflect, without inference, a discriminatory bias" against Castellano because of his protected activity.  *McCullough v. University of Arkansas for Medical Sciences*, 559 F.3d at 861.  Betts admitted that he "had a couple of openings" for sergeant positions, but he did not want to hire Castellano with "[t]his lawsuit stuff going on."  Betts Dep. 151:17–153:14.  This testimony involved "remarks of the employer that reflect a discriminatory attitude[.]"  *Roberts*, 528 F.3d at 1128.  And by connecting Castellano's protected activity to the denial of promotion to sergeant, Betts demonstrated "discriminatory animus in the decisional process[.]"  *See id.*

Betts also said in his deposition that he was "ticked off a little bit" by Castellano's accusations of race discrimination because he "didn't like being accused of something that he didn't do."  Betts explained that while he may have told his wife and several others that he was angry about Castellano's charges at the time, he did not retaliate against Castellano.  By itself, Betts's angry reaction is not direct evidence of retaliation, because "simply being upset is not evidence upon which a reasonable fact finder could conclude that an illegitimate criterion

14

actually motivated" the employment decision.  *Becker v. Jostens, Inc.*, 210 F. Supp. 3d 1110, 1119 (D. Minn. 2016) (a supervisor's testimony that the plaintiff's complaints made her upset does not create an inference of discrimination).  But taken together with Betts's other statements about Castellano, Betts's admission that he was "ticked off" by Castellano's charges is evidence of a retaliatory motive.  After drawing all reasonable inferences in Castellano's favor, the Court finds that Betts's deposition testimony is direct evidence of retaliation, defeating summary judgment.

Defendants urge that Betts's statements only meant that he would not promote Castellano during the current lawsuit, so they are not direct evidence of Betts's motive for the August 2017 and December 2018 promotions.  But given Betts's role as the sole decisionmaker for all promotion decisions at the Sheriff's Department, a reasonable jury could interpret Betts's comment about "somebody that's been giving you all kind of hell" as an indication of Betts's mindset about all of his promotion decisions.  *See* Betts Dep. 151:17–153:14.  The deposition testimony supports a reasonable inference that Betts had retaliatory animus against Castellano for filing his lawsuit and that Betts acted with the same animus during the promotion decisions at issue.  *See id.*

Defendants assert that Betts adequately explained this testimony.  Betts claimed that his promotion decisions had "nothing to do with the lawsuits" and that Castellano "was not selected because he's not qualified for what I wanted. He's not meeting the qualifications."  Betts Dep. 151:17–153:14.  Betts also confirmed that he and his staff had never even raised the topic of promoting Castellano before the lawsuit.  *See id.*  But Betts's explanation cannot resolve issues of fact on summary judgment, because credibility determinations and weighing of evidence rest within the province of the jury.  *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133,

15

150 (2000) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.").  Betts's deposition statements are direct evidence; they create a genuine issue of fact on whether Betts denied promotion to Castellano out of retaliation.

### b.      Indirect evidence: *McDonnel Douglas*

Even if Castellano did not produce direct evidence of retaliation, Castellano can succeed on his Title VII claims under the *McDonnell Douglas* burden-shifting framework.  *Gibson*, 670 F.3d at 853.  Under this framework, the plaintiff must first establish a prima facie case of retaliation by showing that: (1) he engaged in protected conduct by either opposing an act of discrimination made unlawful by Title VII or participating in an investigation under Title VII; (2) he suffered an adverse employment action; and (3) the adverse action was causally linked to the protected conduct.  *Singletary v. Mo. Dep't of Corr.*, 423 F.3d 886, 892 (8th Cir. 2005) (citing *Eliserio v. United Steelworkers of America Local 310*, 398 F.3d 1071, 1078–79 (8th Cir. 2005)).  If the plaintiff meets his prima facie case, the burden shifts to the employer to rebut the presumption of unlawful discrimination by articulating a legitimate, nondiscriminatory reason for its adverse employment action.  *Martinez v. W.W. Grainger, Inc.*, 664 F.3d 225, 230 (8th Cir. 2011).

After the employer presents its legitimate, non-discriminatory reason for its action, the burden shifts back to the plaintiff to prove that the reason articulated by the employer was really a pretext for discrimination.  *Young v. Builders Steel Co.*, 754 F.3d 573, 578 (8th Cir. 2014).  The employee must show that the employer's claimed reason for the challenged employment decision is not trustworthy, or "unworthy of credence."  *Hilde v. City of Eveleth*, 777 F.3d 998, 1004 (8th Cir. 2014).

Defendants urge that Castellano cannot establish his prima facie case because he has offered no evidence to establish a causal link between his Charges of Discrimination and the denial of promotion to sergeant.  But the Court need not decide whether Castellano's proffered evidence constitutes the "minimal showing" necessary to make his prima facie case because Defendants have presented legitimate reasons for their promotion decisions.  *See Riser v. Target Corp.*, 458 F.3d 817, 820–21 (8th Cir. 2006) (where employer has proffered legitimate, non-discriminatory reasons for adverse employment action, court may skip analysis of prima facie case and move directly to question of discrimination *vel non*).

Defendants offered legitimate, non-discriminatory reasons for Betts's promotion decision in August 2017 and December 2018.  Betts testified that he does not follow his manual when it comes to hiring decisions, nor does he read performance evaluations or disciplinary reports. Betts claims that he makes promotions based on individual merit, through his personal observations of the candidates as well as communications with trusted supervisors.  Betts testified that he promoted Danny McGinnist in August 2017 because McGinnist already worked in the Security Unit and because Betts observed McGinnist's communication skills, knowledge, and relationships with others.  Betts also held discussions with other supervisors about the promotion, and they did not object to McGinnist's promotion.

Betts testified that he promoted Walter Allen and Anthony Evans to the sergeant positions in December 2018 because Allen had nine and Evans had 11 years of experience working in the Courts Unit and Allen was already working in the Courts Unit at the time of promotion.  Betts liked Allen's good demeanor, character, personality, and ability to communicate with others, and he appreciated Evans' perfect attendance record as well as Evans'

personality and ability to get along with everybody.  Betts testified that he discussed these promotions with up to six of his supervisory staff.

Defendants also allege that Betts simply did not consider Castellano for promotion, in part because Castellano never asked him about a sergeant position or submitted a letter of interest and because none of Castellano's supervisors recommended him for promotion.  Betts testified that Castellano did not have the communication skills, personality, work ethic, or judgment that Betts considers necessary to be a supervisor.  Additionally, Defendants point out that Castellano was working in the Transportation Unit when the positions opened in the Security and Courts Units, while most of the officers promoted to sergeant positions already worked in their respective units.  Thus, Defendants met their burden to offer legitimate, non-discriminatory reasons for their promotional decisions.

Because Defendants offer legitimate, non-discriminatory reasons for their promotional decisions, Castellano bears the burden to show those reasons were pretextual.  *Young*, 754 F.3d at 578.  In response, Castellano points to Betts's statements in his deposition, evidence of Castellano's own qualifications compared to the chosen candidates, and factually inaccurate reasons for the promotion decisions.

### i.    Betts's deposition statements

Castellano primarily points to Betts's deposition testimony as evidence of a retaliatory motive for the August 2017 and December 2018 promotional decisions.  Betts said in his deposition that he was "ticked off a little bit" by Castellano's charges.  Because Castellano was giving him "all kind of hell," Betts said he would have "to wait and see how this [lawsuit] pans out" before considering him for a future promotion.  This testimony supports a reasonable inference of retaliation in the August 2017 and December 2018 promotions.

Normally, non-contemporaneous statements by a decisionmaker cannot, by themselves, support a finding of pretext: "some causal relationship is necessary to demonstrate the significance of non-contemporaneous statements . . . to the resolution of the ultimate issue of intentional discrimination." *Kohrt v. MidAmerican Energy Co.*, 364 F.3d 894, 898 (8th Cir. 2004) (quoting *Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 779 (8th Cir. 1995)). Here, Betts's statements were not contemporaneous with the hiring decisions at issue, as his deposition was in September 2020. But Betts's statements display a retaliatory attitude in the promotion process, which could have affected his previous promotion decisions. Castellano's lawsuit is protected activity, just like his Charges of Discrimination, and Betts declared that he would have to "wait and see how this [lawsuit] pans out" before considering Castellano for promotion. This testimony, particularly Betts's statement that he would not promote Castellano because of the lawsuit, indicates a retaliatory motive for the promotion decisions.

Further, Betts said in his deposition that he was "ticked off a little bit" by Castellano's accusations of race discrimination because he "didn't like being accused of something that he didn't do." As discussed above, the Court finds that Betts's anger at Castellano's protected activity is evidence of a retaliatory motive when the Court views it along with Betts's other statements about Castellano. The Court finds that Betts's statements are sufficient to support a reasonable inference that Defendants' proffered reasons for not hiring Castellano are a pretext for retaliation.

### ii.    Qualifications

Castellano also argues that he was more qualified than the candidates Betts chose for the sergeant position in August 2017 and December 2018. Employers generally "pick the best qualified candidate for promotion. When that is not done, a reasonable inference arises that the

employment decision was based on something other than the relative qualifications of the applicants." *McCullough v. Real Foods, Inc.*, 140 F.3d 1123, 1129 (8th Cir. 1998).  Evidence of an applicant's qualifications can support a finding of pretext, but only if a plaintiff can "show that [the employer] hired a *less* qualified applicant." *Torgerson*, 643 F.3d at 1049.

For Count I, Castellano alleges that he was better qualified than McGinnist, the candidate Betts selected for the August 2017 promotion in the Security Unit.  Castellano claims he had nine years of relevant experience in the Courts Unit before Betts transferred him to the Transportation Unit in April 2017.  Castellano also presents his January 2017 performance review, which observed that he was "exceeding expectations" in his quality of work and knowledge of the position.

But Betts did not hire McGinnist based on his years of service or his performance reviews.  According to Betts, he promoted McGinnist based on his own personal knowledge and observations of McGinnist, as well as conversations with other supervisors, not based on McGinnist's experience or work history.  Betts undisputedly does not follow his manual for any of his hiring decisions, nor does he read performance evaluations or disciplinary reports.  McGinnist already worked in the Security Unit, and Betts thought McGinnist had good communication skills, knowledge, relationships, and leadership experience.  And while Castellano claims to have more experience and training than McGinnist, he failed to specify the details of McGinnist's experience and training that would allow the Court to compare their qualifications.  Under these circumstances, Castellano's relative qualifications do not create an inference of pretext for the August 2017 promotion.  *See Rooney v. Rock-Tenn Converting Co.*, 878 F.3d 1111, 1118 (8th Cir. 2018) ("The evidence must do more than raise doubts about the

20

wisdom and fairness of the employer's opinions and actions—it must create a real issue as to the genuineness of the employer's perceptions and beliefs.")

For Count II, Castellano alleges that he was better qualified than Allen and Evans, the candidates selected for the December 2018 promotions in the Courts Unit. Betts claims he promoted Allen and Evans because each had extensive experience in the Courts Unit and Allen was already working in the Courts Unit at the time. Castellano states in response that he had worked in the Courts Unit for nine years until April 2017, and that Evans received the Courts Unit promotion despite not working in the Courts Unit for 11 years. Castellano also alleges that he had better qualifications in the "performance dimensions actually relevant to this promotion" due to his supervisory and training experience.

Castellano's relative qualifications fail to establish that Defendants' reasons for the December 2018 promotions are pretextual. Betts testified that he promoted Allen and Evans based on their years of experience as well as their personality, communication skills, demeanor, and other factors. Castellano does not show that Allen and Evans were less-qualified candidates. The record shows that Castellano had roughly similar experience in the Courts Unit. Castellano worked for nine years in the Courts Unit, the same length of time as Allen. And although Evans worked in the Service Unit for 11 years after the Courts Unit, Evans still served 11 years in the Courts Unit before his transfer.

Castellano responds that subjective factors like personality, relationships, demeanor, and ability to get along with others are not relevant factors for the sergeant promotion, but neither Castellano nor the Court are in a position to determine which criteria are "actually relevant" to the promotion. *See id.*; *Manse v. Union Elec. Co.*, 961 F. Supp. 1296, 1302 (E.D. Mo. 1997) (granting summary judgment for employer where plaintiff took issue with employer's criteria,

21

holding that employer's considerations "are business judgments that are not within the province of this Court to second-guess.").  Use of subjective hiring criteria does not create an inference of discrimination unless an employer chooses a "clearly less qualified or unqualified individual on the basis of subjective considerations alone." *Chambers v. Metropolitan Property and Cas. Ins. Co.*, 351 F.3d 848, 858 (8th Cir. 2003).  Betts's use of subjective criteria to make his promotion decisions does not give rise to an inference of retaliation, because Castellano has not shown that he was more qualified than the other candidates.

Employers may use subjective factors in addition to objective factors in their hiring decisions, and contrary to Castellano's claims, Defendants' use of subjective factors in their promotional decisions does not create an inference of discrimination on its own. *See, e.g., Washington v. Am. Airlines, Inc.*, 781 F.3d 979, 982 (8th Cir. 2015) (examiner's use of subjective impressions by itself did not establish reason for decision was pretextual); *Hunter v. United Parcel Serv., Inc.*, 697 F.3d 697, 705 (8th Cir. 2012) (where employer uses objective criteria such as job history as part of promotional decision, the use of additional subjective considerations does not give rise to an inference of discrimination); *Wingate v. Gage Cty. Sch. Dist., No. 34*, 528 F.3d 1074, 1080 (8th Cir. 2008) ("Although we have cautioned against the advancement of subjective considerations because they are easily fabricated, we have not outright prohibited their use. . . . With that said, the Defendants here did not rely exclusively on subjective criteria; rather, they also relied on objective criteria and legitimate educational considerations in making their hiring decisions.").  Accordingly, Castellano's evidence of his qualifications, standing alone, does not demonstrate that Defendants' reasons for the promotion decisions were pretextual.

### iii.    Inaccurate reasons for the decisions

Castellano next argues that Defendants' reasons for their decisions are factually inaccurate, as the proffered reasons do not reveal the entire truth about Castellano or the chosen candidates.  Plaintiffs can meet their burden of establishing pretext "either by showing that the stated reason is factually false . . . or by showing that the stated reason is false in the sense that it was not the real reason for the employer's actions."  *Nahrebeski v. Cincinnati Milacron Marketing. Co.*, 835 F. Supp. 1130, 1135 (W.D. Mo. 1993).

Castellano claims that Betts knew he was interested in a promotion all along.  Betts read his Charges of Discrimination in June 2017 and October 2017, so Betts already knew that Castellano wanted a promotion when sergeant positions opened in August 2017 and December 2018.  Betts testified that he read the charges before handing them to the City Counselor's Office and that he reads all employee evaluations when they come to his desk.  Castellano also presents his August 2018 performance evaluation, where Castellano wrote in a comment box that he believed he was ready for a promotion.  The evaluation has the handwritten initials "VB" on the cover.  In response, Betts concedes that he knew that Castellano wanted a promotion.  Betts insisted in his deposition that he did not consider Castellano for promotion because Castellano did not work in the Units where positions opened, Castellano never officially requested a promotion, and Betts thought Castellano had poor communication skills, among other factors.

Castellano also disputes several of Defendants' reasons for promoting the chosen candidates.  Castellano observed that Evans did not, in fact, have a perfect attendance record, as Evans was absent from work once in 2018.  But Evans' single absence in 2018 does not controvert Betts's testimony that the promotional decision was based on Betts's understanding that Evans had perfect attendance.  At most, this shows that Betts was mistaken about Evans' attendance record when he promoted Evans in December 2018.

Castellano emphasizes that Betts did not follow the hiring procedures in his manual, particularly in his promotion of McGinnist.  Betts consistently waived the promotion procedures in his Sheriff's manual, opting instead to rely on his personal observations of employees to evaluate their merit, as well as conversations with the candidates and supervisory staff.

Evidence that an employer failed to follow its own policies can support an inference of pretext, yet "[a]n employer 'can certainly choose how to run its business, including not to follow its own personnel policies . . . as long as it does not unlawfully discriminate in doing so.'" *McCullough v. University of Arkansas for Medical Sciences*, 559 F.3d at 863.  Here, Betts's decision not to follow the procedures in his manual does not create an inference of pretext on its own.  *See Vardaman v. Wilkie*, 2020 WL 1228717, at *4 (E.D. Ark. 2020) (employer's failure to follow its own policy to provide written notice of personnel decisions to applicants for promotion did not create an inference of pretext when "none of the spring 2010 applicants received written notice of the [employer's] decisions denying their applications").  But taken together with his deposition comments, Betts's practice of not following his own hiring procedures helps support an inference of pretext because of the opportunity for retaliation in Betts's subjective promotion process.  *See McCullough v. Real Foods, Inc.*, 140 F.3d at 1129 ("[S]ubjective criteria for promotions are particularly easy for an employer to invent in an effort to sabotage a plaintiff's prima facie case and mask discrimination." (internal quotations omitted)).

Viewing the facts in a favorable light to Castellano and drawing all reasonable inferences in Castellano's favor, the Court finds that the evidence in the record, taken as a whole, creates a genuine issue of material fact as to whether Defendants' reasons for the promotional decisions were pretextual.  Accordingly, Castellano succeeds under both the direct evidence and

*McDonnell Douglas* framework.  The Court denies Defendants' motion for summary judgment on Castellano's Title VII claims under Count I and Count II.

### 2.  MHRA claim under the "contributing factor" standard (Count I)

Unlike the "but-for" causation standard under Title VII, Castellano's MHRA claim under Count I must meet the much-lower "contributing factor" standard.  Under this standard, a retaliatory motive is a contributing factor "regardless if other factors also exist."  *Wierman v. Casey's Gen. Stores*, 638 F.3d 984, 1003 (8th Cir. 2011).  If the plaintiff's protected activity was even one contributing factor in the employer's decision, then the employer committed unlawful retaliation.  *Soto v. Costco Wholesale Corp.*, 502 S.W.3d 38, 48 (Mo. App. W.D. 2016).  To survive summary judgment on a retaliation claim under this standard, Castellano must present "more than a temporal connection between protected activity and an adverse employment action."  *Denn*, 816 F.3d at 1036.

The Court finds that Castellano created a genuine issue of fact over whether retaliation was a "contributing factor" in Betts's decision to not promote him in August 2017, for the same reasons as the Court discussed with regard to Castellano's Title VII claims.  Betts's statement during his deposition that he would not promote Castellano because of a pending lawsuit, in addition to Castellano's other evidence, supports a reasonable inference that a retaliatory motive was a "contributing factor" in the August 2017 decision.  Additionally, the temporal proximity between Castellano's charge in June 2017 and the promotion decision in August 2017 supports an inference of retaliation, because the decision was less than two months after Castellano's charge.  *See Williams v. Trans States Airlines, Inc.*, 281 S.W.3d 854, 869 (Mo. App. E.D. 2009) (finding a temporal connection when plaintiff "was terminated from her employment less than sixty days after she filed her sexual harassment complaint"), *overruled on other grounds by*

*Wilson v. City of Kan. City*, 598 S.W.3d 888 (Mo. 2020).  Castellano filed a Charge of

Discrimination alleging failure-to-promote claims on June 22, 2017, which Betts immediately

reviewed.  Approximately six weeks later, Betts promoted McGinnist to the opening in the

Security Unit, instead of Castellano.  Accordingly, the Court denies Defendants' motion for

summary judgment on Castellano's MHRA claim under Count I.

### 3.     MHRA claim under the "motivating factor" standard (Count II)

Castellano's MHRA claim under Count II must meet the "motivating factor" standard.

The "motivating factor" standard is also a lower standard than "but-for" causation.  *See Wright*,

730 F.3d at 737.  A "motivating factor" is one that "actually played a role in the adverse action

or decision and had a determinative influence on the adverse decision or action."  § 213.010(19).

To establish a prima case of retaliation under the MHRA, the plaintiff must prove (1) he

engaged in statutorily protected conduct; (2) the employer took adverse action against him; and

(3) a causal relationship existed between the protected conduct and the adverse action.  *Denn*,

816 F.3d at 1032–33 (citing *McCrainey v. Kansas City Mo. Sch. Dist.*, 337 S.W.3d 746, 753

(Mo. Ct. App. 2011)).  "If the employee meets this burden, the burden then shifts to the employer

to show a legitimate, non-discriminatory reason for its actions."  *Taylor v. Vitamin Cottage*

*Natural Food Markets, Inc.*, 2020 WL 365505, at *5 (W.D. Mo. 2020) (quoting *Medley v.*

*Valentine Radford Commc'ns, Inc.*, 173 S.W.3d 315, 325 (Mo. Ct. App. 2005)).  If the employer

meets its burden, then the employee must present evidence showing that the employer's reason is

mere pretext for retaliation.  *Id.*

The Court finds that Castellano created a genuine issue of fact over whether retaliation

was a "motivating factor" in Betts's decision to not promote him in December 2018, for the same

reasons as the Court discussed with regard to Castellano's Title VII claims.  Betts's deposition

statements, together with Castellano's other evidence, support a reasonable inference of retaliation.  Accordingly, the Court denies Defendants' motion for summary judgment on Castellano's MHRA claim under Count II.

### B.     Section 1981 (Count III)

Castellano asserts § 1981 claims against the City of St. Louis and Vernon Betts in his personal capacity.  Section 1981 protects a person from discrimination on the basis of race in the making and enforcing of contracts, including employment contracts.  *See* § 1981(a).  Section 1981 encompasses retaliation claims against an employer.  *CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 457 (2008).

#### 1.     Municipal liability under section 1981

To the extent Castellano claims that the City violated his rights under § 1981, he must proceed under 42 U.S.C. § 1983.  *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 731–33 (1989) (Section 1983 provides the exclusive federal damages remedy for the violation of rights guaranteed by section 1981 when the alleged violation is by a state actor); *Artis v. Francis Howell N. Band Booster Ass'n, Inc.*, 161 F.3d 1178, 1181 (8th Cir. 1998) (same).

Defendants argue that the Court should dismiss Castellano's § 1981 claims because Castellano failed to plead them as a claim under § 1983.  Castellano failed to plead his claims under § 1983 in his second amended complaint.  Doc. 14.  He failed to invoke § 1983 at all, despite raising it in his first amended complaint.  Doc. 7, 14.  But despite Castellano's deficient pleadings, the Court construes Castellano's claims under § 1981 as § 1983 claims.  *See Lockridge v. Board of Trustees of University of Arkansas*, 315 F.3d 1005, 1007 (8th Cir. 2003) (construing plaintiff's § 1981 claim for race and sex discrimination against a public entity as a §

27

1983 claim); *see also Stewart v. City of St. Louis*, 2006 WL 1663023, at *9 (E.D. Mo. 2006).

The Court finds that Castellano can bring his § 1981 claims against Defendants under § 1983.

Defendants also argue that Castellano failed to allege that the City violated his rights

pursuant to an unconstitutional municipal policy or custom.  Under *Monell*, "a municipality may

be held liable for the unconstitutional acts of its officials or employees when those acts

implement or execute an unconstitutional municipal policy or custom. For a municipality to be

liable, a plaintiff must prove that a municipal policy or custom was the moving force behind the

constitutional violation."  *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999) (internal

citations omitted) (citing *Monell v. Department of Soc. Servs.*, 436 U.S. 658, 694 (1978)).

Castellano argues that Betts's retaliatory actions constitute official City policy because

Betts has final policymaking authority for personnel decisions in the Sheriff's Department and

even "[a] single decision by a municipal authority can in some circumstances constitute official

policy[.]"  *See Bolderson v. City of Wentzville, Missouri*, 840 F.3d 982, 985 (8th Cir. 2016).  In

this context, a municipal policy is "a deliberate choice of a guiding principle or procedure made

by the municipal official who has final authority regarding such matters."  *Mettler*, 165 F.3d at

1204.  As Sheriff, Betts has final authority in all promotion decisions within the Sheriff's

Department.  Doc. 40 at ¶ 19.  In his second amended complaint, Castellano alleged that Betts

repeatedly retaliated against him because of his protected activity and that Betts, as the Sheriff,

"has supervisory authority over the Department and its employees and is the final policymaker

for the Department."  Doc. 14 at 2.  Therefore, Castellano has sufficiently alleged a claim for

municipal liability under *Monell*.

### 2.      Individual liability under section 1981

Betts raises a qualified immunity defense for Castellano's § 1981 claim against Betts in his personal capacity.  Qualified immunity operates as "an immunity from suit" rather than simply a defense to liability.  *Ellis v. Houston*, 742 F.3d 307, 324 (8th Cir. 2014) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).  As a government official, Betts is entitled to immunity for his discretionary conduct in office as long as it does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known."  *Id.* at 324 (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

Courts have long recognized that employees have a clearly-established right to be free from an adverse action "based on racial discrimination or in retaliation for exercising his rights" under § 1981 and § 1983.  *Turner v. Ark. Ins. Dep't*, 297 F.3d 751, 753 (8th Cir. 2002).  Thus, Betts cannot receive qualified immunity for retaliating against Castellano because of Castellano's protected activity.

### 3.      Causation under section 1981

Finally, Defendants argue that Castellano cannot establish that retaliation was the "but-for" cause of Betts's decision not to promote him in August 2017 and December 2018.  The elements of Title VII and § 1981 retaliation claims are identical, and courts apply the same "but-for" causation standard and burden-shifting framework to § 1981 claims as they do for Title VII. *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020); *Wright*, 730 F.3d at 737.  Therefore, the Court's analysis of Castellano's Title VII claims applies here as well.  *See Wright*, 730 F.3d at 737.  The evidence in the record creates a genuine issue of material fact as to whether Betts retaliated against Castellano because of Castellano's protected activity.  The Court denies summary judgment on Castellano's § 1981 claims under Count III.

**IV.     Conclusion**

The Court denies Defendant's Motion for Summary Judgment.  Doc. 29.  The Court sets

this case for trial on Tuesday, October 12, 2021 at 9:00 a.m. in Courtroom 14-North.  This is a

three-week trial docket.  The Court will hold a pretrial conference on Tuesday, October 5, 2021

at 9:00 a.m. in Courtroom 14-North.  All pretrial compliance deadlines set forth in the Court's

Case Management Order remain in effect.  Doc. 19.  The Court refers this case to alternative

dispute resolution on June 21, 2021, and that reference will terminate on September 6, 2021.

So Ordered this 7th day of June, 2021.

_____
**STEPHEN R. CLARK**
**UNITED STATES DISTRICT JUDGE**